# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANDREW HANSON,** *et al.***,** | |
| **Plaintiffs,** | |
| **v.** | **No. 1:22-cv-02256-RC** |
| **DISTRICT OF COLUMBIA,** *et al.***,** | |
| **Defendants.** | |

## DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendants District of Columbia and Robert J. Contee III (collectively, the District) move pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss, for lack of standing, all claims except Tyler Yzaguirre's challenge to the denial of a firearm registration certificate. The District also moves pursuant to Rule 12(b)(6) to dismiss, for failure to state a claim, Count II and all claims against Defendant Robert J. Contee III or his successor. A memorandum of points and authorities as well as a proposed order are attached. Plaintiffs do not consent. *See* LCvR 7(m).

Date: July 29, 2025.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Adam J. Tuetken*

ADAM J. TUETKEN [242215]
Special Counsel for Firearm Safety
RICHARD P. SOBIECKI [500163]
MATEYA B. KELLEY [888219451]
HELEN M. RAVE [90003876]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
(202) 735-7474
adam.tuetken@dc.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ANDREW HANSON,** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **No. 1:22-cv-02256-RC** |
| **DISTRICT OF COLUMBIA,** *et al.*, | |
| **Defendants.** | |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**</u>
<u>**DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT**</u>

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

BACKGROUND ..............................................................................................................1

    I.      The District's LCM Law ..........................................................................1

    II.     Procedural History ...................................................................................2

LEGAL STANDARDS.....................................................................................................4

    I.      Federal Rule of Civil Procedure 12(b)(1) ...............................................4

    II.     Federal Rule of Civil Procedure 12(b)(6) .............................................5

ARGUMENT.....................................................................................................................5

    I.      The Court Should Dismiss Most of the Claims for Lack of Standing. ..................5

          A.     To Have Standing, Plaintiffs Must Plausibly Allege a Credible Threat of Enforcement or Denial of a Registration Certificate..................6

          B.     Hanson, Chaney, and Klun Lack Standing. ................................................8

          C.     Yzaguirre Only Has Limited Standing. ....................................................10

          D.     Yzaguirre's Limited Standing Does Not Confer Standing on the Other Plaintiffs. ................................................................................11

               1.     Plaintiffs Must Each Have Standing to Proceed Because They Seek Individualized Relief. ................................................12

               2.     Dismissing Claims for Which Jurisdiction Is Lacking Will Helpfully Narrow the Scope of this Case....................................13

    II.     The Complaint Fails to State a Due Process Claim. ............................................18

    III.    The Claims Against the Chief of Police Fail.......................................................22

CONCLUSION...............................................................................................................25

## INTRODUCTION

A District of Columbia statute (the "Law") prohibits the possession of large capacity magazines (LCMs).  Plaintiffs here are four individuals who want to possess LCMs.  They challenge the Law as a violation of the Second Amendment and the Fifth Amendment's Due Process Clause, naming the District of Columbia and the former Chief of Police as defendants. But their Complaint overreaches, asserting some claims that Article III, the Fifth Amendment, or 42 U.S.C. § 1983 will not allow.  First, almost all of Plaintiffs' claims fail for lack of standing because the Law has never been enforced against the Plaintiffs, except one: Tyler Yzaguirre. And even Yzaguirre was only denied one type of LCM, so he only has standing to challenge the Law's application to the LCM that he wants to own.  Second, the due process claim fails because it is conclusory, duplicative, and implausible.  And third, all claims asserted against the Chief fail because the Chief—whether the former or current one—is not a proper § 1983 defendant. Accordingly, the Court should dismiss (1) all claims, except Yzaguirre's challenge to the denial of a firearm registration certificate, for lack of standing, (2) the due process claim for failure to state a claim, and (3) all claims against the Chief of Police for failure to state a claim.

## BACKGROUND

### I.    The District's LCM Law

Two aspects of District firearms law are relevant here.

First, for almost a century, firearm capacity has been limited in the District, and since 2009, the District has more specifically limited the capacity of ammunition magazines to no more than ten rounds.  *See* Firearms Control Amendment Act of 2008, D.C. Law 17-372, 56 D.C. Reg. 1,365 (May 2, 2009).  Specifically, District law provides that "[n]o person in the District shall knowingly possess, sell, or transfer any ammunition feeding device that is, in fact, a large capacity ammunition feeding device, regardless of whether the device is attached to a

firearm." D.C. Code § 7-2506.01(b).  "[T]he term 'large capacity ammunition feeding device' means a magazine, belt, drum, feed strip, or similar device that has a capacity of, or that can be readily restored or converted to accept, more than 10 rounds of ammunition."  *Id.* § 7-2506.01(c). Possession of an LCM is a felony.  *Id.* § 7-2507.06(a)(4).

Second, District law generally requires that any person in the District who "possess[es] or control[s]" a firearm must register it with the Metropolitan Police Department (MPD).  *Id.* § 7-2502.01(a).  Relatedly, "[n]o person shall possess ammunition in the District of Columbia unless . . . [h]e is the holder of a valid registration certificate for a firearm." *Id.* § 7-2506.01(a)(3).  Possession of a firearm or ammunition without a registration certificate is a misdemeanor.  *See id.* § 7-2507.06(a).

## II.    **Procedural History**

Shortly after the Law's enactment, the D.C. Circuit upheld the Law.  *Heller v. District of Columbia* (*Heller II*), 670 F.3d 1244 (D.C. Cir. 2011).  But following the Supreme Court's more recent decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), Plaintiffs challenged the Law in 2022.  Compl. [1] ¶¶ 16–19.  Plaintiffs are four individuals (Andrew Hanson, Nathan Chaney, Eric Klun, and Tyler Yzaguirre) who allege that they would possess LCMs in the District but for the Law.  *Id.* ¶¶ 1–4.  The Complaint does not allege that Plaintiffs have been unable to register firearms with LCMs.  Nor does the Complaint allege facts showing that the Law has been enforced against Plaintiffs or that they face an imminent threat of enforcement.

The Complaint alleges two claims, both pursuant to 42 U.S.C. § 1983.  In Count I, Plaintiffs allege that the Law violates the Second Amendment, *id.* ¶ 59–60; and in Count II, Plaintiffs allege that the Law violates the Due Process Clause of the Fifth Amendment, *id.* ¶ 61. The Complaint names as defendants the District of Columbia and then-Chief of Police Robert J.

