### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANDREW HANSON, ET AL.** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 22-cv-2256 RC |
| | ) |
| **DISTRICT OF COLUMBIA, ET AL.** | ) |
| | ) |
| Defendants. | ) |
| ——————————————————————— | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
## TO MOTION TO DISMISS

**ANDREW HANSON**

**TYLER YZAGUIRRE**

**NATHAN CHANEY**

**ERIC KLUN**

George L. Lyon, Jr. (D.C. Bar No. 388678)
Arsenal Attorneys
4000 Legato Road, Suite 1100
Fairfax, VA 22033
202-669-0442, fax 202-483-9267
gll@arsenalattorneys.com

Matthew J. Bergstrom (D.C. Bar. No. 989706)
Arsenal Attorneys
4000 Legato Road, Suite 1100
Fairfax, VA 22033
800-819-0608
mjb@arsenalattorneys.com

*Attorneys for Plaintiffs*

Dated:   August 28, 2025

# TABLE OF CONTENTS

Page

I.  Introduction ………………………………………………………………1

II.  Defendants are correct that former Chief Contee should be dismissed from this
action; Current Chief Smith should be substituted for Chief Contee …………………..2

III.  All Plaintiffs have standing to challenge the plus-10 magazine ban ………………………3

    A.  Plaintiffs do not seek individualized relief ………………………………………...3

    B.  Yzaguirre's claim is not different from the claims of the other Plaintiffs …………4

    C.  The *Navegar* line of cases is no longer good law ……………………………………5

        1.  *Susan B. Anthony List* clarified standing for pre-enforcement challenges …….6

        2.  Precedent indicates standing exists where the challenged exercise
of governmental power is regulatory, proscriptive, or compulsory in
nature, and the complainant is presently or prospectively subject thereto …….9

        3.  *Whole Woman's Health* eviscerates any vestige of authority the *Navegar*
lines of cases retains ……………………………………..…………………...18

        4.  No other circuit applies a *Navegar* like standing test …………………………..24

IV.  Conclusion ……………………………………………………………… 27

i

## TABLE OF AUTHORITIES

**Cases**                                                                     Page(s)

*Am. Civil Liberties Union v. The Florida Bar*,
    999 F.2d 1486 (11th Cir. 1993) ................................................26

*American Library Ass'n v. Barr*,
    956 F.2d 1178 (D.C. Cir. 1992) ...........................................10, 11

*Angelo v. District of Columbia*,
    No. 22-1878 (RDM),
    slip op. (D.D.C. Aug. 9, 2024) .........................................19, 20

*Angelo v. District of Columbia*,
    648 F. Supp.3d 648  (D.D.C. 2024) .........................................8

*Antonyuk v. Chiumento*,
    89 F.4th 271 (2d Cir. 2023) ................................................25

*Attias v. Carefirst, Inc.*,
    865 F.3d 620 (D.C. Cir. 2017) .......................................7, 8, 12, 15

*Babbitt v. UFW Nat'l Union*,
    442 U.S. 289 (1979) ................................................6, 7, 17, 18, 26

*Baughcum v. Jackson*,
    92 F.4th 1024 (11th Cir. 2024) ............................................26

*Broadrick v. Oklahoma*,
    413 U.S. 601 (1973) ......................................................23

*Bruce v. United States*,
    305 A.3d 381 (D.C. 2023) ................................................8, 9

*Cayuga Nation v. Tanner*,
    824 F.3d 321 (2d Cir. 2016) ..............................................25

*City Council of Los Angeles* v. *Taxpayers for Vincent v. Taxpayers*,
    466 U.S. 789 (1984) ......................................................23

*Champion v. United States*,
    307 A.3d 425 (D.C. 2024) .................................................8

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398, 414 (2013) .............................................6, 12, 13

*  *Denotes principal cases relied upon*

*Ctr. for Individual Freedom v. Carmouche*,
   449 F.3d 655 (5th Cir. 2006) ..................................................22, 23

*Davis v. Grimes*,
   9 F. Supp. 3d 12 (D. Mass. 2014) .............................................25

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ..........................................................2, 4

*Doe v. Bolton*,
   410 U.S. 179 (1973) .......................................................18, 23

*Epperson v. Ark.*,
   393 U.S. 97 (1968) ............................................................18

*Ezell v. City of Chi.*,
   651 F.3d 684 (7th Cir. 2011) .................................................25

*FEC v. Ted Cruz for Senate*,
   596 U.S. 289 (2022) ...........................................................5

*Free Enter. Fund v. Pub. Co. Acctg. Oversight Bd.*,
   561 U.S. 477 (2010) ..........................................................27

*Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*,
   344 F.3d 1288 (11th Cir. 2003) ...............................................27

*GeorgiaCarry.Org, Inc v. Georgia*,
   687 F.3d 1244 (11th Cir. 2012) ...........................................26, 27

*Haynesworth v. Miller*,
   820 F.2d 1245 (D.C. Cir. 1987) ...............................................27

*Hamilton v. Pallozzi*,
   848 F.3d 614 (4th Cir. 2017) .................................................25

*Hanson v. District of Columbia*,
   120 F.4th 223 (D.C. Cir. 2024) ..............................................4, 5

*Hedges v. Obama*,
   724 F.3d 170 (2d Cir. 2013) ..................................................24

*Hemp Indus. Ass'n v. DEA*,
   36 F.4th 278 (D.C. Cir. 2022) ................................................10

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010) .............................................................7

iii

*In re Idaho Conservation Leagues*,
   811 F.3d 502 (D.C. Cir. 2016) ........................................................................8

*International Soc'y for Krishna Consciousness v. Eaves*,
   601 F.2d 809 (5th Cir. 1979) ........................................................................26

*Jackson v. City & Cnty. of S.F.*,
   746 F.3d 953 (9th Cir. 2014) ........................................................................25

*Jacobs v. The Florida Bar*,
   50 F.3d 901 (11th Cir. 1995) ........................................................................26

*James v. United States*,
   319 A.3d 384 (D.C. 2024) ..............................................................................8

*Jones v. United States*,
   317 A.3d 373 (D.C. 2024) ..............................................................................9

*Koons v. Platkin*,
   673 F. Supp. 3d 515 (D.N.J. 2023) ..............................................................25

*Laird v. Tatum*
   408 U.S. 1 (1972) ....................................................................................11, 12

*Lane v. Rocah*,
   No. 22-cv10989 (KMK), 2024 WL 54237 (S.D.N.Y. Jan. 4, 2024) .........25

*Lion Manufacturing v. Kennedy*,
   330 F.2d 833 (D.C. Cir. 1964) ..................................................................9, 10

*Lopez v. District of Columbia*,
   268 F. Supp.3d 256 (D.D.C. 2017) ................................................................3

*McDonald v. City of Chicago*,
   561 U.S. 742 (2010) .....................................................................................23

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) ........................................................................5, 18, 27

*Matthew A. Goldstein PLLC v. U.S. Dep't of State*,
   851 F.3d 1 (D.C. Cir. 2017) ..........................................................................11

*M.M.V. v. Garland*,
   1 F.4th 1100 (D.C. Cir. 2021) ........................................................................3

*Nat'l Ass'n of Broadcasters v. FCC*,
   789 F.3d 165 (D.C. Cir. 2015) ........................................................................8

*National Conference of Catholic Bishops v. Smith*,
   653 F.2d 535 (D.C. Cir. 1981) ................................................11

*National Rifle Ass'n of America, Inc. v. McCraw*,
   719 F.3d 338 (5th Cir. 2013) ................................................25

*Nat'l Student Association v. Hershey*,
   412 F.2d 1103 (D.C. Cir. 1969) ................................................12

*N.H. Right to Life PAC v. Gardner*,
   99 F.3d 8 (1st Cir. 1996) ................................................24

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
   597 U.S. 1 (2022) ................................................2, 4, 23

*\*Navegar, Inc. v. United States*,
   103 F.3d 994 (D.C. Cir. 1997) ................................................3, 5, 13, 14, 15, 16, 17

*Parker v. District of Columbia*,
   478 F.3d 370 (D.C. Cir. 2007) ................................................3, 18

