**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| **ANDREW HANSON,** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **No. 1:22-cv-02256-RC** |
| **DISTRICT OF COLUMBIA,** *et al.*, | |
| **Defendants.** | |

---

<u>**REPLY BRIEF IN SUPPORT OF DEFENDANTS'**</u>
<u>**PARTIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT**</u>

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 1

    I.    The Court Should Dismiss Most of the Claims for Lack of Standing. ................... 1

        A.    Hanson, Chaney, and Klun Lack Standing. ................................................ 2

        B.    Yzaguirre Only Has Limited Standing. ....................................................... 3

        C.    Yzaguirre's Limited Standing Does Not Confer Standing on the
            Other Plaintiffs. ........................................................................................ 6

            1.    Plaintiffs Must Each Have Standing to Proceed Because
                They Seek Individualized Relief. ...................................................... 6

            2.    Dismissing Claims for Which Jurisdiction Is Lacking Will
                Helpfully Narrow the Scope of This Case. .................................... 10

        D.    Plaintiffs Cannot Evade Binding Circuit Precedent. ................................ 11

            1.    *Susan B. Anthony List v. Driehaus* Did Not Eviscerate the
                *Navegar* Line. ............................................................................... 12

            2.    *Whole Woman's Health v. Jackson* Did Not Eviscerate the
                *Navegar* Line. ............................................................................... 13

            3.    *MedImmune, Inc. v. Genentech, Inc.* Did Not Eviscerate the
                *Navegar* Line. ............................................................................... 16

            4.    Plaintiffs Cannot Fashion an Alternative Rule to That
                Announced in *Navegar*. ................................................................. 17

            5.    Plaintiffs Fail to Distinguish the *Navegar* Line. .......................... 17

            6.    Any Alleged Differences Between the D.C. Circuit's
                Precedent and Other Circuits' Precedent Is Irrelevant. ................. 18

    II.    The Claims Against Chief Smith Should Be Dismissed. ....................................... 19

CONCLUSION ......................................................................................................... 19

## INTRODUCTION

Plaintiffs concede that many of their claims must be dismissed.  Mem. of P. & A. in Opp'n to Mot. to Dismiss (Pls.' Opp'n) [40] at 2.  They "agree" that their due process claim must be dismissed.  *Id.*  And they "agree" that the claims against former Chief of Police Robert J. Contee III must be dismissed.  *Id.*  As a result, "[t]his Court's role is to grant the motion to dismiss" as to those claims.  *Wehr-Darroca v. District of Columbia*, No. 24-cv-3504, 2025 WL 2694790, at *1 (D.D.C. Sept. 22, 2025) (Contreras, J.).

Only two disputes remain, but each is resolved by binding precedent and Plaintiffs' further concessions.  First, Plaintiffs argue that none of their Second Amendment claims should be dismissed for lack of standing.  But that would require overriding basic limits on who can pursue what relief as well as circuit precedents that this Court has already held are still binding.  Second, Plaintiffs argue that they should be able to pursue an official-capacity claim against current Chief of Police Pamela A. Smith.  But Plaintiffs give no reason why such a claim is anything but superfluous.  In short, and despite Plaintiffs' arguments, their Complaint overreaches, so "some winnowing" is needed before this case proceeds.  *Am. Fed'n of Gov't Emps., AFL-CIO v. United States*, 330 F.3d 513, 518 (D.C. Cir. 2003).  Thus, the Court should grant the District's Partial Motion to Dismiss [39].

## ARGUMENT

### I.    <u>The Court Should Dismiss Most of the Claims for Lack of Standing.</u>

Under binding precedent, (1) Andrew Hanson, Nathan Chaney, and Eric Klun lack standing entirely, (2) Tyler Yzaguirre only has standing to challenge the denial of his application for a firearm registration certificate, and (3) Yzaguirre's limited standing is not sufficient to allow the other Plaintiffs to proceed.  Mem. of P. & A. in Supp. of Defs.' Partial Mot. to Dismiss (Defs.' Mot.) [39] at 5–17.  Plaintiffs spare just three pages on these points, and their minimal

responses fail.  *See* Pls.' Opp'n at 3–5.  Plaintiffs instead spend the lion's share of their brief arguing that the D.C. Circuit's precedents on pre-enforcement standing are no longer good law. *See id.* at 5–27.  But they are—as this Court already held.  *Wehr-Darroca*, 2025 WL 2694790, at *1, 3.