Contee III, in his official and individual capacities. *Id.* ¶¶ 5–6.[1]  The Complaint seeks declaratory, injunctive, and monetary relief.  *Id.*, Prayer.

Nearly three weeks after filing their Complaint, Plaintiffs moved for a preliminary injunction on their Second Amendment claim only [8].  The Court held the District's responsive pleading deadline in abeyance pending resolution of the motion.  Sept. 7, 2022 Min. Order.

While the motion was being briefed, and three months after Plaintiffs filed their Complaint, Plaintiffs moved pursuant to Federal Rules of Civil Procedure 15(a)(2) and 15(d) for leave to supplement their preliminary-injunction motion with a declaration from Yzaguirre [16].[2] The Court granted leave.  Oct. 31, 2022 Min. Order.  The declaration avers that, after Plaintiffs filed their Complaint, Yzaguirre sought to register "a Sig Sauer P365 for which [he] owned a 12-round magazine."  Decl. of Tyler Yzaguirre (Yzaguirre Supp. Decl.) [16-1] ¶ 2.  The declaration further avers that an MPD officer declined to accept his application because he "was attempting to register [his] P365 Sig Sauer with its 12-round magazine," which is "illegal in the District." *Id.* ¶ 6 (internal quotation marks omitted).

The Court denied Plaintiffs' motion for a preliminary injunction.  *Hanson v. District of Columbia*, 671 F. Supp. 3d 1, 3 (D.D.C. 2023).  The Court first assured itself that there was a

---

[1]    During this case, Chief Contee retired, and Pamela A. Smith became the Chief of Police. As explained further below, Chief Smith has been substituted for the official-capacity claims. Argument § III, *infra*.

[2]    Rule 15(a)(2) allows a party to amend a pleading, while Rule 15(d) allows a party to supplement a pleading.  Amended and supplemental pleadings are different.  "The former relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading; the latter deal with events subsequent to the pleading to be altered and represent additions to or continuations of the earlier pleadings."  Mary Kay Kane & Howard M. Erichson, 6A *Fed. Prac. & Proc. Civ.* § 1504 (3d ed. 2025).  Plaintiffs mistakenly cited both Rules when moving for leave and sought to supplement the preliminary-injunction motion, rather than the Complaint.  Nonetheless, the District accepts that the Court can treat the supplemental Yzaguirre declaration as a supplemental pleading because it describes post-Complaint events and serves as an addendum to the Complaint.

likelihood that Plaintiffs had standing to seek a preliminary injunction. *Id.* at 8. The Court, relying on the supplemental Yzaguirre declaration, concluded that "at least one Plaintiff, Tyler Yzaguirre, has demonstrated a substantial likelihood of standing because he was denied registration for a firearm on the ground that its magazine had a 12-round capacity in violation of D.C.'s LCM ban." *Id.* The Court further concluded that Yzaguirre's standing was sufficient to hear the merits, so the Court did not address the other Plaintiffs' standing. *Id.* Turning to the merits, the Court held that Plaintiffs failed to show a likelihood of success on their Second Amendment claim. *Id.* Because Plaintiffs so failed, the Court did not address the other preliminary-injunction factors. *Id.* n.8.

Plaintiffs appealed [30]. The Parties jointly moved to stay further proceedings in this Court pending resolution of the appeal [29], which the Court granted, May 4, 2023 Min. Order. On appeal, the D.C. Circuit affirmed the Court's order denying Plaintiffs' motion for a preliminary injunction, concluding that Plaintiffs failed to satisfy all preliminary-injunction factors. *Hanson v. District of Columbia*, 120 F.4th 223, 248 (D.C. Cir. 2024) (per curiam). Plaintiffs petitioned the Supreme Court for a writ of certiorari, and this Court continued the stay pending resolution of the petition. Feb. 4, 2025 Min. Order. The Supreme Court denied Plaintiffs' petition. *Hanson v. District of Columbia*, --- S. Ct. ---, No. 24-936, 2025 WL 1603612 (U.S. June 6, 2025). Back in this Court, the Parties proposed a schedule for the District to file a motion to dismiss, which the Court entered. July 1, 2025 Sched. Min. Order.

## LEGAL STANDARDS

### I.    Federal Rule of Civil Procedure 12(b)(1)

A complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) if the court "lack[s] . . . subject-matter jurisdiction." To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing jurisdiction. *Bronner on Behalf of Am. Stud. Ass'n v.*

*Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020).  To carry that burden, "the plaintiff must clearly allege facts demonstrating each element" of standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (cleaned up).  Generally, the court accepts "well-pled factual allegations" while "disregard[ing] any legal conclusions, legal contentions couched as factual allegations, and unsupported factual allegations."  *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017).  If, however, the defendant disputes the "factual basis of the court's subject matter jurisdiction," then "the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss."  *Feldman v. FDIC*, 879 F.3d 347, 351 (D.C. Cir. 2018) (internal quotation marks omitted) (quoting *Phoenix Consulting v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)).  The plaintiff must then prove jurisdiction by preponderance of the evidence.  *E.g.*, *Coleman v. Toyota Motor Credit Corp.*, 109 F. Supp. 3d 4, 6 (D.D.C. 2015).

## II.    Federal Rule of Civil Procedure 12(b)(6)

A complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it "fail[s] to state a claim upon which relief can be granted."  To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Courts do not accept as true conclusory "assertions devoid of further factual enhancement," *id.* at 679 (internal quotation marks and citation omitted), or "legal conclusions," *Pueschel v. Chao*, 955 F.3d 163, 166 (D.C. Cir. 2020).

## ARGUMENT

## I.    The Court Should Dismiss Most of the Claims for Lack of Standing.

Under binding precedent, almost all claims fail for lack of standing.  Hanson, Chaney, and Klun fail to establish standing to pursue any of their claims.  And Yzaguirre only has

standing to challenge the denial of his registration certificate.  Accordingly, the Court should dismiss Hanson's, Chaney's, and Klun's claims in their entirety and narrow Yzaguirre's claims to a challenge to his inability to register the LCM-equipped gun that he in fact wants to possess. Although Yzaguirre possesses standing, his limited standing is insufficient at this stage to avoid dismissing the remaining Plaintiffs.