*\*Peoples Rights Org. v. City of Columbus*,
   152 F.3d 522 (6th Cir. 1998) ................................................24, 25

*Rubio v. District of Columbia*,
   No. 23-cv-719, 2024 WL 3400227 (D.D.C. 2024) ................................................3

*Saline Parents v. Garland*,
   88 F.4th 298 (D.C. Cir. 2023) ................................................11, 12

*Sanders v. United States*,
   No. 17-CF-0544, 2025 WL 420307 (D.C. Feb. 6, 2025) ................................................8

*Seegars v. Ashcroft*,
   396 F.3d 1248 (D.C. Cir. 2005) ................................................3, 14, 17, 18, 22, 24

*Sierra Club v. Jewell*,
   764 F.3d 1 (D.C. Cir. 2014) ................................................8

*Smallwood v. United States*,
   312 A.3d 219 (D.C. 2024) ................................................8

*Soundboard Ass'n v. Fed. Trade Comm'n*,
   888 F.3d 1251 (D.C. Cir. 2018) ................................................27

*Snope v. Brown*,
   Case No. 24-203 slip op., 605 U.S. __ (2025) ................................................2

*Susan B. Anthony List v. Driehaus,
  573 U.S. 149 (2014) ................................................................5, 6, 7, 8, 18

Thornhill v. Alabama,
  310 U.S. 88 (1940) ...........................................................................23

*United Presbyterian Church in the U.S.A. v. Reagan,
  738 F.2d 1375 (D.C. Cir. 1984) ...................................................9, 11, 12

United States v. Supreme Ct. of New Mexico,
  839 F.3d 888 (10th Cir. 2016) ...........................................................26

United States v. Taranto,
  No. 1:23-CR-00229 (CJN), 2024 WL 961000 (D.D.C. Mar. 6, 2024) .......................9

Village of Hoffman Estates v. Flipside, Hoffman Estates,
  455 U.S. 489 (1982) ..........................................................................11

*Virginia v. Am. Booksellers Ass'n,
  484 U.S. 383 (1988) ...............................................................6, 7, 10, 18

Vitagliano v. County of Westchester,
  71 F.4th 130 (2d. Cir. 2023) ...............................................................25

*Whole Woman's Health v. Jackson,
  595 U.S. 30 (2021) ................................................5, 18, 20, 21, 22

Wolford v. Lopez,
  116 F.4th 959 (9th Cir. 2024) ...........................................................26

Worth v. Jacobson,
  108 F.4th 677 (8th Cir. 2024) ...........................................................26

**Statutes**

18 U.S.C. § 922(g)(1) ...........................................................................1

D.C. Code § 7-2506.01(a) ..........................................1, 8, 11, 12, 13

D.C. Code § 7-2506.01(c) ......................................................................1

D.C. Code § 7-2507.06(a)(4) ...................................................................1

D.C. Code § 7-2509.07(a)(6) ...................................................................9

D.C. Code § 22-3571.01(b)(7) ................................................................1

Tex. Health & Safety Code § 171.207 .............................................19, 20

Tex. Occupational Code § 164.055) ...............................................................19

**Rules**

Fed. R. Civ. P. 12(b)(1) ...................................................................................1

Fed. R. Civ. P. 12(b)(6) ...................................................................................1

## OPPOSITION TO MOTION TO DISMISS

### I.    Introduction.

Plaintiffs herein seek a declaratory judgment that D.C. Code § 7-2506.01(b), which prohibits possession of firearm magazines capable of holding more than 10 rounds of ammunition,[1] violates their Second Amendment rights. They also seek injunctive relief and damages to remedy the Second Amendment violation.

Defendants move to dismiss portions of Plaintiffs' complaint on standing grounds pursuant to Fed. R. Civ. P. 12(b)(1) and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). While admitting Plaintiff Yzaguirre has standing because the Metropolitan Police Department ("MPD") denied Yzaguirre registration of a pistol equipped with a plus-10 (12 round) magazine, Defendants move to dismiss the other three plaintiffs because they have not similarly unsuccessfully sought to register a gun with a plus-10 magazine and MPD has not singled them out for enforcement or threatened to arrest them for violating the statute, which they of course have not violated because they are law-abiding gun owners, not violent criminals. Defendants also claim Plaintiff Yzaguirre lacks standing to contest the District's ban on magazines larger than 12 rounds because he only sought to register a gun equipped with a 12 round magazine. Defendants further move to dismiss the complaint against former Chief Conte in his individual capacity and argue for dismissing

---

[1] D.C. Code § 7-2506.01(b) provides, "No person in the District shall knowingly possess, sell, or transfer any ammunition feeding device that is, in fact, a large capacity ammunition feeding device, regardless of whether the device is attached to a firearm." D.C. Code § 7-2506.01(c) defines "large capacity ammunition feeding device" to include magazines that accept "more than 10 rounds of ammunition." D.C. Code § 7-2507.06(a)(4) makes possession of such a magazine in the District a felony, punishable by imprisonment for up to three years and a fine of up to $12,500 *See* D.C. Code § 22-3571.01(b)(7). Conviction for possessing a "large capacity ammunition feeding device" in the District would also result in a forfeiture of an individual's ability to exercise his right to keep and bear arms. *See* 18 U.S.C. § 922(g)(1) (prohibiting individuals from possessing firearms and ammunition who have been "convicted in any court of, a crime punishable by imprisonment for a term exceeding one year").

current MPD Chief Smith in her official capacity. Finally, Defendants move to dismiss Plaintiffs' claim under the Fifth Amendment's due process clause, alleging the statute would pass rational basis review and that the claim is duplicative of Plaintiffs' Second Amendment claim.

Plaintiffs agree that former Chief Contee is not currently a proper defendant and that a claim against him or Chief Smith in their individual capacity does not lie. We also agree the due process claim is duplicative of our Second Amendment claim and may be dismissed. In all other respects Defendants' motion to dismiss should be denied.

## II.    Defendants are correct that former Chief Contee should be dismissed from this action; Current Chief Smith should be substituted for Chief Contee.

We agree with Defendants the complaint should be dismissed against former Chief Contee. Former Chief Contee currently has no role at MPD to our knowledge and thus relief would not lie against him in his official capacity. Nor on reflection given the current state of the law would former Chief Contee in his individual capacity be subject personally to a claim for damages as it has not yet been clearly established that bans on plus-10 magazines are unconstitutional. *But see Snope v. Brown,* Case No. 24-203, slip op. at 2, 605 U.S. __, __ (2025) (Statement of Kavanaugh, J. respecting denial of certiorari) ("Given that millions of Americans own AR–15s and that a significant majority of the States allow possession of those rifles, petitioners have a strong argument that AR–15s are in 'common use' by law-abiding citizens and therefore are protected by the Second Amendment under *[District of Columbia v.] Heller*[, 554 U.S. 570 (2008)]."); *Id.* at 5, 605 U.S. at __ (Thomas, J., dissenting from denial of certiorari) ("'[W]eapons "in common use" today for self-defense'" and other lawful purposes remain fully protected. *[New York State Rifle Pistol Ass'n v.] Bruen,* 597 U.S. [1,] 32 [2022 (quoting *Heller,* 554 U.S., at 627)").

Although former Chief Contee should be dismissed from this action, current Chief Smith should remain a defendant in her official capacity. As MPD Chief she is tasked with enforcement

of the unconstitutional criminal statute. Plaintiffs seek declaratory and injunctive relief. She is a proper party to enjoin upon the Court declaring the plus 10 magazine ban unconstitutional. Neither of the cases Defendants cite involved a challenge to a criminal statute. *See* MTD at 22, citing *Lopez v. District of Columbia,* 268 F. Supp.3d 256 (D.D.C. 2017); *Rubio v. District of Columbia,* No. 23-cv-719, 2024 WL 3400227 (D.D.C. 2024). Chief Smith should remain a defendant.

## III.    All Plaintiffs have standing to challenge the plus-10 magazine ban.

Although acknowledging that Plaintiff Yzaguirre has standing to challenge the plus-10 magazine ban because he made the futile gesture of applying to register a pistol with a 12 round magazine, *see Parker v. District of Columbia,* 478 F.3d 370, 376 (D.C. Cir. 2007), Defendants move to dismiss the remaining three plaintiffs claiming they do not meet the heightened standing requirement of the *Navegar* line of cases.[2] MTD at 6-10.