    **A.**    <u>**Hanson, Chaney, and Klun Lack Standing.**</u>

The District explained that Hanson, Chaney, and Klun failed to plausibly allege facts satisfying *either* prong of the two-prong test for pre-enforcement standing applied in cases like *Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997), *Seegars v. Gonzales*, 396 F.3d 1248 (D.C. Cir. 2005), and *Parker v. District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007), *aff'd sub nom. District of Columbia v. Heller*, 554 U.S. 570 (2008).  Defs.' Mot. at 8–10.  In response, Plaintiffs do not dispute that those three Plaintiffs fail to meet that test.  *See* Pls.' Opp'n at 5. Instead, Plaintiffs take issue with the D.C. Circuit's application of the second prong (credible threat of enforcement).  *Id.* at 5–27.  As explained below, and as this Court has explained before, the D.C. Circuit's precedent on the second prong is binding.  Argument § I.D, *infra*; *Wehr-Darroca*, 2025 WL 2694790, at *1, 3.  But even if it were not, Plaintiffs offer no response to the District's explanation of why they fail to meet the *first* prong of the pre-enforcement standing test, that they plausibly intend to engage in statutorily proscribed but constitutionally protected conduct.  The first prong will be unaffected should Plaintiffs succeed in convincing the D.C. Circuit to rethink what is required for a credible threat of enforcement.  By failing to offer any response to the District, Plaintiffs concede that they cannot satisfy the first prong.  *Texas v. United States*, 798 F.3d 1108, 1114–16 (D.C. Cir. 2015).  Thus, the Court can dismiss Hanson, Chaney, and Klun without even touching Plaintiffs' arguments about the *Navegar* line of cases.

2

B.     **Yzaguirre Only Has Limited Standing.**

Plaintiffs do not dispute that the denial of Yzaguirre's application for a firearm registration certificate is his only cognizable injury.  *See* Pls.' Opp'n at 4.  Nonetheless, Plaintiffs argue—without citation to any standing authority—that Yzaguirre is not limited to challenging the denial of a registration certificate.  *Id.* at 4–5.  Rather, say Plaintiffs, Yzaguirre can challenge other applications of the District's regulation of large-capacity magazines (LCMs), D.C. Code § 7-2506.01 (the Law), because Yzaguirre's injury arises from the Law.  *Id.*  Yzaguirre's injury, however, does not give him standing to seek relief more broadly enjoining the Law or declaring it invalid.  Two principles support that conclusion.

First, a plaintiff lacks standing to seek relief broader than necessary to remedy his injury. *Gill v. Whitford*, 585 U.S. 48, 66–68 (2018); *see id.* (plaintiffs in gerrymandered districts could seek revision of their own districts' lines but lacked standing to invalidate entire map); *Am. Fed'n of Gov't Emps.*, 330 F.3d at 518 (plaintiffs challenging a statute providing for preferences in government contracting could challenge the contract denied to them but lacked standing to enjoin the government from relying on the statute to pursue other contracts); *Hightower v. City of Boston*, 693 F.3d 61, 70 (1st Cir. 2012) (revocation of a concealed carry license only gave the plaintiff standing to challenge "the characteristics of the license that was revoked").  Article III requires a court to "consider the relationship between 'the judicial relief requested' and the 'injury' suffered," *California v. Texas*, 593 U.S. 659, 671 (2021) (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)), and "align injuries and remedies," *Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121, 2138 (2025).  "[T]he remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) (internal quotation marks omitted) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).  Standing doctrine would hardly serve its purposes "if once a

plaintiff demonstrated harm from one particular inadequacy in government administration, the court were authorized to remedy *all* inadequacies in that administration." *Id.* (internal quotation marks omitted) (quoting *Lewis*, 518 U.S. at 357). Rather, the injury sets the bounds of the available relief and the claim that a plaintiff has standing to pursue. Relatedly, as the Supreme Court recently made clear, federal courts lack the power to grant relief broader than necessary to provide complete relief to the plaintiff. *Trump v. CASA, Inc.*, 606 U.S. 831, 837, 861 (2025).

Second, in assessing standing and the relief available, the Court considers whether portions of the challenged law can or should be preserved if a constitutional violation is found. *See LaRoque v. Holder*, 650 F.3d 777, 795 (D.C. Cir. 2011) (citing *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 801 (8th Cir. 2006), for the proposition that "severability can be relevant to the issue of standing"); *LSP Transmission Holdings II, LLC v. Huston*, 131 F.4th 566, 579 (7th Cir. 2025) ("Our analysis of redressability should recognize that reality [of severability].").  When a statute's "provisions are properly considered severable, [the plaintiff] must show injury, causation, and redressability with respect to each provision it challenges." *Advantage Media*, 456 F.3d at 801.

The Law is severable. D.C. Code § 7-2507.10; *Hooks v. United States*, 191 A.3d 1141, 1145 (D.C. 2018); *see Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996) (per curiam) (severability is a matter of state law). It matters not that there is only "one provision" of the Law. Pls.' Opp'n at 5. The District's firearm laws are severable both as to their "provision[s]" and their "application[s]." D.C. Code § 7-2507.10. Plus, the D.C. Circuit and other courts have treated laws as severable for standing purposes even if the law is contained in only one statutory section. *See, e.g.*, *Am. Fed'n of Gov't Emps.*, 330 F.3d at 518–19 (treating a single subsection as creating three possible classifications and holding that the plaintiffs only had standing to challenge one

classification); *In re Gee*, 941 F.3d 153, 162 n.4 (5th Cir. 2019) ("It is irrelevant for purposes of standing that separate legal requirements are grouped together in a single section of the code."). Therefore, in assessing standing, the Court should assess whether Yzaguirre has standing to challenge application of the Law to different magazine capacities.