> ### A.    To Have Standing, Plaintiffs Must Plausibly Allege a Credible Threat of Enforcement or Denial of a Registration Certificate.

To pursue claims in federal court, a plaintiff must have standing.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  That is, he must "show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *Id.*  "And standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)."  *Id.* at 431.

In a pre-enforcement challenge to a criminal law outside the First Amendment context, like this one, precedent has further elucidated what constitutes a sufficient injury.  Plaintiffs must show that (1) they intend "to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and (2) "there exists a credible threat of prosecution thereunder."  *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).  The "threat of prosecution" must be "credible and immediate, and not merely abstract or speculative."  *Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997).  This requires more than Plaintiffs' stated "intent to commit violative acts and a conventional background expectation that the government will enforce the law."  *Seegars v. Gonzales*, 396 F.3d 1248, 1253 (D.C. Cir. 2005).  Rather, Plaintiffs must allege facts plausibly showing that they "have

been singled out or uniquely targeted by the D.C. government for prosecution." *Parker v. District of Columbia*, 478 F.3d 370, 375 (D.C. Cir. 2007), *aff'd sub nom. District of Columbia v. Heller*, 554 U.S. 570 (2008). These showings "ensur[e] that the federal courts act only when the disputes brought before them involve sharply-defined issues pressed by truly adversary parties with a genuine stake in the outcome." *Navegar*, 103 F.3d at 998.

Nonetheless, these pre-enforcement standing requirements are ordinarily no bar when a plaintiff is denied a registration certificate, which is a sufficient, independent injury-in-fact. In *Parker*, the D.C. Circuit explained that denial of a firearm registration certificate creates an injury-in-fact "to which the stringent requirements for pre-enforcement standing under *Navegar* and *Seegars* would not apply." 478 F.3d at 376. Because one plaintiff there was denied a registration certificate for a handgun, he could challenge the District's former handgun ban. *Id.* Consistent with *Parker*, the D.C. Circuit included denial of "'registration of a pistol because the magazine had a capacity of 15 rounds'" in its "recounting [of] the plaintiffs' injuries" while addressing a prior challenge to the Law in *Heller II*. *Hanson*, 671 F. Supp. 3d at 8 (quoting *Heller II*, 670 F.3d at 1249). In a similar vein, *Heller II* also addressed the District's ban on assault weapons, and the D.C. Circuit limited its consideration to the assault weapons that the plaintiffs had actually sought to register. 670 F.3d at 1249 n.*.

This precedent remains binding, as another court in this district explained twice over. *Angelo v. District of Columbia* (*Angelo I*), 648 F. Supp. 3d 116, 126–32 (D.D.C. 2022); *Angelo v. District of Columbia* (*Angelo II*), No. 22-cv-1878, 2024 WL 3741401, at *7–9 (D.D.C. Aug. 9, 2024), *appeal docketed*, No. 24-7127 (D.C. Cir. Sept. 10, 2024). Quite right, "district judges . . . are obligated to follow controlling circuit precedent until either [the D.C. Circuit], sitting en banc, or the Supreme Court, overrule[s] it." *United States v. Torres*, 115 F.3d 1033,

1036 (D.C. Cir. 1997); *see also Las Americas Immigrant Advoc. Ctr. v. DHS*, 348 F.R.D. 397,

402 (D.D.C. 2025) (Contreras, J.) (applying the high standard for finding circuit precedent

overruled).  Neither court has overruled these cases.  To the contrary, "the D.C. Circuit itself has

reckoned" with these cases but declined to overrule them.  *Angelo I*, 648 F. Supp. 3d at 130;

*accord Las Americas*, 348 F.R.D. at 402 (concluding that Supreme Court precedent did not

overrule circuit precedent when the D.C. Circuit already addressed the Supreme Court

precedent).  And this Court has rightly remained faithful to these cases, concluding, at the

preliminary-injunction stage, that Yzaguirre only had standing based on denial of a registration

certificate.  *Hanson*, 671 F. Supp. 3d at 8.

      **B.**      <u>**Hanson, Chaney, and Klun Lack Standing.**</u>

Applying this binding precedent, Hanson's, Chaney's, and Klun's claims fail for lack of

standing.  On the first prong of the test for pre-enforcement review, these Plaintiffs' allegations

that they intend to engage in constitutionally protected but statutorily proscribed conduct are too

"vague and general."  *Matthew A. Goldstein, PLLC v. U.S. Dep't of State*, 851 F.3d 1, 5 (D.C.

Cir. 2017); *see also Nat'l Shooting Sports Found. v. Atty Gen. of N.J.*, 80 F.4th 215, 219–20 (3d

Cir. 2023) ("generalized allegations" that "say[ ] little about what [the plaintiff] plans to do" are

insufficient to establish pre-enforcement standing).  These Plaintiffs do not allege what capacity

of LCMs they want to possess in the District, beyond conclusory allegations that they "own[ ]

firearm magazines capable of holding more than 10 rounds of ammunition that are stored outside

the District."  Compl. ¶¶ 1, 3–4.  But such allegations "simply parrot[ ] the terms of the statute."

*Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 610 n.9 (D.C. Cir. 2017).  Plaintiffs need to provide

"further factual enhancement" so the District and the Court can understand what ammunition

capacities are at issue.  *Id.* (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678);

*see Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 143 n.29 (1974) (explaining that "the

maturity of [pre-enforcement] disputes for resolution . . . consider[s] the likelihood that the complainant will disobey the law [and] the certainty that such disobedience will take a particular form"); *Paxton v. Dettelbach*, 105 F.4th 708, 714 (5th Cir. 2024) (plaintiffs lacked standing to challenge law criminalizing making firearm silencers for personal use when plaintiffs alleged that they would make silencers but "provided no information concerning the specific type of silencer that they allegedly intend to make or what parts they will use to make it").

What is more, with such generalized allegations, Plaintiffs have not alleged an intent to engage in conduct protected by the Second Amendment. On appeal, Plaintiffs conceded that they "agree[ ] with the District that the Second Amendment does not protect magazines of all sizes," and "there is a magazine capacity that the District can constitutionally limit." *Hanson*, 120 F.4th at 246. As a result, an allegation that Plaintiffs want to possess "magazines capable of holding more than 10 rounds" does not suffice to show that Plaintiffs want to engage in constitutionally protected but statutorily proscribed conduct because not all magazines holding more than 10 rounds are protected—as Plaintiffs themselves admitted.