### A.    Plaintiffs do not seek individualized relief.

Defendants acknowledge that precedent incidents that if one plaintiff has standing, the Court need not waste judicial resources analyzing standing for the other plaintiffs. *See* MTD at 11, citing *M.M.V. v. Garland*, 1 F.4th 1100, 1110 (D.C. Cir. 2021). Defendants assert the Court must nevertheless examine each Plaintiff's standing because they seek individualized relief and "narrowing the claims will narrow the burdens of litigating … this case." MTD at 11.

Defendants are mistaken. Although Plaintiffs raise an as applied challenge as well as a facial challenge to the plus-10 magazine ban, they do not seek individualized relief. Each seeks the same declaratory judgment that the plus-10 magazine ban is unconstitutional on its face and as applied to standard capacity magazines, i.e., the magazines that come standard with the firearms

---

[2] *See Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997); *Seegars v. Ashcroft*, 396 F.3d 1248 (D.C. Cir. 2005); *Parker*, 478 F.3d 370.

3

they own which Plaintiffs explained in the D.C. Circuit are magazines for handguns holding up to 17 rounds. Doc. 2 at 2-3. These are magazines in common use for lawful purposes, including self-defense, *see Hanson v. District of Columbia,* 120 F.4th 223, 233 (D.C. Cir. 2024), and are thus protected under the Second Amendment. *See Heller,* 554 U.S. at 627; *Bruen,* 597 U.S. at 32; *Snope,* slip op at 2 (statement of Kavenaugh, J.) Thus, the operative question under which Defendants bear the burden is whether history and tradition support prohibiting the possession and use for lawful purposes of commonly possessed arms such as firearm magazines. *See Bruen*, 597 U.S. at 17.  The answer to that does not vary depending on whether Plaintiffs' standard capacity magazines hold 11 rounds or 17 rounds.  And, although Plaintiffs seek damages for the violation of their Second Amendment rights, the Complaint admits that "damages appear indeterminate or unascertainable beyond a nominal amount." Doc. 2 at 8.

**B.    Yzaguirre's claim is not different from the claims of the other Plaintiffs.**

 Defendants assert Yzaguirre's claim is somehow different from that of the other Plaintiffs because his standing arises from the denial of a registration certificate for a handgun having a magazine capable of holding 12 rounds of ammunition. *See* MTD at 13. Yet, his claim is the same as each of the other Plaintiffs: that the plus-10 magazine ban violates his Second Amendment rights, and that the Court should so declare and enjoin its enforcement. That the statute has been enforced against Yzaguirre in the context of an application denial as opposed to the threat of criminal enforcement does not change the issues before this Court. The ultimate question is whether the ban comports with the Constitution -- and it does not.

Defendants' related argument that Yzaguirre only has standing to challenge the denial of his registration certificate is wrong. MTD at 10-11. The injury Yzaguirre has suffered arises directly from the application of the plus-10 magazine ban to him. That it occurs in the context of

4

an application denial is immaterial. Contrary to the cases Defendants cite, this is not a case of challenging different provision of a statute, *see* MTD at 10. There is only one provision of the statute at issue in this case and that is the provision that bans plus-10 magazines. If it is found unconstitutional, that decision will be res judicata against Defendants as to any other standard capacity magazine Yzaguirre would seek to acquire. At the very least, the burden would be on Defendants to show that any such magazine is not an arm in common use for lawful purposes. As to standard capacity magazines, that is a burden Defendants are unlikely to meet. *See Hanson,* 120 F.4th at 233.

For these reasons, the Court need not make a standing determination as to Plaintiffs other than Yzaguirre who plainly has standing. Should the Court nonetheless examine the standing of Plaintiffs Hanson, Cheney and Klun, it must determine that each of them has standing as well. For as we show herein Supreme Court precedent has eviscerated any reliance this Court may take from *Navegar* and its progeny.

### C.    The *Navegar* line of cases is no longer good law.

Since the D.C. Circuit decided *Navegar* and *Seegars*, the Supreme Court has held that "where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge an allegedly unconstitutional law threatened to be enforced." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007). *Accord Whole Woman's Health v. Jackson*, 595 U.S. 30, 35 (2021); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014). The *Navegar* standard, requiring Plaintiffs to show that they had "been personally threatened with prosecution," "singled out[,] or uniquely targeted by the D.C. government for

prosecution," *see* 103 F.3d at 1001, necessarily means "expos[ing]" themselves "to liability before bringing suit," *MedImmune, Inc.*, 549 U.S. at 128–29.[3]

### 1. *Susan B. Anthony List* clarified standing for pre-enforcement challenges.

In *Susan B. Anthony List* the Court explicitly stated the test for standing to challenge a criminal statute allegedly violative of a plaintiff's constitutional rights: "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" 573 U.S. 149, 159 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). In so holding, the Court reviewed its previous key pre-enforcement standing decisions.

In *Susan B. Anthony List,* 573 U.S. 149, the issue was whether a plaintiff had alleged a sufficiently imminent injury for standing to mount a pre-enforcement challenge to a law prohibiting false statements during a political campaign. *Id.* at 151-52. Specifically, the question was whether the plaintiff had suffered an injury in fact. *Id.* at 158. The Court pointed out that "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a "'*substantial risk*" that the harm will occur.'"" *Id.* (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414, n.5 (2013) (emphasis added).

The Court explained: "One recurring issue in our cases is determining when the threatened enforcement of a law creates an Article III injury." *Id.* at 158. "Specifically, we have held that a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and

---

[3] *But see FEC v. Cruz for Senate*, 596 U.S. 289, 298 (2022) (Supreme Court reaffirmed that a break-the-law threshold for standing "finds no support in our standing jurisprudence.")

there exists a credible threat of prosecution thereunder.'" *Id.* at 159 (quoting *Babbitt,* 442 U.S. at 298). The Court discussed several cases where it found standing, including *Babbitt, Virginia v. American Booksellers Ass'n,* 484 U.S. 383 (1988), and *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010)*. Id.* at 159-61.

It was sufficient in *Babbitt* that the "plaintiffs' fear of prosecution was not 'imaginary or wholly speculative.'" *Id.* at 160 (citing *Babbitt,* 442 U.S. at 302). In *American Booksellers*, "the 'pre-enforcement nature' of the suit was not 'troubl[ing]' because the plaintiffs had 'alleged an actual and well-founded fear that the law will be enforced against them.'" *Id.* at 160 (citing *Booksellers,* 484 U.S. at 393). In *Holder*, the plaintiffs claimed to have provided support to groups designated as terrorist organizations prior to the law's enactment and would do so in the future. *Id.* at 161. The Court found that "plaintiffs faced a '"credible threat"' of enforcement and "'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief."'" *Id.* The Court ultimately found the *Susan B. Anthony List* plaintiffs had shown a sufficiently credible threat of future injury. Lacking in *Babbitt, Booksellers*, *Holder*, and *Susan B. Anthony List* was any specific threat or singling out of the plaintiffs for future criminal enforcement.

The D.C. Circuit discussed *Susan B. Anthony List* in *Attias v. Carefirst, Inc.*, 865 F.3d 620, 627 (D.C. Cir. 2017). It explained that the Supreme Court:

> clarified that a plaintiff can establish standing by satisfying *either* the "certainly impending" test *or* the "substantial risk" test. *See* 134 S.Ct. at 2341. The Court held that an advocacy group had standing to bring a pre-enforcement challenge to an Ohio statute prohibiting false statements during election campaigns. *See id.* at 2347. The holding rested in part on the fact that the group could conceivably face criminal prosecution under the statute, *id.* at 2346, but the Court also described the risk of administrative enforcement, standing alone, as "substantial," *id.* This was so even though any future enforcement proceedings would be based on a complaint not yet made regarding a statement the group had not yet uttered against a candidate not yet identified. *See id.* at 2343-45.

865 F.3d at 626-27. Even with those contingencies, the Supreme Court found standing. The D.C.

Circuit further noted that since *Susan B. Anthony List,* it had found standing based on a "substantial

risk" of future injury. *Id.* at 627 (citing *In re Idaho Conservation Leagues*, 811 F.3d 502, 509 (D.C.