Applying those principles here, Yzaguirre only has standing to challenge the denial of a registration certificate for his gun with a 12-round magazine—but not the Law more broadly. Declaring the Law invalid as to any other magazine capacities or enjoining the District from applying the Law to any other magazine capacities is relief that sweeps broader than Yzaguirre's injury, which was the inability to possess one gun with a 12-round magazine. *See Gill*, 585 U.S. at 66–68; *Cuno*, 547 U.S. at 353. Further, the Court cannot enjoin the Law's enforcement as to anyone but Yzaguirre, so he cannot pursue relief on behalf of anyone but himself. *See CASA*, 606 U.S. at 837. Were Plaintiffs' contrary logic adopted, they could use the denial of a 12-round LCM to pursue a claim that the District must allow 100-round magazines. That logic makes no sense, and standing doctrine does not allow it.

Plaintiffs are also mistaken in suggesting that a broader "decision" from this Court that the Law is unconstitutional will provide Yzaguirre redress because it "will be res judicata against Defendants as to any other standard capacity magazine Yzaguirre would seek to acquire." Pls.' Opp'n at 5. "It is a federal court's judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability." *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023). As explained above, any judgment is limited to remedying the denial of a registration certificate, so Yzaguirre is limited to challenging that denial. What the Court says about the merits in an opinion attached to that judgment is irrelevant to the standing inquiry because "redressability requires that the court be able to afford relief through the exercise of its

power, not through the persuasive or even awe-inspiring effect of the opinion explaining the exercise of its power." *Id.* (cleaned up). Thus, Yzaguirre cannot base his standing on the "hope" that he gets a favorable "opinion" from this Court. *Id.*

       **C.**      <u>**Yzaguirre's Limited Standing Does Not Confer Standing on the Other Plaintiffs.**</u>

As the District explained, Yzaguirre's standing does not confer standing on the other Plaintiffs, and the "one-plaintiff principle" does not apply here, because (1) Plaintiffs seek individualized relief, and (2) narrowing the claims will narrow the burdens of this case. Defs.' Mot. at 11–17. Plaintiffs offer little response on the first point and none on the second.

       **1.**      **Plaintiffs Must Each Have Standing to Proceed Because They Seek Individualized Relief.**

Plaintiffs must each prove standing because (1) they seek damages, (2) they bring as-applied claims, and (3) Yzaguirre's injury and available relief differ from that of the other Plaintiffs. Defs.' Mot. at 12–13.

On damages, Plaintiffs argue they seek "damages [that] appear indeterminate or unascertainable beyond a nominal amount," which do not qualify as individualized relief. Pls.' Opp'n at 4 (internal quotation marks omitted) (quoting Compl. ¶ 23). But the Complaint does not in fact seek only nominal damages. The Prayer does not make any request for nominal damages and instead requests "an order awarding Plaintiffs damages in an amount to be determined at trial." Compl., Prayer (4). Damages whose amount must be determined at trial are actual or compensatory, not nominal. *See Damages*, *Black's Law Dictionary* (12th ed. 2024) (defining "actual" or "compensatory" damages as "[a]n amount awarded to a complainant to compensate for a *proven* injury or loss" (emphasis added)). The single allegation cited in Plaintiffs' Opposition does not disclaim any right to seek compensatory damages; it merely notes that damages "*appear*" indeterminant. Compl. ¶ 23 (emphasis added).

Even if the Complaint could be construed to seek only nominal damages, such damages still are individualized relief. Nominal damages remedy "a personal legal injury" and "are in fact damages paid to the plaintiff." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 289, 291 (2021); *see* Edward H. Cooper, 13A *Fed. Prac. & Proc. Juris.* § 3531.9.4 (3d ed. 2025) ("[D]amages are available only for violation of the plaintiff's own rights."). And when, as here, a claimant "is seeking damages for itself," *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 441 (2017), and a money judgment in the claimant's "name[ ]," a separate "Article III inquiry would be required," *id.* at 440 (cleaned up). Thus, one plaintiff's ability to pursue nominal damages does not determine whether another plaintiff can. *See Uzuegbunam*, 592 U.S. at 293 & n.* (instructing that, when two plaintiffs requested nominal damages, the justiciability of one plaintiff's claim did not determine the justiciability of the other's); *Warth v. Seldin*, 422 U.S. 490, 515–16 (1975) (plaintiffs must individually prove standing when "whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof").