On the second prong of the test for pre-enforcement review, these Plaintiffs do not allege that the Law has been enforced against them, that they face a credible, imminent threat of prosecution for violating the Law, or that they have been denied a registration certificate for a firearm with an LCM. *See* Compl. ¶¶ 1, 3–4. Instead, they simply allege that they would possess LCMs but for the Law. *Id.* Those are precisely the type of allegations that the D.C. Circuit has held are inadequate to support standing. *See Seegars*, 396 F.3d at 1254–55 (allegations that "but for" a pistol ban, plaintiffs would obtain and register pistols were insufficient). Plaintiffs cannot clear their pleading hurdle without alleging either "prior threats

against them" or "characteristics indicating an especially high probability of enforcement against them." *Id.* at 1255. These Plaintiffs fail to allege anything like that.

These Plaintiffs' failure to allege any credible threat of enforcement defeats both their claims for damages and prospective relief. *Angelo II*, 2024 WL 3741401, at *11. "The form of relief sought does not alter the fact that this is a preenforcement challenge," and these Plaintiffs have not alleged sufficient injury. *Id.* Indeed, in *Navegar*, manufacturers challenging the former federal assault weapons ban alleged loss of sales and revenue, but "the fact that they had incurred—and would continue to incur—substantial financial losses had no bearing on" whether they had faced or currently faced a threat of prosecution. *Id.* Rather, "[a] past but unfulfilled intention to violate the law does not support pre-enforcement standing." *Antonyuk v. James*, 120 F.4th 941, 1033 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 1900 (2025).

### C.    <u>Yzaguirre Only Has Limited Standing.</u>

Unlike Hanson, Chaney, and Klun, Yzaguirre filed a supplemental pleading that alleges that he was denied a registration certificate for a P365 Sig Sauer with a 12-round magazine. Yzaguirre Supp. Decl. ¶ 6. Under *Parker*, this gives him standing—but not to challenge all applications of the Law. *See Davis v. FEC*, 554 U.S. 724, 733–34 (2008) (a plaintiff who has standing to challenge one aspect of a statutory scheme "does not necessarily . . . also ha[ve] standing to challenge" another aspect); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230–36 (1990) (analyzing whether plaintiffs had standing to challenge each provision of an ordinance, even though the court of appeals did not separately address standing). Because denial of a registration certificate is the jurisdictional hook, Yzaguirre's standing is limited to challenging the denial of *that* registration certificate, which was for a P365 Sig Sauer with a 12-round magazine. To challenge the ban on possession of any other LCM capacities covered by the Law, he would need to meet "the stringent requirements for pre-enforcement standing under *Navegar*

10

and *Seegars*." *Parker*, 478 F.3d at 376. But, like the other Plaintiffs, he fails to provide plausible allegations regarding the other types of LCMs he wants to own or showing that he has been "singled out or uniquely targeted by the D.C. government for prosecution." *Id.* at 375. So he lacks standing to challenge the Law's cap on ammunition capacities of 13 rounds or more. As the Court held at the preliminary-injunction phase, Yzaguirre has faced an injury from denial of a registration certificate, *Hanson*, 671 F. Supp. 3d at 8, but that is the *only* cognizable injury that he has faced. His claims should be limited accordingly to challenging the Law's application to 12-round magazines.

### D.     Yzaguirre's Limited Standing Does Not Confer Standing on the Other Plaintiffs.

Although Yzaguirre has limited standing arising from the denial of his registration certificate, the Court still should dismiss the remaining Plaintiffs and the remainder of Yzaguirre's claims. At the preliminary-injunction phase, the Court reasoned that Yzaguirre's standing was sufficient to hear Plaintiffs' preliminary-injunction motion without analyzing the other Plaintiffs' standing. *Hanson*, 671 F. Supp. 3d at 8. The Court relied on what is sometimes called the "one-plaintiff principle": "if many plaintiffs seek the same relief and at least one of them has Article III standing, the court need not determine whether others also do." *M.M.V. v. Garland*, 1 F.4th 1100, 1110 (D.C. Cir. 2021). Plaintiffs will no doubt invoke that principle to argue that there is no need to assess each Plaintiff's standing individually or dismiss any claims. But at this stage and in this posture, the principle cannot help them for two main reasons: (1) Plaintiffs seek individualized relief, and (2) narrowing the claims will narrow the burdens of litigating and adjudicating this case.

1.    **Plaintiffs Must Each Have Standing to Proceed Because They Seek Individualized Relief.**

The one-plaintiff principle does not apply if each plaintiff seeks "individualized relief." *M.M.V.*, 1 F.4th at 1110.  Plaintiffs seek individualized relief because (1) they seek damages, (2) they assert as-applied claims, and (3) the relief available to Yzaguirre is unique to him and differs from the relief that the other Plaintiffs seek.  Because Plaintiffs seek individualized and differing forms of relief, they "must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion*, 594 U.S. at 431.

First, Plaintiffs seek monetary damages in an amount to be determined at trial.  Compl. ¶ 60, Prayer (4).  Damages are a quintessential form of individualized relief because each plaintiff must prove his damages.  *Air Transp. Ass'n of Am. v. Reno*, 80 F.3d 477, 483 (D.C. Cir. 1996); *see TransUnion*, 594 U.S. at 431 ("Every class member must have Article III standing in order to recover individual damages.").  Accordingly, the one-plaintiff principle does not apply in cases seeking damages.  *See Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017) (plaintiffs and intervenors must each establish standing when they "seek separate money judgments in their own names"); *Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, No. 19-cv-1334, 2025 WL 1884852, at *5 (D. Del. July 8, 2025) (collecting cases and authority showing that the one-plaintiff principle does not apply in cases "where money damages are at issue").

Second, Plaintiffs bring as-applied claims, in addition to facial claims.  Compl. ¶¶ 22, 60.  As-applied claims require a plaintiff to prove his own standing because he must show that the challenged law was unconstitutionally applied to *him*.  *See McCullen v. Coakley*, 573 U.S. 464, 485 n.4 (2014) ("[A] plaintiff generally cannot prevail on an as-applied challenge without showing that the law has in fact been (or is sufficiently likely to be) unconstitutionally applied to

him.”); *Wikimedia Found. v. NSA*, 857 F.3d 193, 216 (4th Cir. 2017) (each plaintiff had to establish standing to challenge a surveillance program's application to its communications).