Cir. 2016) (using "significant risk" and "reasonabl[e] fears" as the standard); *Nat'l Ass'n of

Broadcasters v. FCC*, 789 F.3d 165, 181 (D.C. Cir. 2015) (using "substantial risk"); *Sierra Club

v. Jewell*, 764 F.3d 1, 7 (D.C. Cir. 2014) (using "substantial probability of injury").

 Plaintiffs' complaint here meets the requirements the Supreme Court set out in *Susan B.

Anthony List.* Each Plaintiff avers:

> He owns firearms registered within the District of Columbia.
>
> He holds a Concealed Pistol Carry License issued by the MPD Chief.
>
> He regularly carries a concealed firearm for personal protection within the District.
> He owns firearm magazines capable of holding more than 10 rounds of ammunition
> that are stored outside the District.
>
> But for D.C. Code § 7-2506.0l(b), he would possess and use such magazines within
> the District for all lawful purposes, including for self-defense.

*See* Doc. 2 at 2-3. Thus, each Plaintiff alleges 'an intention to engage in a course of conduct

arguably affected with a constitutional interest but proscribed by a statute. *Susan B. Anthony List,*

573 U.S. at 159. Moreover, the complaint alleges a "credible threat of prosecution." *Id. See*

Complaint at ¶ 6 (Defendants are "in fact presently enforcing the challenged laws, customs, and

practices…" Indeed, this Court can take judicial notice that the District enforces the plus-10

magazine ban. *See, e.g., James v. United States,* 319 A.3d 384, 388 (D.C. 2024) (defendant

convicted of violating the ban); *Smallwood v. United States,* 312 A.3d 219, 224 (D.C. 2024)

(same); *Sanders v. United States,* No. 17-CF-0544, 2025 WL 420307, at *3 n.7 (D.C. Feb. 6, 2025)

(same); *Champion v. United States,* 307 A.3d 425, 428 n.1 (D.C. 2024) (same); *Bruce v. United

States,* 305 A.3d 381, 396 (D.C. 2023) (same); *Jones v. United States,* 317 A.3d 373, 380 (D.C.

2024) (defendant prosecuted for violating the ban); *United States v. Taranto,* No. 1:23-CR-00229 (CJN), 2024 WL 961000, at *3 (D.D.C. Mar. 6, 2024) (defendant indicted for violating the ban). By contrast, the Plaintiffs in *Angelo v. District of Columbia,* 648 F.3rd 116, 126 (D.D.C. 2024) were unable to point to any instance of the District enforcing its ban on concealed pistol license holders carrying firearms on public transportation. *See* D.C. Code § 7-2509.07(a)(6). So, the threat of prosecution is plainly credible here and each Plaintiff has standing to contest the plus-10 magazine ban.

### 2. Precedent indicates standing exists where the challenged exercise of governmental power is regulatory, proscriptive, or compulsory in nature, and the complainant is presently or prospectively subject thereto.

This is plainly evident by reference to past D.C. Circuit and Supreme Court cases addressing the injury component of standing. Standing exists where the challenged exercise of governmental power is regulatory, proscriptive, or compulsory in nature, and the complainant is either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging. *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1381 (D.C. Cir. 1984). By contrast, standing will be denied where plaintiff's proposed conduct does not appear to be constrained by the statute, there is substantial uncertainty as to the statute's coverage, the government disclaims prosecution of plaintiff proposed conduct, or the alleged harm suffered by plaintiff is imagined or subject to an extended series of contingencies. *Navegar* itself arguably fits within those categories as we discuss below, but this case does not.

Take *Lion Manufacturing v. Kennedy*, 330 F.2d 833 (D.C. Cir. 1964), for example. There, plaintiffs challenged a statute prohibiting interstate shipment of certain gambling machines. The D.C. Circuit found standing lacking because "it [was] impossible to calculate from the facts before the District Court the degree to which plaintiffs are imperiled by the amended Act." *Id.* at 840. The

plaintiffs there did not "describe in detail the nature of the machines" they manufactured, so the Court had no basis to conclude they came within the Act and thus that they suffered injury. *Id.* at 838. Here there is no question but that the plus-10 magazines Plaintiffs would possess in the District violate the law. So, the risk of injury is certain and substantial.

*Hemp Indus. Ass'n v. DEA*, 36 F.4th 278 (D.C. Cir. 2022), is similar. In that case, plaintiffs sought to prevent the Drug Enforcement Administration from enforcing the Controlled Substances Act against byproducts of a hemp extraction process. *Id.* at 281. The district court dismissed the complaint, and the D.C. Circuit affirmed on the grounds that the plaintiffs were, in fact, attacking a DEA interim rule without following the required statutory (APA) process. *Id.* To the extent the plaintiffs there faced a threat of prosecution under the rule, the Court found a lack of substantial risk, stating, "[w]e would be hard-pressed to conclude that an agency rule that allegedly takes no position on the liability or immunity of a desired course of conduct can simultaneously proscribe or deny immunity for that same conduct." *Id.* at 291.

Likewise, in *American Library Ass'n v. Barr*, 956 F.2d 1178 (D.C. Cir. 1992), plaintiffs challenged provisions for seizure and forfeiture of materials related to child-pornography production. They argued the statute chilled their First Amendment activities, but the D.C. Circuit found the "government has not threatened them with enforcement," it had disclaimed that it would seize expressive materials for evidentiary purposes or seek forfeiture before a conviction, and that plaintiffs' activities, as they "described them, would not bring them within the ambit of the statutes." *Id.* at 1187, 1198.[4] Additionally, the Court noted that the plaintiffs' generalized, abstract,

---

[4] *See also Saline Parents v. Garland*, 88 F.4th 298 (D.C. Cir. 2023) (Government acknowledged "that the professed activities cited by Appellants in their Complaint fall outside the scope of the [Attorney General's] Memorandum and are fully protected by the Constitution" and stated that Appellants are not targets of any purported AG Policy"). *Accord Matthew A. Goldstein PLLC v. U.S. Dep't of State*, 851 F.3d 1, 5 (D.C. Cir. 2017) (plaintiff's allegations of "'vague and general

and hypothetical allegations suggested a lack of an actual controversy between the parties. *See id.* at 1187. The Court contrasted *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, where the Supreme Court held that the "plaintiffs had standing because the statute was 'aimed directly' at them—they would be subject to criminal prosecution for non-compliance." 956 F.2d at 1194 (quoting 484 U.S. at 392-93). Further, the D.C. Circuit explained that the Supreme Court had said that Virginia had not suggested the "'law will not be enforced,' and the Court therefore assumed it would be." 956 F.2d at 1194 (quoting 484 U.S. at 393). D.C. Code § 7-2506.01(b) is likewise directed at District gun owners and CPL holders such as Plaintiffs, and Defendants have not suggested it will not be enforced.[5] In fact as we have shown it is regularly enforced.

*United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, involved a challenge to certain aspects of an executive order relating to "foreign intelligence and counterintelligence activities of the Executive Branch." *Id.* at 1377. The D.C. Circuit found that *Laird v. Tatum* 408 U.S. 1 (1972), foreclosed standing based on the "kind of harm alleged, the 'chilling effect'" produced by "fear of being subjected to illegal surveillance and which deters them from conducting constitutionally protected activities":

> There the plaintiffs alleged that a program of intelligence gathering conducted by the Army chilled the exercise of their First Amendment rights of speech and assembly. The Court declined to entertain the suit, holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." 408 U.S. at 13-14, 92 S. Ct. at

descriptions of legal activities that the firm intends to undertake, none of which the State Department views as' unlawful").