On their as-applied challenges, Plaintiffs argue that relief for those challenges is not individualized because they seek "the same declaratory judgment that the plus-10 magazine ban is unconstitutional on its face and as applied to standard capacity magazines, *i.e.*, the magazines that come standard with the firearms they own[,] which Plaintiffs explained in the D.C. Circuit are magazines for handguns holding up to 17 rounds." Pls.' Opp'n at 3–4. But in an as-applied challenge—and as is particularly clear after *CASA*—the relief is limited to the particular plaintiff. *See John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) (holding that to grant relief beyond the plaintiff, the standard for a facial challenge must be met); *CASA*, 606 U.S. at 837 (holding that federal courts cannot grant equitable relief broader than necessary to provide complete relief to

the plaintiff). To obtain as-applied relief, the plaintiff must prove that the challenged law was unconstitutionally applied to him. *McCullen v. Coakley*, 573 U.S. 464, 485 n.4 (2014); *see Benezet Consulting LLC v. Sec'y Commonwealth of Pa.*, 26 F.4th 580, 585 (3d Cir. 2022) ("[A]s-applied relief must contest a specific application of a law."). "If an as-applied challenge to the constitutionality of a statute is successful, the statute may not be applied to the challenger but is otherwise enforceable." 16 *C.J.S. Constitutional Law* § 243 (2025); *see also, e.g.*, *Moody v. NetChoice, LLC*, 603 U.S. 707, 758 (2024) (Thomas, J., concurring in the judgment); *Phelps-Roper v. Ricketts*, 867 F.3d 883, 896 (8th Cir. 2017).

To illustrate, if Hanson succeeds on an as-applied challenge, then a declaratory judgment would declare the Law unconstitutional as applied to him, and an injunction would prevent the District from enforcing the Law in the same way against him. But a successful as-applied challenge by Hanson based on his circumstances cannot provide relief to anyone else. *See Reed*, 561 U.S. at 194; *CASA*, 606 U.S. at 837. On the flip side, a declaratory judgment that the Law cannot be applied to prevent Yzaguirre from registering a gun with a 12-round magazine would not affect Hanson at all. Thus, Plaintiffs' as-applied challenges seek individualized relief because they must each show their rights have been violated, and then the relief will be individualized to each Plaintiff by preventing application of the Law to him. Plaintiffs cite no authority to the contrary.

Plaintiffs' assertion that they seek the "same declaratory judgment" invalidating the Law as to magazines holding up to 17 rounds cannot change any of this. Pls.' Opp'n at 3–4. Their argument still fails to the extent they seek facial relief because it "reaches beyond" Plaintiffs. *Reed*, 561 U.S. at 194. As explained above, the as-applied relief that they requested in their Complaint is individualized. And they cannot now amend their Complaint through briefing.

*Trudel v. SunTrust Bank*, 924 F.3d 1281, 1287 (D.C. Cir. 2019).  Instead, the Complaint alleges that the Law violates the Second Amendment "as applied against the individual Plaintiffs in this action, damaging Plaintiffs in violation of 42 U.S.C. § 1983," and "Plaintiffs are therefore entitled to preliminary and permanent injunctive relief against [the Law], and damages."  Compl. ¶ 60.  Plaintiffs' Complaint is "the best evidence of the relief [they] seek[ ]."  *Town of Chester*, 581 U.S. at 440.

Plaintiffs also argue that they do not seek individualized relief because the merits question supposedly does not depend on whether a magazine "hold[s] 11 rounds or 17 rounds." Pls.' Opp'n at 4.  But the jurisdictional question at hand is whether *relief* will differ for each Plaintiffs in an as-applied challenge—not whether the merits question is the same for each Plaintiff.  *See Town of Chester*, 581 U.S. at 439 n.3 (citing with approval petitioners' statement of law that "[i]f different parties raising a single issue seek different relief, then standing must be shown for each one").  As explained above, relief will differ because, in an as-applied challenge, the Court can only issue relief to the individual Plaintiff.  In any event, it is far from clear that the merits question will not differ based on the specific capacity at issue because analysis of a challenge to a regulation of a restricted "arm" is arm-specific.  Defs.' Mot. at 14–15.

Finally, on Yzaguirre's unique injury, Plaintiffs argue that Yzaguirre's standing confers standing on the other Plaintiffs because "his claim is the same" as theirs: the Law "violates his Second Amendment rights, and that the Court should so declare and enjoin its enforcement." Pls.' Opp'n at 4.  Plaintiffs again confuse standing with the merits.  *See Wells v. Johnson*, 150 F.4th 289, 299 (4th Cir. 2025) ("[P]laintiffs do not show standing to press *claims* so much as they show standing, within each claim, to seek each *remedy* they ask for.").  Simply because the other Plaintiffs raise the same merits question does not mean that they all have standing if one

has standing.  While Plaintiffs' constitutional arguments may be the same, that says nothing about whether their injuries or available remedies are the same.  As the District explained and Plaintiffs do not dispute, Yzaguirre's *injury* is not shared by the other Plaintiffs because his injury was the denial of *his* registration certificate.  Defs.' Mot. at 13.  And the relief available to remedy that injury is an injunction ordering the District to grant Yzaguirre a registration certificate for his particular firearm because, again, the remedy must be limited to the injury-in-fact.  *Gill*, 585 U.S. at 68.  Because Yzaguirre's injury and available relief are unique to him, the other Plaintiffs pursue relief that is different from Yzaguirre, so they must each prove standing. *Town of Chester*, 581 U.S. at 440.  Indeed, "a plaintiff who has been subject to injurious conduct of one kind" does *not* "possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."  *Lewis*, 518 U.S. at 358 n.6 (internal quotation marks omitted) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982)); *cf. Bronner on Behalf of Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 609 (D.C. Cir. 2020) ("That nonprofit members have standing to press a suit to protect their own interests does not, in turn, entitle them to vindicate interests held solely by the non-profit.").