Third, Yzaguirre's alleged injury and relief sought differ from the other Plaintiffs', so his standing cannot confer standing upon them. "[A] case or controversy as to one claim does not extend the judicial power to different claims or forms of relief[.]" *Town of Chester*, 581 U.S. at 339 n.3 (internal quotation marks and citation omitted). "The most promising approach to defining the 'claim' in determining the scope of standing may be to begin with injury in fact, the core element of Article III standing theory." Edward H. Cooper, 13B *Fed. Prac. & Proc. Juris.* § 3531.16 (3d ed. 2025). As explained above, Yzaguirre's only cognizable injury is the denial of a registration certificate for his gun with a 12-round magazine, and he is limited to challenging the Law's application to that LCM. The other Plaintiffs do not share that injury because only Yzaguirre's registration application was denied for *his* LCM-equipped gun. Likewise, because the only relief that Yzaguirre can seek is relief related to that denial (*e.g.*, an injunction allowing him to register his LCM-equipped gun), the other Plaintiffs are "pursu[ing] relief that is different from that which is sought by a party with standing." *Town of Chester*, 581 U.S. at 440. Indeed, there are no plausible factual allegations establishing that Plaintiffs seek 12-round LCMs because their allegations about the LCMs that they want simply parrot the statute. *See* pp.8–9, *supra*. As a result, they must establish their own standing. *Town of Chester*, 581 U.S. at 440.

## 2. Dismissing Claims for Which Jurisdiction Is Lacking Will Helpfully Narrow the Scope of this Case.

The one-plaintiff principle "stands only for the proposition that a court need not decide the standing of each plaintiff seeking the same relief. But it does not *prohibit* the [C]ourt from paring down a case by eliminating plaintiffs who lack standing . . . ." *M.M.V.*, 1 F.4th at 1110 (internal quotation marks and citation omitted). Here, there is good reason to "sensibly

13

winnow[ ] away" claims for which jurisdiction is lacking before this case proceeds. *Id.* at 1111. In chief, dismissing Hanson, Chaney, and Klun, as well as limiting Yzaguirre's claims, will narrow and frame the issues that the Parties must develop. In turn, "[n]arrowing the case to its viable claims and viable parties often narrows the burden of adjudicating the relevant issues." *Kansas v. Biden*, 736 F. Supp. 3d 1020, 1040 (D. Kan. 2024), *appeal docketed*, No. 24-3093 (10th Cir. July 9, 2024); *see Wis. State Senate v. City of Green Bay*, 719 F. Supp. 3d 869, 876 (E.D. Wis. 2024) ("Allowing parties with no standing to continue to participate in the case merely invites confusion and likely increases the time and resources needed to resolve the matter.").

As the D.C. Circuit's opinion in this case shows, a Second Amendment challenge to a regulation of an alleged "arm" is arm-specific. As noted above, Plaintiffs conceded "the Second Amendment does not protect magazines of all sizes," and Plaintiffs "simply disagree[ ] with where the District has drawn that line." 120 F.4th at 246. So the D.C. Circuit focused on the LCMs that Plaintiffs "wish to possess": those "containing up to 17 bullets," which the court called "extra-large capacity magazine[s]" or ELCMs. *Id.* at 230. In accord, when taking up the merits aspect of Plaintiffs' request for a preliminary injunction, the court stated:

> Because the appellants conceded at oral argument that they had not made the requisite showing for a facial challenge to the District's magazine cap, . . . we address their challenge only as-applied and only to the type of weapons equipped with an ELCM that appellants actually own and want to register in the District, namely, handgun magazines holding between 12 and 17 rounds.

*Id.* at 232 n.2.

Then, the court identified several factual inquiries that are arm-specific. For example, at step one of the *Bruen* framework, the court explained that "the answer" to whether ELCMs are protected arms "is not to be found solely by looking to the number of a *certain* weapon in private

14

hands."  *Id.* at 232–33 (emphasis added).  Rather, "the role of ELCMs for self-defense" is also part of the inquiry.  *Id.* at 233.

The upshot of all this is that the factual issues to be explored in discovery, argued by the Parties at summary judgment or trial, and decided by the Court are LCM-capacity-specific.  Step one of *Bruen* will involve assessing the number of a particular type of LCM in circulation and how a specific number of bullets plays a role in self-defense.  And based on Plaintiffs' concession, not all LCMs, at every capacity, are at issue in this case.  So discovery will differ depending on what specific LCMs are at issue.  For example, asking an expert to opine on the self-defense utility of a 12-round LCM will produce a different report than asking an expert to opine on the self-defense utility of a 30-round LCM.

Accordingly, the Parties need to know what capacity magazines are at issue before they enter discovery.  Those LCMs are ones that have in fact been denied to Plaintiffs.  In other words, Plaintiffs' standing frames the merits inquiries.  Only one Plaintiff, Yzaguirre, has been denied an LCM, and that LCM held 12 rounds.  If the Court dismisses all claims except Yzaguirre's challenge to the denial of a registration for his 12-round LCM, then the Parties and Court can proceed in this case focused on 12-round LCMs.  That sensible winnowing will contain the scope of discovery and merits briefing, as the Parties and Court will not need to address all possible LCM capacities.  In short, this will be a more manageable case for all involved if the Court undertakes a brief assessment of each Plaintiff's standing at the outset.

Further, narrowing this case to only one capacity of LCMs ensures that this case addresses a concrete dispute between parties rather than "questions of law arising outside of cases and controversies."  *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011).  Constitutional litigation carries "significant implications" because it "can result in rules of wide

applicability that are beyond [the legislature's] power to change." *Id.* at 146.  Such implications

"[m]ak[e] the Article III standing inquiry all the more necessary." *Id.*  Here, confining this case

to the question of whether it is unconstitutional to ban a specific ammunition capacity leaves

questions about other ammunition capacities to the democratic branches.