[5] The D.C. Circuit noted similar deficiencies in *National Conference of Catholic Bishops v. Smith*, 653 F.2d 535 (D.C. Cir. 1981), an action involving the Pregnancy Discrimination Act and implementing regulations. The district court opinion noted the "government has not initiated and, according to the record before us, does not plan to institute any kind of proceedings against the plaintiffs." *Id.* at 541. Moreover, plaintiffs had not "developed a factual record of any kind with respect to their programs" which were described only in general terms. Thus, the court lacked "sufficient facts to analyze how the [act] actually impacts on the plaintiffs although they allege that it does." *Id.*

2325-2326. The Court distinguished its recognition of "chilling effect" in earlier decisions as follows:

> [I]n each of these cases, the challenged exercise of governmental power was *regulatory, proscriptive, or compulsory in nature,* and the complainant was either *presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging.*

738 F.2d at 1381 (emphases added). The D.C. Circuit explained, "By contrast here, as in *Tatum,* no part of the challenged scheme imposes or even relates to any direct governmental constraint upon the plaintiffs, and there is no reason why they would be unable to challenge any illegal surveillance of them when (and if) it occurs." 738 F.2d at 1379.[6] The D.C. Circuit contrasted *Nat'l Student Association v. Hershey*, 412 F.2d 1103 (D.C. Cir. 1969), stating that in that case plaintiffs "were subject to the direct regulation of draft registration and induction;" their complaint was the "regulation was being administered in such fashion as unduly to impede their exercise of First Amendment rights"). 738 F.3d at 1279. *See also Saline Parents*, 88 F.4th at 304 (government's exercise of power must be regulatory, proscriptive, or compulsory).

In this case, D.C. Code § 7-2506.01(b) is a direct regulatory constraint on Plaintiffs, and there is no question as to the conduct it prohibits, which is the conduct Plaintiffs would undertake if not for the statute. Here Plaintiffs' injury claim is not a "subjective chill." There is no doubt the

---

[6] *See also Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013). As the D.C. Circuit explained, the major flaw in plaintiff's argument in that case was that it rested on:

> a highly attenuated chain of possibilities. . . . Several links in this chain would have required the assumption that independent decisionmakers charged with policy discretion . . . and with resolving complex legal and factual questions . . . would exercise their discretion in a specific way. . . . With so many links in the causal chain, the injury the plaintiffs feared was too speculative to qualify as "injury in fact."

*Attias v. Carefirst, Inc.*, 865 F.3d 620, 626 (D.C. Cir. 2017), citing *Clapper*, 568 U.S. at 410-14.

plus-10 magazine ban applies to Plaintiffs, and their fear of arrest if they violate the law is not imagined or wholly speculative. *Cf. Clapper,* 568 U.S. at 417-18.

As shown above, these cases stand for the proposition that standing does not exist: where allegations are lacking that the government is targeting a plaintiff's intended conduct either because of the statute's ambiguity or other government action; because a plaintiff fails to allege his proposed conduct is proscribed; or because the government disclaims an intent to enforce the provision against the plaintiff. By contrast, where the government's action is regulatory, proscriptive, or compulsory standing exists unless circumstances indicate a lack of substantial risk of prosecution. That is not the situation here.

In *Navegar*, prosecutorial uncertainty was driven largely by the nature of the argument plaintiffs brought in that case—a void-for-vagueness challenge premised on the notion the United States *might* someday aggressively *misapply* a poorly written statute, which rendered the potential injury asserted by plaintiffs far more speculative because it turned on a murky question of statutory interpretation and administrative intent. 103 F.3d at 1001–02. Here, though, the law is clear: if a Plaintiff possesses a plus-10 magazine in the District, he will have unquestionably broken the law, and in the normal course, he would be arrested if caught doing so and be charged with a multiyear felony. D.C. Code § 7-2506.01(b).

In *Navegar*, the Act explicitly listed certain banned firearms made solely by certain companies, and it also listed several gun features that could render a firearm illegal. 103 F.3d at 997. For the latter restriction, if a firearm had two of the five specified features, it was prohibited. *Id*. After visits from the ATF, the *Navegar* plaintiffs "ceased the manufacture and transfer of the outlawed weapons" and "expressed no intention to violate the Act in the future." *Id*. Rather than

risk criminal sanction, the *Navegar* plaintiffs sued, arguing that the Act exceeded Congress's delegated powers, was an unconstitutional bill of attainder, and was void for vagueness. *Id.* at 996.

The D.C. Circuit held that, because the *Navegar* plaintiffs' "enumerated powers challenge [and] Bill of Attainder claims[] involve[d] portions of the Act that single[d] out specific weapons manufactured only by the" plaintiffs, the plaintiffs had standing to advance those claims. *Id.* at 999–1000. In the Court's view, because the plaintiffs were the only manufacturers to make those specific firearms, the "Act in effect single[d] [them] out." *Id.* at 1000. "[F]or those weapons," the Court reasoned, "the threat of prosecution could be deemed speculative 'only if it is likely that the government may simply decline to enforce these provisions at all.'" *Seegars*, 396 F.3d at 1253 (quoting and discussing *Navegar*, 103 F.3d at 1000). So far, so good.

Critically, the *Navegar* Court considered—and based on the same concerns Plaintiffs raise here, rejected—a stricter pre-enforcement standing rule. The *Navegar* Court quipped: "To imagine that the government would conduct itself in so chimerical a fashion would be to declare in effect that federal courts may never, in the absence of an explicit verbal 'threat,' decide pre[-]enforcement challenges to criminal statutes." *Id.* at 1000. And to be certain, *Navegar* emphasized that "[t]his has *never* been the law." *Id.* (emphasis added). Instead, the *Navegar* Court correctly observed that "[t]o require litigants . . . to violate the law and subject themselves to criminal prosecution before their challenges may be heard would create incentives that are perverse from the perspective of law enforcement, unfair to the litigants, and totally unrelated to the constitutional or prudential concerns underlying the doctrine of justiciability." *Id*. at 1000–01.

The harder question for the *Navegar* Court was whether the Act's list of firearms *features* created an imminent risk of injuring plaintiffs. The plaintiffs' primary argument was that "provisions that outlaw firearms 'known as . . . revolving cylinder shotguns' and semiautomatic

14

pistols that have two out of five listed characteristics" failed the Due Process Clause's void-for-vagueness doctrine.[7] For purposes of this argument, the Court declined to find that "a genuine threat of enforcement ha[d] given rise to the requisite 'injury in fact.'" *Id.* at 1001.

*Navegar*'s conclusion, however, was driven by the uniquely murky nature of void-for-vagueness challenges. According to the Court, "because the general nature of the language in these portions of the Act makes it impossible to foretell precisely how these provisions *may be applied*, the issues presented in these challenges are less fit for adjudication, suggesting additional concerns as to their ripeness." *Id.* (emphasis added). Because the Court could find the Act "impermissibly vague on its face only if [it] conclude[d] that [the Act] is capable of no valid application," the "absence of an enforcement action either commenced or specifically threatened" meant there existed "no actual or imminent concrete application of the statute in which to anchor [the Court's] inquiry into whether any valid application is possible." *Id.* at 1001–02.

In other words, the *Navegar* plaintiffs had argued that law enforcement may (or may not) *interpret* the Act in a way that would subject them to criminal liability for manufacturing certain firearms, and the uncertainty about whether they were in fact violating the Act was what transgressed their due process rights. But because it remained speculative whether (1) law enforcement would *interpret* the Act in such a way as to sweep them under its umbrella, and even

---

[7] *Navegar*, 103 F.3d at 1001 (citation omitted). The *Navegar* Court also concluded that the plaintiffs lacked standing to maintain their "second enumerated powers claim," which "challenge[d] the portion of the Act outlawing 'large capacity ammunition feeding devices.'" *Id.* The Court did not specifically address why it concluded that the plaintiffs lacked standing to maintain this claim, but it would appear that the same concerns the Court articulated with respect to how the government would apply this provision drove the Court's conclusion. By contrast, here given the clear enforcement history of the statute in question, there is no issue as to the government's willingness to enforce the statute against all violators, including Plaintiffs. At the very least this satisfies the "substantial risk" standard the D.C. Circuit has applied in the wake of *Susun B. Anthony List*. *See Attias v. Carefirst, Inc.,* 865 F.3d at 626-27.

if it did, (2) law enforcement may still decline to *enforce* its new interpretation of the Act against them, this conjectural stack attenuated the argument that the *Navegar* plaintiffs were at risk of being punished for violating the law. And even though Plaintiffs here maintain that *Navegar* was wrongly decided and should be scuttled, there is arguably much more tension between the unique injury inflicted by a facial void-for-vagueness violation (*i.e.*, uncertainly *is* the alleged constitutional violation) and the Article III credible-threat requirement for pre-enforcement challenges.