> **2.    Dismissing Claims for Which Jurisdiction Is Lacking Will Helpfully Narrow the Scope of This Case.**

Even if the Court believes that it is not obligated to analyze standing for each Plaintiff, it nevertheless retains the discretion to analyze each Plaintiff's standing and to dismiss those without standing because the one-plaintiff principle "does not *prohibit* the court from paring down a case by eliminating plaintiffs who lack standing or otherwise fail to meet the governing jurisdictional requirements."  *M.M.V. v. Garland*, 1 F.4th 1100, 1110 (D.C. Cir. 2021); *see Thiebaut v. Colo. Springs Utils.*, 455 F. App'x 795, 802 (10th Cir. 2011) (affirming district court's discretionary dismissal of a plaintiff, even though another plaintiff had standing).

Plaintiffs do not address the reasons given by the District for why analyzing each Plaintiff's standing makes sense here, even if the Court concludes that such analysis is not strictly required. *Compare* Defs.' Mot. at 13–17, *with* Pls.' Opp'n at 3–5. At most, Plaintiffs argue that the merits issues will not differ based on the magazine capacity at issue. Pls.' Opp'n at 4–5. But Plaintiffs do not address the Circuit's decision, which, as the District explained, indicates that a challenge to a regulation of "arms" is arm-specific, so the merits question will differ based on which Plaintiffs are in this case. Defs.' Mot. at 14–15. Plaintiffs' failure to address the discretionary reasons for analyzing standing concedes that those reasons are valid. *Texas*, 798 F.3d at 1114–16.

## D.    Plaintiffs Cannot Evade Binding Circuit Precedent.

Plaintiffs concede that Hanson, Chaney, and Klun do not all have standing under the *Navegar* line of cases, and Plaintiffs do not dispute that Yzaguirre fails to satisfy the pre-enforcement test as to any other magazines besides the one for which registration was denied. *See* Pls.' Opp'n at 5. So Plaintiffs are left to ask the Court to find that the *Navegar* line is no longer good law. *Id.*; *see also id.* at 5–27. But, in another case challenging the Law, this Court already held that the *Navegar* line still controls, and the Court was unpersuaded by similar arguments. *Wehr-Darroca*, 2025 WL 2694790, at *1, 3; *see* Pls.' Opp'n [13] at 1, 4–12, *Wehr-Darroca v. District of Columbia*, No. 24-cv-3504 (D.D.C. Mar. 13, 2025). On top of that, two different courts also recently held that the *Navegar* line is still binding and rejected the same arguments from the same counsel. *Russell v. District of Columbia*, No. 24-cv-1820, 2025 WL 2719342, at *4 (D.D.C. Sept. 24, 2025) (Bates, J.); *Angelo v. District of Columbia* (*Angelo I*), 648 F. Supp. 3d 116, 126–32 (D.D.C. 2022) (Moss, J.); *Angelo v. District of Columbia* (*Angelo II*), No. 22-cv-1878, 2024 WL 3741401, at *7–9 (D.D.C. Aug. 9, 2024) (Moss, J.), *argued*, No. 24-7127 (D.C. Cir. Oct. 3, 2025). Plaintiffs' arguments here should fail too. What is more,

Plaintiffs' counsel is raising those same arguments before the D.C. Circuit in a case that has already been argued and submitted.  Initial Br. of Appellants, *Angelo v. District of Columbia*, No. 24-7127 (D.C. Cir. Feb. 7, 2025).  It would not make sense to get out ahead of the D.C. Circuit and find the *Navegar* line overruled when the same arguments are currently before the Circuit.

Instead, "this Court is bound to follow controlling D.C. Circuit precedent unless and until the Circuit overrules that precedent *en banc* or intervening Supreme Court authority 'eviscerate[s]' the law of the Circuit."  *Wehr-Darroca*, 2025 WL 2694790, at *3 (quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc)).  Plaintiffs offer a grab bag of arguments in an effort to show evisceration, but these arguments are insufficient for Plaintiffs to meet their "substantial burden" to show that the *Navegar* line has been eviscerated.  *Saad v. SEC*, 980 F.3d 103, 107 (D.C. Cir. 2020) (internal quotation marks and citation omitted).