Assessing each Plaintiff's standing also makes sense because "at some point in this

litigation the [C]ourt would have to resolve the issue of [each Plaintiff's] standing," so the Court

might as well do so now.  *We Are Am./Somos Am., Coal. of Ariz. v. Maricopa Cnty. Bd. of

Supervisors*, 809 F. Supp. 2d 1084, 1092 (D. Ariz. 2011).  At the relief stage, the Court will need

to assess each Plaintiff's standing because "Article III does not give federal courts the power to

order relief to any uninjured plaintiff."  *TransUnion LLC*, 594 U.S. at 431 (internal quotation

marks omitted) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts,

C.J., concurring)); *see also All. for Nat. Health, USA v. United States*, No. 24-cv-2989, 2025 WL

1938165, at *4 (D.D.C. July 15, 2025) (citing *TransUnion* and stating that "[t]he Court will

evaluate each plaintiff's standing one by one").  "[F]iguring out whether all, most, or merely one

of the parties has standing will be exceptionally important for determining what relief a court

should ultimately issue."  William Baude & Samuel L. Bray, *Proper Parties, Proper Relief*, 137

Harv. L. Rev. 153, 171 (2023).

To illustrate the point, the Court can only issue an injunction prohibiting a law's

enforcement against the plaintiffs.  *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2548 (2025).  And

"[o]nly a proper party to an action can enforce an injunction that results from a final judgment."

*Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 918 n.6 (9th Cir. 2004); *see* Fed. R.

Civ. P. 65(d) (an injunctive order is only binding on the parties; their "officers, agents, servants,

employees, and attorneys"; and "other persons who are in active concert or participation with

[them]").  So only the Plaintiffs who can demonstrate standing should be able to obtain an injunction.  *See Trump*, 145 S. Ct. at 2562–63 (staying universal injunctions "to the extent that the injunctions are broader than necessary to provide complete relief to each plaintiff with standing to sue"); *Gill v. Whitford*, 585 U.S. 48, 66 (2018) ("a plaintiff's remedy must be limited to the inadequacy that produced his injury in fact" (cleaned up)).  All said, the Court will need to make determinations of each Plaintiff's standing at some point, and it is easier and more beneficial to do so now.

On the other side of the ledger, there is no good reason to skip over Plaintiffs' standing.  The primary reason for applying the one-plaintiff principle is judicial economy:  The principle saves courts time and effort in resolving each plaintiff's standing, which can be sizable in cases with many plaintiffs or complicated standing issues.  But that is not this case.  There are only four Plaintiffs.  The standing issue is identical for each of them.  And the standing issue only requires applying straightforward, binding circuit precedent to a handful of threadbare factual allegations.  The best evidence for the proposition that the standing issues here are uncomplicated is this:  The District raised identical standing arguments in a related case challenging the Law, and the plaintiffs there conceded that "the Court must grant the District's motion."  Pls.' Opp'n [13] at 4, *Wehr-Darroca v. District of Columbia*, No. 1:24-cv-03504-RC (D.D.C. Mar. 13, 2025).[3]  Thus, the standing issues here just do not implicate the kind of intensive inquiries that justify invocation of the one-plaintiff principle.

---

[3]    In a similar vein, the District moved to dismiss a challenge to the District's assault weapons ban and relied on the *Navegar-Seegars-Parker* line of cases—and, in response, one set of plaintiffs voluntarily dismissed their case.  Mem. of P. & A. in Supp. of Defs.' Combined Mot. to Dismiss [26] at 7–9, *Yzaguirre v. District of Columbia*, No. 1:24-cv-01828-APM (D.D.C. Jan. 15, 2025); *Clemendor* Pls.' Not. of Voluntary Dismissal [28], *Yzaguirre v. District of Columbia*, No. 1:24-cv-01828-APM (D.D.C. Mar. 5, 2025).

II.    **The Complaint Fails to State a Due Process Claim.**

Plaintiffs' due process claim consists of a single allegation: "[The Law's] prohibition on possession of a firearm feeding device capable of holding in excess of 10 rounds is arbitrary and irrational and thus violates the due process clause of the Fifth Amendment . . . in light of the Plaintiffs' Second Amendment rights to keep and bear arms for self-defense." Compl. ¶ 61. Neither this allegation nor any other allegations suffice to state a due process claim.

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Clause encompasses "a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests" regardless of "what process is provided." *Reno v. Flores*, 507 U.S. 292, 302 (1993). The Clause also encompasses a procedural component that protects against the deprivation of constitutionally protected "liberty or property interest[s] without providing appropriate procedural protections." *Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017) (internal quotation marks omitted) (quoting *Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009)). The Complaint contains no allegations regarding procedural protections, so it presumably is raising a substantive due process claim.

"The doctrine of substantive due process is narrow." *Fraternal Ord. of Police, Metro. Police Dep't Lab. Comm., D.C. Police Union v. District of Columbia*, 45 F.4th 954, 962 (D.C. Cir. 2022). Under the doctrine, the Supreme Court has recognized a select few "fundamental rights," even though they are not enumerated in the Constitution's text, that mostly deal with privacy and family matters. *Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 702 (D.C. Cir. 2007) (en banc) (internal quotation marks omitted) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). Still, the Supreme Court has cautioned that substantive due process should remain limited. *Dobbs v. Jackson Women's*

*Health Org.*, 597 U.S. 215, 239 (2022).  Here, the substantive due process claim fails for any of three reasons.

First, the Complaint fails to state such a claim because the Complaint contains only a "stray remark[ ]" as its due process claim, and that is just not enough.  *Jones v. District of Columbia*, No. 21-cv-836, 2021 WL 5206207, at *10 (D.D.C. Nov. 9, 2021) (Contreras, J.).  The due process count contains only a "naked assertion[ ]' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557), that the Law is "arbitrary and irrational and thus violates" the Fifth Amendment, Compl. ¶ 61.  The remainder of the Complaint makes no reference to the due process claim and is instead laser-focused on alleging that the Law "infringes Plaintiffs' right to keep and bear arms."  *Id.* at 6.  There are no factual allegations aimed at supporting the Complaint's vague, conclusory statement that the Law is "arbitrary and irrational."  *Id.* ¶ 61.  This is truly "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  Such "a conclusory statement" that the Law "violate[s] [Plaintiffs'] substantive due process rights" is insufficient to survive a motion to dismiss.  *Hamal v. DHS*, No. 19-cv-2534, 2020 WL 2934954, at *4 n.3 (D.D.C. June 3, 2020) (Contreras, J.).