In *Navegar*, the Court was unsure how the government intended to enforce the copycat-weapons provision and hence held that the plaintiffs had not shown standing absent a specific threat of enforcement. By contrast, where the statute proscribed specific firearms that only the plaintiffs produced, it was evident that those plaintiffs were targets of the statute, making the threat of enforcement substantial. As the Court explained regarding the copycat provision, the plaintiffs:

> cannot invoke the one factor that we found most significant in our analysis of the other challenges—the statute's own identification of particular products manufactured only by the appellants. In the absence of this factor, the threat of prosecution becomes far less imminent, and these parties' claims to standing concomitantly much weaker . . . . In such circumstances we cannot say that a genuine threat of enforcement has given rise to the requisite "injury in fact" and thus given these parties standing.

> Further, because the general nature of the language in these portions of the Act makes it impossible to foretell precisely how these provisions may be applied, the issues presented in these challenges are less fit for adjudication, suggesting additional concerns as to their ripeness. We can hold a statute to be impermissibly vague on its face only if we conclude that it is capable of no valid application, *see Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495, 102 S. Ct. 1186, 1191-92, 71 L. Ed. 2d 362 (1982), and in the absence of an enforcement action either commenced or specifically threatened, we have no actual or imminent concrete application of the statute in which to anchor our inquiry into whether any valid application is possible. For these reasons, we hold that the appellants' challenges to the portions of the Act which describe the outlawed items in general categorical terms *are not justiciable at this time*.

*Navegar*, 103 F.3d at 1001-02 (D.C. Cir. 1997) (footnote omitted) (emphasis added).

Here, Plaintiffs' intended conduct is clear—possessing standard capacity magazines for their licensed handguns for self-defense. The D.C. statute is directed specifically at gun owners like Plaintiffs, and the law plainly criminalizes Plaintiffs' intended conduct. And there is a clear history of enforcement Thus, *Navegar*'s discussion—i.e., that a specific threat is needed in the context of determining whether an application of the statute exists as to plaintiffs from which to determine whether the statute is facially invalid for vagueness, *id.* at 1002—is an issue not present here. For these reasons, *Navegar* is distinguishable from this case.

Viewing *Navegar* through this lens is proof positive that it does not control the outcome here.[8] In stark contrast to the Act in *Navegar*, the law that Plaintiffs here wish to challenge cannot be misunderstood. Anyone who gets caught with a plus-10 magazine is a criminal. Each Plaintiff would possess and carry such magazines for self-defense and other lawful purposes but reasonably fears arrest and prosecution for doing so. At bottom, their choice is binary: either forgo what they believe to be is constitutionally protected activity or violate a criminal law and hope the District declines to punish them for it.

Even the *Navegar* Court found this situation entirely untenable. There, the Court clarified that "[a] credible threat of imminent prosecution can injure the threatened party by putting her between a rock and a hard place—absent the availability of pre[-]enforcement review, she must either forego possibly lawful activity because of her well-founded fear of prosecution, or willfully violate the statute, thereby subjecting herself to criminal prosecution and punishment." 103 F.3d

---

[8] Judge Sentelle, in his *Seegars* dissent, agreed: "While I acknowledge that the majority is correct that *Navegar* can be read as controlling the case before us and barring standing, I think it is distinguishable. The allegedly constitutionally protected conduct in the record before us is clearly defined and clearly unlawful under a statute that the District apparently enforces regularly, and under which there is certainly no doubt that plaintiffs reasonably apprehend enforcement. I would therefore find the line of cases represented by *American Booksellers*, rather than *Navegar*, controlling." 396 F.3d at 1258 (Sentelle, J., dissenting).

17

at 998 (citing *Babbitt,* 442 U.S. at 298–99). And the *Navegar* court made clear that it was not creating a hard-and-fast rule, but instead had reached its holding based on the unique nature of the claims advanced by the *Navegar* plaintiffs: "The question of whether a threat of prosecution adequate to satisfy the requirements of justiciability is present in any particular pre[-]enforcement challenge is a factual and case-specific one." *Id.* at 999. On its terms, then, *Navegar* is distinguishable.[9]

### 3. Whole Woman's Health eviscerates any vestige of authority the *Navegar* lines of cases retains.

As the D.C. Circuit noted in *Seegars, Navegar* was questionable when decided. *See* 396 F.3d at 1255-56 (citing *Babbitt,* 442 U.S. 289). *See also American Booksellers,* 484 U.S. at 393 (Court held it sufficient for plaintiffs to allege "an actual and well-founded fear that the law will be enforced against them" without any additional requirement that the challenged law singled out particular plaintiffs); *Doe v. Bolton,* 410 U.S. 179 (1973) (finding standing to challenge an abortion restriction despite lack of threat of enforcement); *Epperson v. Ark.*, 393 U.S. 97 (1968) (standing found despite law had never been enforced nor was there a threat of enforcement). Since *Navegar,* the Supreme Court has reinforced the "far more relaxed stance on pre-enforcement challenges than *Navegar* and *Seegars* permit." *Parker,* 478 F.3d at 375. *See MedImmune,* 549 U.S. 118; *Susan B. Anthony List,* 537 U.S. 149.

And while *Navegar* focused solely on the imminence of prosecution, the Supreme Court has made clear that a Plaintiff's obedience to a challenged law removes the imminent threat of prosecution but does not defeat standing. *See MedImmune,* 549 U.S. at 129. So, as the D.C. Circuit

---

[9] We acknowledge that while *Navegar* is distinguishable from this case, *Seegars* is not. However, as discussed herein *Seegars* is in direct conflict with both *Susan B. Anthony List* and *Whole Woman's Health v. Jackson*, 595 U.S. 30.

made clear in *Attias,* 865 F.3d at 636-37 (citing *Susan B. Anthony List,* 573 U.S. at 158, 134 S.Ct. 2334, 2341), a *substantial risk* of prosecution is sufficient to confer standing.

Which brings us to *Whole Woman's Health*, which is thoroughly incompatible with the *Navegar/Seegars* line of cases. In *Whole Woman's Health*, the Court reviewed a pre-enforcement challenge to a Texas statute allowing a private cause of action against certain abortion providers. 595 U.S. at 35. The plaintiffs there sued state officials, judges and court clerks to enjoin them from enforcing the statute. 595 U.S. at 36–37. Among those sued were state licensing officers. *Id.* at 45. Eight members of the Court found the plaintiffs had standing to sue these state licensing officials even without any explicit threat of enforcement and even though the statute provided it was *not* to be enforced by state actors. *Id.* at 46–47.[10] And this was despite a complete absence of any evidence the licensing officials had sought to enforce the law or expressed any intention to do so. *See generally* 595 U.S. 30*.* Despite the Act's clear prohibition of state enforcement, the Supreme Court found standing as to the state licensing officials based on regulations imposing merely a general duty on the officials to enforce provisions of the State's health code. *Id.* at 47–48, 47 n.4 (citing Texas Occupational Code § 164.055). The plaintiffs were thus not singled out for enforcement as the law applied to the entire set of potential abortion providers. There was no threat by the officials to enforce the law. And the law mandated that it could not be enforced by these state officials. If a case exists more removed from a *Navegar/Seegars*-like "singling out" or "specific threat" requirement, we cannot think of it.[11]

---

[10] The statute in pertinent part provided: "*Notwithstanding . . . any other law*, the requirements of this subchapter shall be enforced *exclusively* through . . . private civil actions." Tex. Health & Safety Code Ann. § 171.207(a) (emphasis added). The Act further provided: "No enforcement of this subchapter . . . in response to violations of this subchapter, may be taken or threatened by this state . . . or an executive or administrative officer or employee of this state." *Id.*

[11] In *Angelo v. District of Columbia,* Case No. 22-1878, slip op. at 15 (August 9, 2024), the district court sought to minimize the significance of *Whole Woman's Health*, stating, "the paragraph that

Contrary to the district court's opinion in *Angelo, Whole Woman's Health* is not distinguishable "because it involved a 'novel[]' law whose 'clear purpose and actual effect' was 'to nullify' Supreme Court precedent" and "'to evade judicial review' under *Ex parte Young*." *Angelo,* slip op. at 16 (citing 595 U.S. at 61 (Roberts, J., concurring in the judgment in part, dissenting in part) & *Id.* at 63 (Sotomayor, J., concurring in the judgment in part and dissenting in part)). We don't dispute that characterization of the Texas law. However, how that relates to standing against the *state licensing officials* is unexplained. Chief Justice Roberts's and Justice Sotomayor's partial dissents were in the context of whether the state's attorney general and court clerks could be sued to enjoin enforcement of the Act in addition to the state licensing officials. *Id.* at 60-61 (Roberts, CJ); *id.* at 62-70 (Sotomayor, J.) Those views, however, were not the decision of the Supreme Court and in any event do not support a distinction between that case and this case with respect to the standing issue as to the licensing officials.