### 1. *Susan B. Anthony List v. Driehaus* Did Not Eviscerate the *Navegar* Line.

Plaintiffs argue that *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), abrogates the *Navegar* line by supposedly creating a different test for pre-enforcement standing.  Pls.' Opp'n at 6–9.  But *Driehaus* relied on the Supreme Court's pre-*Navegar* decision in *Babbitt v. United Farm Workers*, 442 U.S. 289 (1979).  573 U.S. at 159.  The D.C. Circuit, for its part, expressly relied on *Babbitt* in *Navegar*, 103 F.3d at 998, and *Seegars* held that any "apparent tensions" between those decisions did not diminish the Court's duty to "faithfully apply the analysis articulated by *Navegar*," 396 F.3d at 1252, 1254.

In any event, *Driehaus* was a First Amendment case, while the *Navegar* line applies to "preenforcement challenges to a criminal statute not burdening expressive rights and not in the form of an appeal from an agency decision."  *Seegars*, 396 F.3d at 1253.  The D.C. Circuit has

treated First Amendment pre-enforcement standing differently. *Woodhull Freedom Found. v. United States*, 948 F.3d 363, 371 (D.C. Cir. 2020). As a First Amendment case, *Driehaus* could not have abrogated the *Navegar* line. *Russell*, 2025 WL 2719342, at *4; *Angelo I*, 648 F. Supp. 3d at 129–30.

### 2. *Whole Woman's Health v. Jackson* Did Not Eviscerate the *Navegar* Line.

Plaintiffs also argue that the *Navegar* line was eviscerated by *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), which supposedly held that a plaintiff has "standing" to sue government officials so long as the officials have authority to enforce a law, regardless of whether there is any threat of enforcement. Pls.' Opp'n at 18–24. But *Whole Woman's Health* did not hold that. In *Whole Woman's Health*, the Supreme Court addressed whether a Texas law banning abortion that was primarily enforced through civil actions brought by private individuals fit within the *Ex parte Young* exception to state sovereign immunity (which allows plaintiffs to seek injunctive relief against state officials who enforce a challenged law). 595 U.S. at 35–36. A majority concluded that certain Texas officials had enforcement authority and thus came within *Young*. *Id.* at 46 (plurality); *id.* at 59–60 (Roberts, C.J., concurring in the judgment in part and dissenting in part). The plurality opinion and the Chief Justice's opinion thus focus on *Young*, not standing.[1] So *Whole Woman's Health* is part of "some other line of decisions," those pertaining to *Young*, and thus Plaintiffs are hard-pressed to argue that it revolutionizes the

---

[1] The Supreme Court also briefly addressed claims against a private individual and held that the plaintiffs lacked standing to bring claims against him. *Whole Woman's Health*, 595 U.S. at 48. Plaintiffs do not rely on the Court's treatment of the claims against the private individual. Indeed, the Court's treatment of the claims against the state officials versus the private individual makes plain that the former concerned sovereign immunity, not standing. *See id.* at 37 (explaining that the state officials moved to dismiss relying on sovereign immunity while the private individual moved to dismiss relying on standing).

doctrine of standing. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) (cleaned up); *see Russell*, 2025 WL 2719342, at *4 ("*Whole Woman's Health* is even further afield [than *Driehaus*] because that case was about sovereign immunity . . . ."). Further, *Whole Woman's Health* is distinguishable at a minimum because it involved a "novel[]" law whose "clear purpose and actual effect" was "to nullify" Supreme Court precedent, 595 U.S. at 61 (Roberts, C.J., concurring in the judgment in part, dissenting in part), and "to evade judicial review," *id.* at 63 (Sotomayor, J., concurring in the judgment in part and dissenting in part).

Plaintiffs' contrary arguments lack merit. They assert that *Whole Woman's Health* contradicts *Navegar* and *Seegars* by inferring a threat of enforcement from a general enforcement duty or a supposed "presumption" of enforcement. Pls.' Opp'n at 19, 22–23. But the licensing officials in that case had "*specific* disciplinary authority over" the providers. 595 U.S. at 51 (emphasis added). And far from relying on a presumption of enforcement, the plurality relied on the fact that the Texas law had "already" impaired the providers' "day-to-day operations." *Id.* at 47–48. Moreover, as four Justices emphasized, the law's *sui generis* design guaranteed its own enforcement and ensured that the providers "will be harassed with a multiplicity of suits," *id.* at 61 (Roberts, C.J., concurring in the judgment in part, dissenting in part) (cleaned up), because it incentivized "private bounty hunters" to bring "essentially unlimited suits for damages" against the providers, *id.* at 62 (Sotomayor, J., concurring in the judgment in part, dissenting in part); *see Whole Women's Health v. Jackson*, 556 F. Supp. 3d 595, 614–15, 624 (W.D. Tex. 2021) (noting the providers' allegations of past harassment, including false complaints with licensing authorities and encouragement of individuals to sue).