Second, the substantive due process claim also fails because it is duplicative.  Substantive due process is not intended to "do the work" of enumerated rights, like the Second Amendment. *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 721 (2010) (plurality).  "'Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing' a claim." *Abdelfattah v. DHS*, 787 F.3d 524, 541 (D.C. Cir. 2015) (quoting *Albright v. Oliver*, 510 U.S.

266, 273 (1994) (plurality)); *see also, e.g.*, *Elkins v. District of Columbia*, 690 F.3d 554, 562

(D.C. Cir. 2012).  If a plaintiff pleads a substantive due process claim along with a claim that is

"cognizable" under a specific Amendment, then the substantive due process claim should be

dismissed.  *Abdelfattah*, 787 F.3d at 541.  "A claim need only be *cognizable* under a more

specific Amendment to preclude protection under general notions of substantive due process—

the claim need not actually succeed under the more specific Amendment for this rule to apply."

*Matthews v. District of Columbia*, 507 F. Supp. 3d 203, 211–12 (D.D.C. 2020).

The Second Amendment already protects Plaintiffs' "rights to keep and bear arms for

self-defense"—as Plaintiffs themselves allege in their due process count.  Compl. ¶ 61.

Consequently, Plaintiffs "cannot proceed under the doctrine of substantive due process" but must

instead proceed under the Second Amendment.  *Abdelfattah*, 787 F.3d at 541.[4]  The Complaint

itself makes this point when Plaintiffs state that "it would be error for the Court to evaluate the

regulation at issue under some type of the means-end tiers of scrutiny approach *Bruen*

specifically rejects.  The appropriate test is the text of the Second Amendment and the nation's

historical tradition of firearms regulation."  Compl. ¶ 58 (internal citation omitted).

---

[4]    *See also, e.g.*, *United States v. Portillo-Munoz*, 643 F.3d 437, 442 n.4 (5th Cir. 2011)
("Since the Second Amendment explicitly provides for a constitutional right to bear arms,
Portillo cannot look to the due process clause as an additional source of protection for a right to
keep and bear arms."); *United States v. Carey*, 602 F.3d 738, 741 n.2 (6th Cir. 2010) (declining
to consider claims that "conflate the enumerated Second Amendment right with Equal Protection
and Due Process protections under the Fifth Amendment"); *Gardner v. Vespia*, 252 F.3d 500,
503 (1st Cir. 2001) ("The thrust of Gardner's challenge is the infringement upon his right to bear
arms, and Second Amendment jurisprudence provides an adequate answer to this challenge.");
*Wendt v. Iowa*, No. 17-cv-423, 2018 WL 11463010, at *10 (S.D. Iowa July 26, 2018) (rejecting
substantive due process claim that was duplicative of Second Amendment claim), *aff'd*, 971 F.3d
816 (8th Cir. 2020); *cf. United States v. Sitladeen*, 64 F.4th 978, 988 (8th Cir. 2023) (relying on
*Albright* to reject equal protection claim that was duplicative of a Second Amendment claim).

Third, Plaintiffs cannot plausibly allege that the Law is arbitrary and irrational.  The D.C. Circuit has held that a challenged policy is not arbitrary and irrational under substantive due process if it has a rational basis.  *Emory v. United Air Lines, Inc.*, 720 F.3d 915, 922–23 (D.C. Cir. 2013).  A law has a rational basis "if there is *any* reasonably conceivable state of facts that *could* provide a rational basis for the classification."  *Id.* at 922 (emphases in original) (internal quotation marks omitted) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).  "At the motion-to-dismiss stage, then, the plaintiff must plausibly allege facts showing that no reasonably conceivable state of facts could provide a rational basis for the challenged policy."  *Sanchez v. Off. of State Superintendent of Educ.*, 45 F.4th 388, 396 (D.C. Cir. 2022).  "That is a tall task . . . ."  *Id.*

As the Complaint acknowledges, Compl. ¶ 19, the D.C. Circuit previously upheld the Law under intermediate scrutiny, concluding that LCMs "greatly increase the firepower of mass shooters" and "tend to pose a danger to innocent people and particularly to police officers," *Heller II*, 670 F.3d at 1263–64 (internal quotation marks and citation omitted).  If the Law is valid under intermediate scrutiny, then Plaintiffs cannot possibly allege that it is arbitrary and irrational.  *See Ocean State Tactical, LLC v. Rhode Island*, 646 F. Supp. 3d 368, 398 (D.R.I. 2022) (rejecting due process challenge to Rhode Island's LCM law when the First Circuit had previously upheld it under intermediate scrutiny), *aff'd on other grounds*, 95 F.4th 38 (1st Cir. 2024), *cert. denied*, No. 24-131, 2025 WL 1549866 (U.S. June 2, 2025).  Indeed, a conceivably rational justification is readily apparent.  The legislature could reasonably conceive that LCMs enable a user to continuously fire between 12 and 100 rounds without reloading; and this feature allows a lone person to quickly kill or wound swaths of people without pause; so banning LCMs will reduce the possibility of mass shootings.  In short, a legislature could reasonably conceive

21

that limiting ammunition capacity prevents the use of augmented firepower that is best suited for, and results in, mass casualties.

In addition, it cannot be that capping magazine capacity is arbitrary and irrational because Plaintiffs conceded that "there *is* a magazine capacity that the District can constitutionally limit." *Hanson*, 120 F.4th at 246 (emphasis added). If the issue, then, is that Plaintiffs "disagree [ ] with where the District has drawn that line," *id.*, then the Complaint fails to provide any allegations indicating where that line should be. In any event, disputes over legislative line-drawing do not give rise to a claim that a law lacks a rational basis. *Sanchez*, 45 F.4th at 398.

### III.    The Claims Against the Chief of Police Fail.

The Complaint needlessly and erroneously named as a defendant former Chief Contee, both in his official and individual capacities. Compl. ¶ 8. The claims against Chief Contee—and his successor for that matter—fail under settled § 1983 law.