The Texas statute in *Whole Woman's Health* flatly prohibited the licensing officials from taking any action to enforce it. The statute in pertinent part provided: "*Notwithstanding . . . any other law*, the requirements of this subchapter shall be enforced *exclusively* through . . . private civil actions." Tex. Health & Safety Code Ann. § 171.207(a) (emphasis added). The Act further provided: "No enforcement of this subchapter . . . in response to violations of this subchapter, may be taken or threatened by this state . . . or an executive or administrative officer or employee of this state." *Id.*

---

Plaintiffs quote from Justice Gorsuch's opinion, comes from a portion of the opinion, Part II-C, which failed to command a majority." J.A. 32. This was error. As the Chief Justice's concurrence and partial dissent for himself and four other members of the Court makes clear, "eight Members of the Court agree[d]" that "petitioners may bring a pre-enforcement suit challenging the Texas law in federal court under *Ex parte Young*." 595 U.S. at 59–60 (Roberts, C.J., concurring in the judgment in part and dissenting in part).

Justice Gorsuch's lead opinion found standing "on provisions of state law that appear to impose a duty on the licensing-official defendants to bring disciplinary actions against [the providers] if they violate [the Act]." 595 U.S. at 47. That was "enough at the motion to dismiss stage to suggest" that these officials "will be the target of an enforcement action." *Id.* at 48. *The four partial dissenters agreed.* Nothing in the case suggested any indication that such officials intended to enforce the Act, much less that the petitioners there had been singled out or threatened with such enforcement.

The licensing officials' duty in *Whole Woman's Health* is no different from the duty MPD has to enforce the plus-10 magazine ban. Given that whatever residual authority the Texas officials had to enforce the Act was expressly countermanded by the Act itself, at the very least it is fair to say the chances of those licensing officials actually taking action against the abortion providers was exceedingly remote. We suggest far more remote than the likelihood MPD would arrest Plaintiffs for possessing or carrying plus-10 magazines of they were to violate the ban.

To be sure Chief Justice Roberts noted that the Texas Act's "design guaranteed its own enforcement and ensured that the providers 'will be harassed with a multiplicity of suits,'" from "private bounty hunters." *See* 595 U.S. at 61, 62 (Roberts, J., concurring in the judgment in part, dissenting in part)). But that point regarding private enforcement reflects on the issue of standing as to court clerks (and maybe judges), and not the state licensing officials who would have no role in a private enforcement action. So, the Chief Justice's point – as valid as it may be – is not a valid distinction between that case and this case. And in any event, the Supreme Court declined to find that the case was justiciable against either court clerks or judges.

Bottom line, there is no valid distinction between *Whole Woman's Health* and this case. Defendants could argue that *Whole Woman's Health* involved an egregiously unconstitutional state

21

law that merited an exception to normal standing doctrine. The problem is that was not how the Supreme Court treated it, nor how it justified its decision. The Court found standing against state licensing defendants with an arguable—but suspect—duty to enforce the law despite the lack of any indication they intended to do so. The mere existence of their arguable duty was enough to present a credible threat of enforcement.

This Court is not free to ignore *Whole Woman's Health.* The standing decision there is irreconcilable with the *Navegar* line of cases. In light of *Whole Woman's Health,* the *Navegar* line of cases is no impediment to a conclusion that all Plaintiffs here have standing.

Additionally, Justice Gorsuch's principal opinion stated that the Court "has consistently applied" standing requirements "whether the challenged law in question is said to chill the free exercise of religion, the freedom of speech, the right to bear arms, or any other right." *Id.* at 50. Nonetheless, in light of *Navegar's* "tension" with other circuit and Supreme Court standing decisions, *Seegars* suggested a potential distinction between First Amendment cases and other cases with regard to pre-enforcement standing. *See Seegars,* 396 F.3d at 1253-54. Yet, neither the D.C. Circuit nor the Supreme Court has articulated a rationale to support such a general distinction and *Whole Woman's Health* disclaims such as distinction. As *Seegars* noted, *Id.* at 1254, there is one very specific instance where the Supreme Court has made such a distinction; and that is in First Amendment overbreath cases. *See Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006) ("'[P]recedent establishes that a chilling of speech because of the mere existence of an allegedly vague or overbroad statute can be sufficient injury to support standing.'")). Under that doctrine, persons have standing to challenge a regulation on its face where it is so overbroad or ambiguous as to create a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court, despite that

the statute might have some constitutional applications. *See City Council of Los Angeles* v. *Taxpayers for Vincent v. Taxpayers*, 466 U.S. 789, 801 (1984).

The Supreme Court has explained this limited standing exception:

> This "overbreadth" doctrine has its source in *Thornhill v. Alabama*, 310 U.S. 88 (1940). In that case the Court concluded that the very existence of some broadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected. . . This exception from the general rule is predicated on "a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

466 U.S. at 799. The Court emphasized, however, that "[a]pplication of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort." *Broadrick*, 413 U.S. at 613. Nothing supports application of a  more general distinction between First Amendment standing cases and cases involving other rights. And if there were any doubt about that, *Whole Woman's Health,* which was not a First Amendment case, should dispel that doubt. *See also Doe v. Bolton*, 410 U.S. 179 (1973) (abortion case). To think otherwise in light of *Whole Woman Health* and *Doe,* is to suggest a heightened standing standard applicable *only* to Second Amendment related claims, which would in turn suggest, contrary to the Supreme Court's explicit statement, *see Bruen,* 597 U.S. at 70,[12] that the Second Amendment is nonetheless a second-class right.

Finally, it is worth noting that the Supreme Court's *Whole Woman's Health* opinion went one step further than the Court's long-running presumption that state officials will enforce state laws against those who break them. This presumption mirrors the Court's decades-old practice of

---

[12] "'The constitutional right to bear arms in public for self defense is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.' *McDonald [v. City of Chicago]*, 561 U.S. [742] 780 [(2010)] (plurality opinion)." *Bruen,* 597 U.S. at 70.

finding itself "not troubled by the pre-enforcement nature of" lawsuits unless an enforcing authority "suggest[s] that [a] law will not be enforced" or has given a "reason to assume" that it will not be enforced. *American Booksellers*, 484 U.S. at 393. At bottom, *Whole Woman's Health* shows, as the First and Second Circuits have acknowledged, that the Supreme Court's "low" standing threshold for a pre-enforcement constitutional challenge is "quite forgiving," *see Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013); *N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 14–15 (1st Cir. 1996), whether or not the case involves a First Amendment challenge.

### 4. No other circuit applies a *Navegar* like standing test.

In recognition of the Supreme Court's "low" standing threshold, every other circuit has rejected the type of heightened standing requirement exemplified by the *Navegar* line of cases. The D.C. Circuit conceded that the Sixth Circuit "supports pre-enforcement standing in precisely this circumstance." *Seegars*, 396 F.3d at 1255 (discussing *Peoples Rights Organization, Inc. v. Columbus*, 152 F.3d 522, 528–29 (6th Cir.1998)). In *Peoples Rights*, the Sixth Circuit entertained a pre-enforcement challenge to Columbus's assault weapons ban. It held the plaintiffs—owners of weapons who were allegedly uncertain as to whether the ordinance prohibited their weapons— faced "a clear Hobson's choice: 'They can either possess their firearms in Columbus and risk prosecution under the City's law, or, alternatively, they can store their weapons outside the City, depriving themselves of the use and possession of the weapons.'" *Seegars*, 396 F.3d at 1255 (quoting *Peoples Rights*, 152 F.3d at 529–30). The Sixth Circuit found standing because the "costs of selecting either option [were] high enough to support a pre-enforcement challenge." *Seegars*, 396 F.3d at 1255.