Additionally, Plaintiffs claim that *Whole Woman's Health* dispensed with the "distinction" between First Amendment pre-enforcement challenges and those involving other

rights. Pls.' Opp'n at 22. But *Navegar* and *Seegars* did not create any such distinction; they just recognized it in the Supreme Court's cases. *See Seegars*, 396 F.3d at 1254; *Navegar*, 103 F.3d at 999. Regardless, even after *Whole Woman's Health*, courts have continued to preserve this distinction, recognizing that when "plaintiffs bring a pre-enforcement challenge under the First Amendment, unique standing considerations tilt dramatically toward a finding of standing." *Planned Parenthood v. Labrador*, 122 F.4th 825, 836 (9th Cir. 2024) (cleaned up); *see Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir.) ("[S]tanding rules are relaxed for First Amendment cases so that citizens whose speech might otherwise be chilled by fear of sanction can prospectively seek relief." (internal quotation marks omitted)), *cert. denied*, 145 S. Ct. 140 (2024).

Plaintiffs at bottom misread the relevant passage of *Whole Woman's Health*. The Court wrote: "As our cases explain, the 'chilling effect' associated with a potentially unconstitutional law being 'on the books' is insufficient to 'justify federal intervention' in a pre-enforcement suit." 595 U.S. at 50 (quoting *Younger v. Harris*, 401 U.S. 37, 42, 50–51 (1971)). And the Court emphasized that parties bringing such suits "are not entitled to a special exemption" from that rule simply because a challenged law "is said to chill the free exercise of religion, the freedom of speech, the right to bear arms, or any other right." *Id.* That hardly eviscerates *Navegar* and *Seegars*, as the D.C. Circuit has implicitly recognized in continuing to rely on such cases even after *Whole Woman's Health*. *See Hemp Indus. Ass'n v. DEA*, 36 F.4th 278, 291 (D.C. Cir. 2022) (relying on *Seegars*); *Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 111 F.4th 76, 80 (D.C. Cir. 2024) (adhering to circuit precedent "decided after" a purportedly abrogating Supreme Court decision because "the relationship between those two cases was [the prior panel's] legal issue, not ours").

15

### 3.    *MedImmune, Inc. v. Genentech, Inc.* Did Not Eviscerate the *Navegar* Line.

Plaintiffs suggest that *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)

abrogated the *Navegar* line.  Pls.' Opp'n at 5, 18, 27.  *MedImmune* did not concern threatened

action by government at all—it was a private suit between two companies about patent rights.  In

*MedImmune*, Genentech made "a clear threat to enforce [its] patent" against MedImmune and to

"sue for patent infringement" if MedImmune continued selling its flagship drug (Synagis)

without paying Genentech royalties.  549 U.S. at 121–22.  To avoid potentially ruinous litigation,

MedImmune "paid the demanded royalties 'under protest'" and brought its own suit to establish

that Genentech's patent was invalid and not infringed by Synagis.  *Id.*  Under these

circumstances, the Court found Article III satisfied.  *See id.* at 128–30.  The Court explained that,

even if MedImmune's royalty payments temporarily rendered the specter of actual litigation

"remote," MedImmune suffered ongoing injury by paying royalties that were "coerced" by the

threat of litigation.  *Id.* at 128–30, 134.

    *MedImmune* thus did not eviscerate *Navegar* or *Seegars*, much less clearly so.  The D.C.

Circuit has implicitly recognized as much in continuing to rely on *Navegar* and *Seegars* in cases

like *Parker* and *Ord v. District of Columbia*, 587 F.3d 1136, 1140–42 (D.C. Cir. 2009)—both of

which were decided after *MedImmune*.  *See CREW v. FEC*, 475 F.3d 337, 341 n.2 (D.C. Cir.

2007) (holding that panel precedent does not "yield" where this Court has "applied its holding

and rationale after" a "later decision" from the Supreme Court).  Indeed, the Circuit in *Hemp

Industries* relied on *both Seegars* and *MedImmune* in reaffirming that, while a plaintiff need not

"'expose himself to liability before bringing suit,'" 36 F.4th at 290 (quoting *MedImmune*, 549

U.S. at 128–29), pre-enforcement standing still requires "'an especially high probability of

enforcement,'" *id.* at 291 (quoting *Seegars*, 396 F.3d at 1255).  Thus, as another court already

explained and Plaintiffs do not address, "*MedImmune* casts less doubt on *Navegar* and *Seegars* than Plaintiffs suggest." *Angelo I*, 648 F. Supp. 3d at 129.

### 4. Plaintiffs Cannot Fashion an Alternative Rule to That Announced in *Navegar*.

Plaintiffs cite D.C. Circuit cases decided from before and after the *Navegar* line to argue for a rule different from that applied in cases like *Seegars*: "[s]tanding exists where the challenged exercise of governmental power is regulatory, proscriptive, or compulsory in nature, and the complainant is either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging." Pls.' Opp'n at 9; *see id.* at 9–12. But Plaintiffs' alternative rule cannot be right. The *Navegar* cases provide the rule for non-First Amendment pre-enforcement challenges to criminal statutes. *Seegars*, 396 F.3d at 1253. This is indisputably such a case, so the *Navegar* rule applies. Neither cases before nor after the *Navegar* line can change that rule without overruling *Navegar*. *See CREW*, 475 F.3d at 341 n.2; *Save Jobs*, 111 F.4th at 80.