As to the official-capacity claims, Chief Smith was automatically substituted for former Chief Contee once she took over for him. Fed. R. Civ. P. 25(d). Claims against Chief Smith in her official capacity are treated as claims against the District. *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996); *Johnson v. Fenty*, No. 10-5105, 2010 WL 4340344, at *1 (D.C. Cir. Oct. 1, 2010) (per curiam). But Plaintiffs already named the District as the main defendant. Compl. ¶ 5. As a result, the official-capacity claims against Chief Smith are "redundant" and should be dismissed. *E.g.*, *Lopez v. District of Columbia*, 268 F. Supp. 3d 256, 259 (D.D.C. 2017); *Rubio v. District of Columbia* (*Rubio I*), No. 23-cv-719, 2024 WL 3400227, at *8 (D.D.C. July 12, 2024).

Automatic substitution under "Rule 25(d) applies only if the officer is sued 'in an official capacity.'" Mary Kay Kane & Allan Stein, 7C *Fed. Prac. & Proc. Civ.* § 1960 (3d ed. 2025). So the individual-capacity claims against former Chief Contee are still pending. But they

nonetheless fail to state a claim, although the reasons differ based on the type of relief that Plaintiffs seek.  To the extent that Plaintiffs seek injunctive and declaratory relief, such relief is not available against individual government defendants sued in their individual capacities, as this Court has recognized.  *BEG Invs., LLC v. Alberti*, 34 F. Supp. 3d 68, 80 (D.D.C. 2014) (Contreras, J.); *see also, e.g.*, *Jones v. U.S. Secret Serv.*, 701 F. Supp. 3d 4, 14 n.2 (D.D.C. 2023), *aff'd*, --- F.4th ----, No. 23-5288, 2025 WL 1933404 (D.C. Cir. July 15, 2025); *Corsi v. Mueller*, 422 F. Supp. 3d 51, 68 (D.D.C. 2019), *aff'd*, 819 F. App'x 6 (D.C. Cir. 2020).  To the extent that Plaintiffs seek monetary damages against former Chief Contee in his individual capacity, that claim fails for either of two reasons.

First, the Complaint fails to plausibly allege any personal involvement by former Chief Contee in depriving the constitutional rights of these four Plaintiffs.  To state a claim against a government official in his individual capacity, "a plaintiff must plead that [the] Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  This means that a plaintiff must allege "specific involvement on [the individual defendant's] part" in depriving *the plaintiff's* constitutional rights.  *Simpkins v. D.C. Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997).  Allegations that a high-level official has responsibility for administering and enforcing a challenged policy are not enough.  *E.g.*, *Rubio v. District of Columbia* (*Rubio II*), No. 23-cv-719, 2024 WL 4957373, at *4 (D.D.C. Dec. 3, 2024), *aff'd sub nom. Rubio v. D.C. Dep't of Hum. Servs.*, No. 24-7183, 2025 WL 1189459 (D.C. Cir. Apr. 22, 2025); *Bettis v. Bowser*, No. 19-cv-3625, 2020 WL 5632414, at *3 (D.D.C. Sept. 21, 2020); *Copeland v. District of Columbia*, No. 16-cv-36, 2016 WL 2771120, at *1 (D.D.C. May 13, 2016).  Here, the Complaint only contains boilerplate, conclusory allegations that former Chief Contee administered and enforced the "challenged laws, customs, and practices"

(presumably the Law).  Compl. ¶ 6.  Former Chief Contee "is not alleged to have played any personal role" in any events involving Plaintiffs.  *Miller v. District of Columbia*, 319 F. Supp. 3d 308, 313 n.1 (D.D.C. 2018).  And the Complaint "alleges no acts by" former Chief Contee. *Navab-Safavi v. Glassman*, 637 F.3d 311, 319 (D.C. Cir. 2011).  As a result, the Complaint fails to plausibly allege personal involvement by former Chief Contee, so the damages claims against him in his individual capacity should be dismissed.

Second, and regardless, former Chief Contee is entitled to qualified immunity.  Individual defendants "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'"  *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  For a defendant to violate a "clearly established" right, "existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'"  *Id.* at 63 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  The Court may dismiss a claim as barred by qualified immunity when, even if the complaint plausibly alleges a statutory or constitutional violation, that violation was not clearly established by existing law.  *Ziglar v. Abbasi*, 582 U.S. 120, 152 (2017); *Jones*, 2021 WL 5206207, at *3, 7–8.

Here, even assuming that the Law is unconstitutional and former Chief Contee violated Plaintiffs' constitutional rights by enforcing it, the unconstitutionality of the Law was not clearly established "by 'controlling authority' or 'a robust consensus of cases of persuasive authority'" while former Chief Contee was in office.  *Wesby*, 583 U.S. at 63 (quoting *al-Kidd*, 563 U.S. at 741–42).  Neither the Supreme Court nor the D.C. Circuit has ever held that LCM bans are unconstitutional.  To the contrary, the D.C. Circuit has held in this case that Plaintiffs are unlikely to succeed on their claims that the Law is unconstitutional.  Thus, it has never been

clearly established that the Law or LCM bans are unconstitutional, so former Chief Contee is entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the Court should dismiss (1) all claims except Yzaguirre's challenge to the denial of a firearm registration certificate, for lack of standing, (2) Count II for failure to state a claim, and (3) all claims against former Chief Contee and his successor for failure to state a claim.

Date: July 29, 2025.                              Respectfully submitted,

                                                  BRIAN L. SCHWALB
                                                  Attorney General for the District of Columbia

                                                  CHAD COPELAND
                                                  Deputy Attorney General
                                                  Civil Litigation Division

                                                  /s/ Matthew R. Blecher
                                                  MATTHEW R. BLECHER [1012957]
                                                  Chief, Civil Litigation Division, Equity Section

                                                  /s/ Honey Morton
                                                  HONEY MORTON [1019878]
                                                  Assistant Chief, Equity Section

                                                  /s/ Adam J. Tuetken
                                                  ADAM J. TUETKEN [242215]
                                                  Special Counsel for Firearm Safety
                                                  RICHARD P. SOBIECKI [500163]
                                                  MATEYA B. KELLEY [888219451]
                                                  HELEN M. RAVE [90003876]
                                                  Assistant Attorneys General
                                                  Civil Litigation Division
                                                  400 6th Street, NW
                                                  Washington, D.C. 20001
                                                  (202) 735-7474
                                                  adam.tuetken@dc.gov

                                                  Counsel for Defendants