The same is true in other circuits, including the First Circuit, e.g., *Davis v. Grimes*, 9 F. Supp. 3d 12, 23 (D. Mass. 2014) ("In a pre-enforcement challenge to a statute carrying criminal

penalties, standing exists when 'the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by the statute, and there exists a credible threat of prosecution.'"); Second Circuit, *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015); *Antonyuk v. Chiumento*, 89 F.4th 271, 333–36 (2d Cir. 2023) (standing to mount Second Amendment challenge, despite no arrest or threats); *Lane v. Rocah*, No. 22-cv-10989 (KMK), 2024 WL 54237, at *9 (S.D.N.Y. Jan. 4, 2024) (same); Cf. *Vitagliano v. County of Westchester*, 71 F.4th 130 (2d. Cir. 2023) ("[T]he law of standing does not place the burden on the plaintiff to show an intent by the government to enforce the law against" her); *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) (*United Farm Workers* "sets a low threshold and is quite forgiving to plaintiffs seeking such pre-enforcement review."); Third Circuit, *Koons v. Platkin*, 673 F. Supp. 3d 515, 582 (D.N.J. 2023) ("The State's silence on its intent to prosecute Carry Permit holders not complying with the Insurance Mandate gives the Siegel Plaintiffs "some reason in fearing prosecution."); the Fourth Circuit, *Hamilton v. Pallozzi*, 848 F.3d 614, 620 (4th Cir. 2017) (abrogated on other grounds); the Fifth Circuit, *National Rifle Ass'n of America, Inc. v. McCraw*, 719 F.3d 338, 345 (5th Cir. 2013) (plaintiffs had standing to challenge age limitation on carrying firearms without any requirement that they be singled out for threat of prosecution); the Seventh Circuit, *Ezell v. City of Chicago*, 651 F.3d 684, 695–96 (7th Cir. 2011) ("The very "existence of a statute implies a threat to prosecute, so pre-enforcement challenges are proper, because a probability of future injury counts as 'injury ' for the purpose of standing."); the Eighth Circuit, *Worth v. Jacobson*, 108 F.4th 677, 685–86 (8th Cir. 2024); the Ninth Circuit, *Wolford v. Lopez*, 116 F.4th 959, 991 (9th Cir. 2024); *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 957-

58 (9th Cir. 2014);[13] the Tenth Circuit, *United States v. Supreme Ct. of New Mexico*, 839 F.3d 888, 901 (10th Cir. 2016) ("The threat of prosecution is generally credible where a challenged provision on its face proscribes the conduct in which a plaintiff wishes to engage, and the state has not disavowed any intention of invoking the provision against the plaintiff.") (cleaned up); and the Eleventh Circuit, *Baughcum v. Jackson*, 92 F.4th 1024, 1032 (11th Cir. 2024) ("Being forced to choose between suffering criminal punishment or giving up a constitutional right is an injury in fact."); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244 (11th Cir. 2012)[14] In this context, the *Navegar* line of case is out of step with every other circuit as well as with the Supreme Court.

---

[13] "[T]he injury Jackson alleges is . . . that the Second Amendment provides her with a 'legally protected interest,'" *Id.*, to purchase hollow-point ammunition, and that but for the law, she would do so within San Francisco. 746 F.3d at 967. The court thus found the statute's prohibition "constitutes an injury in fact to Jackson, and she ha[d] standing to challenge it." *Id.*

[14] In *GeorgiaCarry.Org* the court found standing to challenge a ban on firearm carry in houses of worship because the "'injury' in th[e] pre-enforcement context is the well-founded fear that comes with the risk of subjecting oneself to prosecution for engaging in allegedly protected activity." *Id.* at 1252 (citing *Babbitt*, 442 U.S. at 298–99). Previously, the court had "held that a risk of prosecution is sufficient if the plaintiff alleges . . . that a credible threat of prosecution exists." *Id.* (citing *Jacobs v. The Florida Bar*, 50 F.3d 901, 904 (11th Cir. 1995)). And to carry this burden, "a plaintiff must show that there is 'a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement.'" *Id.* (quoting *Am. Civil Liberties Union v. The Florida Bar*, 999 F.2d 1486, 1492 (11th Cir. 1993) (internal citation omitted)). So long as "the plaintiff is seriously interested in disobeying, and the defendant seriously inten[ds] on enforcing the challenged measure," standing exists. *Id.* (quoting *International Soc'y for Krishna Consciousness v. Eaves*, 601 F.2d 809, 818 (5th Cir. 1979)).

Applying this test, the Eleventh Circuit reasoned that, "[a]lthough the Amended Complaint is lacking in many respects, we believe that Plaintiffs have alleged a credible threat of prosecution under the Carry Law sufficient to establish standing to bring a facial challenge." *Id.* It did so because "[t]hey are license holders who regularly attend services at a place of worship," and "[m]oreover, they 'would like to carry a handgun in such place of worship for the protection of [their] family and [themselves], but [they are] in fear of arrest and prosecution." *Id.* For that reason, it "seem[ed] clear" to the Eleventh Circuit that the plaintiffs were "seriously interested in engaging in conduct that is arguably prohibited by the Carry Law and that could give rise to prosecution by state authorities." *Id.* And because "[n]othing in the defendants' answers suggests that the Carry Law will not be vigorously enforced," the court could not "say that there exists only a 'speculative

The *Navegar* rule is far out of step with pre-enforcement standing jurisprudence from the Supreme Court and every other circuit. The rule perversely slams shut the federal courthouse doors to law-abiding gunowners like Plaintiffs who see the District's law as an affront to their fundamental Second Amendment rights but can do nothing about the law until they opt to "bet the farm" and break it,[15] or go through a futile exercise of filing an application that District law forecloses granting. Given the intervening Supreme Court decisions discussed herein and the combined weight of authority from every one of the other circuits, the *Navegar* line is clearly an incorrect statement of current law and does not mandate dismissal of any Plaintiffs from this action.

And given that *Whole Woman's Health* flatly contradicts the *Navegar* line of cases, this Court must follow the former, and not the latter. *See, e.g.*, *Haynesworth v. Miller*, 820 F.2d 1245, 1260–61 (D.C. Cir. 1987); *see also Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003).[16]

## IV. Conclusion.

For the reasons stated above the Court should substitute Chief Smith for Chief Contee, dismiss the case against Chief Smith in her individual capacity, dismiss the due process count, and otherwise deny Defendants' Motion to Dismiss.

---

risk' of prosecution; rather, [p]laintiffs appear to be subject to a legitimate threat that they will be prosecuted for activity that, they believe, is constitutionally protected." *Id.*

[15] *See Free Enter. Fund v. Public Co.* 561 U.S. 477, 490 (2010); "We normally do not require plaintiffs to 'bet the farm . . . by taking the violative action' before 'testing the validity of the law.'" *MedImmune, Inc.*, 549 U.S. 118, 129 (2007). *See also Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1251, 1278 (D.C. Cir. 2018).

Respectfully Submitted,

/s/ George L. Lyon, Jr. (D.C. Bar No. 388678)
Arsenal Attorneys
4000 Legato Road, Suite 1100
Fairfax, VA 22033
202-669-0442, fax 202-483-9267
gll@arsenalattorneys.com

Matthew J. Bergstrom (D.C. Bar. No. 989706)
Arsenal Attorneys
4000 Legato Road, Suite 1100
Fairfax, VA 22033
800-819-0608
mjb@arsenalattorneys.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am a member of the bar of this Court and on this 28th day of August, 2025, a true copy of the foregoing was filed electronically with the Clerk of Court using the Court's CM/ECF system, which will send by email a notice of docketing activity to the registered Attorney Filers for all parties.

/s/ George L. Lyon, Jr., DC Bar No. 388678