### 5. Plaintiffs Fail to Distinguish the *Navegar* Line.

Plaintiffs argue that *Navegar* is distinguishable. Pls.' Opp'n at 13–18. But Plaintiffs admit that "*Seegars* is not" distinguishable, and Plaintiffs do not even try to distinguish *Parker* or *Heller v. District of Columbia* (*Heller II*), 670 F.3d 1244 (D.C. Cir. 2011). Pls.' Opp'n at 18 n.9. Regardless of whether *Navegar* is distinguishable, *Seegars*, *Parker*, and *Heller II* would defeat Plaintiffs' standing.

Still, Plaintiffs fail to distinguish *Navegar*. Plaintiffs are correct that the gunmakers there had standing to challenge laws that singled out their firearms, and Plaintiffs are correct that the gunmakers lacked standing to challenge laws generally regulating LCMs, weapons, and accessories. 101 F.3d at 999–1002. But Plaintiffs are wrong to say that *Navegar* "was driven by

the uniquely murky nature" of the gunmakers' "vagueness challenges," Pls.' Opp'n at 15, or that *Navegar* "did not specifically address why" they also lacked standing to raise an enumerated-powers challenge, *id.* at 15 n.7.  Indeed, a cursory glance at *Navegar* shows that its principal rationale applied equally to the LCM law that "could be enforced against a great number of weapon manufacturers" and thus placed no "special priority" on the plaintiffs in that case.  101 F.3d at 1001.  Only after rejecting standing on that generally applicable basis did the Circuit "[f]urther" note difficulties with the gunmakers' vagueness claim in predicting "precisely how these provisions may be applied."  *Id.*

Plaintiffs' inability to distinguish *Navegar*'s primary rationale is fatal.  The Law, like the weapons-and-accessories statute in *Navegar*, could be enforced "against a great number of" people and places no "special priority" on anyone.  *Id.*  Thus, Plaintiffs, like the gunmakers in *Navegar*, face no "genuine and imminent" threat of enforcement under the Law.  *See id.*

**6.    Any Alleged Differences Between the D.C. Circuit's Precedent and Other Circuits' Precedent Is Irrelevant.**

As a last effort, Plaintiffs argue that the *Navegar* line differs from other circuits' pre-enforcement standing precedent.  Pls.' Opp'n at 24–27.  But whether the D.C. Circuit's precedent aligns with other circuits' is irrelevant to this Court.  Rather, this Court's role is to apply D.C. Circuit precedent—not try to harmonize the D.C. Circuit's precedent with the precedent in other circuits.  *See United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997) ("That a district judge disagrees with circuit precedent does not relieve him of this obligation [to follow D.C. Circuit precedent] whether or not the precedent has been embraced by our sister circuits.").  Thus, "those [out-of-circuit] decisions are of little persuasive value here—none is from this Circuit, none analyzed standing under the *Navegar* standard that governs here, and

none addresses whether this Court is free to depart from that standard." *Angelo II*, 2024 WL 3741401, at *9.

## II. <u>The Claims Against Chief Smith Should Be Dismissed.</u>

Plaintiffs concede that the Complaint's claims against former Chief Contee must be dismissed. Pls.' Opp'n at 2. Nonetheless, Plaintiffs argue that current Chief Smith should remain as a defendant in her official capacity. *Id.* The District already explained, however, that such official-capacity claims are superfluous. Defs.' Mot. at 22. Plaintiffs' only response is to say that the cases cited by the District did not involve a challenge to a criminal statute. Pls.' Opp'n at 3. But Plaintiffs do not explain why that is a distinction that matters. And it does not. "[A] suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent' . . . ." *McMillian v. Monroe County*, 520 U.S. 781, 785 n.2 (1997) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *see also Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996) (official-capacity suits against District officials are suits against the District). As such, official-capacity suits brought alongside suits against the District are superfluous and regularly dismissed. *Collette v. District of Columbia*, No. 18-cv-1104, 2019 WL 3502927, at *8 (D.D.C. Aug. 1, 2019) (Contreras, J.). Such suits are not any less superfluous because they involve a challenge to a criminal statute. Thus, Plaintiffs have given "no reason to litigate both claims when they essentially function as one." *Id.*

## CONCLUSION

For the foregoing reasons, the Court should dismiss (1) all claims except Yzaguirre's challenge to the denial of a firearm registration certificate, for lack of standing, (2) the due process claim (Count II) for failure to state a claim, and (3) all claims against former Chief Contee and current Chief Smith for failure to state a claim.

Date: October 9, 2025.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Adam J. Tuetken*
ADAM J. TUETKEN [242215]
Special Counsel for Firearm Safety
RICHARD P. SOBIECKI [500163]
MATEYA B. KELLEY [888219451]
HELEN M. RAVE [90003876]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
(202) 735-7474
adam.tuetken@dc.gov

*Counsel for Defendants*