**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ANDREW HANSON, *et al.*,                                    :
                                                           :
     Plaintiffs,                                     :
                                                           :      Civil Action No.:      22-2256 (RC)
     v.                                              :
                                                           :      Re Document No.:      39
DISTRICT OF COLUMBIA, *et al.*,                            :
                                                           :
     Defendants.                                     :

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS**

**I.  INTRODUCTION**

In August 2022, four individuals filed this pre-enforcement challenge to the District of
Columbia's law banning large-capacity magazines ("LCMs") for firearms, D.C. Code § 7-
2506.01(b).  Plaintiffs named as defendants the District of Columbia and Robert J. Contee III,
former Chief of the District of Columbia's Metropolitan Police Department ("MPD"), in his
individual and official capacities.[1]  Plaintiffs sought a preliminary injunction, which this Court
denied.  The parties then jointly moved to stay proceedings pending the appeal of that decision,
which the Court granted.  The D.C. Circuit affirmed this Court's denial of a preliminary
injunction, and the Supreme Court denied Plaintiffs' petition for writ of certiorari.  The parties
are back before this Court, and Defendants have moved to dismiss parts of Plaintiffs' Complaint.
Defendants argue that the Court should dismiss the claims brought by three of the four
individuals for lack of standing; limit the scope of the fourth Plaintiff's, Tyler Yzaguirre's, claim

---

[1] For claims brought against Chief Contee in his official capacity, he has been substituted
for his successor, Jeffrey W. Carroll, pursuant to Federal Rule of Civil Procedure 25(d).

to his firearm registration application that MPD denied; dismiss all claims against the District's

former and current MPD Chiefs; and dismiss Plaintiffs' Fifth Amendment claim. Plaintiffs

concede to the dismissal of all claims against the former and current MPD Chiefs, except as to

the current Chief in his official capacity, and to dismissal of their Fifth Amendment claim. They

otherwise oppose the motion. For the reasons stated below, the Court grants Defendants'

motion, except regarding the scope of Yzaguirre's claim, as to which the Court denies the

motion.

## II. BACKGROUND

In 2008, the District of Columbia enacted the Firearms Registration Amendment Act,

D.C. Law 17-372. The statute prohibits the possession of a "large capacity ammunition feeding

device, regardless of whether the device is attached to a firearm." D.C. Code § 7-2506.01(b).[2]

The statute defines "large capacity ammunition feeding device" as "a magazine, belt, drum, feed

strip, or similar device that has a capacity of . . . more than 10 rounds of ammunition." *Id.* § 7-

2506.01(c). Possession of a large-capacity magazine is a felony punishable with up to three

years' imprisonment and a fine up to $12,500. *Id.* §§ 7-2507.06(a)(4); 22-3571.01(b)(6).

Subject to certain exceptions, "no person or organization in the District shall possess or control

any firearm, unless the person or organization holds a valid registration certificate for the

firearm." *Id.* § 7-2502.01. Possession of a firearm without a registration certificate is a

misdemeanor. *See id.* § 7-2507.06(a).

---

[2] After briefing concluded, a three-judge panel of the D.C. Court of Appeals ruled that the District's large-capacity magazine ban is facially unconstitutional. *See Benson v. United States*, No. 23-CF-0514, 2026 WL 628772 (D.C. Mar. 5, 2026). Neither party brought that decision to this Court's attention. Plaintiffs' case is largely a pre-enforcement challenge to the same law, so the decision in *Benson* would arguably moot this case. But because Plaintiffs also seek damages, Compl. ¶ 23, ECF No. 1, and because en banc proceedings in *Benson* have not concluded in the D.C. Court of Appeals, the Court is satisfied that there remains a live controversy.

Plaintiffs filed their Complaint on August 1, 2022, ECF No. 1, and filed a motion for a preliminary injunction later that month, ECF No. 8. Plaintiffs Andrew Hanson, Tyler Yzaguirre, Nathan Chaney, and Eric Klun are four U.S. citizens and residents of D.C. (Hanson and Yzaguirre), Virginia (Chaney), and Maryland (Klun). Compl. ¶¶ 1–4, ECF No. 1. Hanson and Yzaguirre both own registered firearms within the District. *Id.* ¶¶ 1–2. Each Plaintiff has a Concealed Pistol Carry License issued by the Chief of the MPD. *Id.* ¶¶ 1–4. All four pleaded that they own "firearm magazines capable of holding more than 10 rounds of ammunition that are stored outside the District of Columbia," and that "[b]ut for" the District's prohibition, they "would possess and use such magazines within the District of Columbia for all lawful purposes including for self-defense." *Id.* For Hanson and Yzaguirre, their use would include "self-defense within the home." *Id.* ¶¶ 1–2.

While their preliminary injunction motion was pending, Yzaguirre attempted to register with the MPD his Sig Sauer P365, for which he owns a 12-round magazine. Yzaguirre Decl. ¶ 2, ECF No. 16-1. He was told that his application was denied because it is illegal to own a large-capacity magazine in the District. *Id.* ¶¶ 6–7.

After hearing oral argument on the motion for a preliminary injunction, the Court denied the motion in April 2023. *See Hanson v. District of Columbia* ("*Hanson I*"), 671 F. Supp. 3d 1 (D.D.C. 2023); Order, ECF No. 27. Applying the Supreme Court's test articulated in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), this Court concluded that the text of the Second Amendment does not protect LCM possession, and that even if it did, the District's prohibition was consistent with this Nation's historical tradition of firearm regulation. *Hanson I*, 671 F. Supp. 3d at 8. The parties then jointly moved to stay proceedings in this Court while

3

Plaintiffs appealed the preliminary injunction decision, and the Court granted that motion.  *See* ECF No. 29; Minute Order (D.D.C. May 4, 2023).

On appeal, the D.C. Circuit affirmed this Court's denial of a preliminary injunction. *Hanson v. District of Columbia*, 120 F.4th 223 (D.C. Cir. 2024) (per curiam), *cert. denied*, 145 S. Ct. 2778 (2025).  The D.C. Circuit held that LCMs were protected by the plain text of the Second Amendment, concluding that they constitute bearable arms and are in common use for a lawful purpose, self-defense.  *Id.* at 232–33.  But on the next step, the Circuit agreed that at the preliminary injunction stage, the "District ha[d] met its burden to show its magazine cap is 'consistent with the Nation's historical tradition of firearm regulation,'" specifically "the regulation of weapons that are particularly capable of unprecedented lethality."  *Id.* at 238–40 (quoting *Bruen*, 597 U.S. at 24).

Now back before this Court, the District has moved to dismiss parts of Plaintiffs' Complaint to narrow the issues.  *See* Defs.' Partial Mot. Dismiss ("MTD"), ECF No. 39. Defendants do not raise the merits of Plaintiffs' Second Amendment challenge but instead seek to dismiss for lack of standing all Plaintiffs but Yzaguirre, and to limit the scope of his claim, under Rule 12(b)(1).  *See id.* at 1.  Defendants also move to dismiss for failure to state a claim Plaintiffs' Fifth Amendment Due Process claim and all claims against the former and current MPD Chiefs in their official and individual capacities under Rule 12(b)(6).  *See id.* at 1, 22.

For their part, Plaintiffs help narrow the issues by conceding some of these points in their brief in opposition.  *See* Pls.' Mem. P. & A. in Opp'n ("Pls.' Opp'n") at 1–2, ECF No. 40. Plaintiffs concede that their Fifth Amendment claim may be dismissed because it is duplicative of their Second Amendment claim, so the Court will grant Defendants' motion as to that claim. *See id.* at 2.  Plaintiffs also agree that former MPD Chief Contee is no longer a proper defendant

and that any claim against him or the current MPD Chief "in their individual capacity does not lie," so the Court will dismiss those claims as well. *See id.* Plaintiffs otherwise oppose Defendants' motion. The motion is now fully briefed and ready for this Court's consideration. *See* Reply Br. Supp. Defs.' Partial Mot. Dismiss ("Defs.' Reply"), ECF No. 42.

### III. LEGAL STANDARD

When ruling on a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), courts "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged,' and upon such facts determine jurisdictional questions." *Abuzeid v. Mayorkas*, 62 F.4th 578, 583 (D.C. Cir. 2023) (alteration in original) (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)). Additionally, the court "may consider materials outside the pleadings to determine [its] jurisdiction." *Kareem v. Haspel*, 986 F.3d 859, 866 n.7 (D.C. Cir. 2021). Plaintiffs asserting that a court has subject matter jurisdiction over their claims has the burden of establishing that jurisdiction. *Bronner v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020). But the plaintiffs "need only make a plausible allegation of facts establishing each element of standing" at the pleading stage. *Cutler v. U.S. Dep't of Health & Hum. Servs.*, 797 F.3d 1173, 1179 (D.C. Cir. 2015).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

5

for the misconduct alleged." *Id.* But courts need not accept as true conclusory allegations or legal conclusions. *Id.* at 678, 681.

## IV. ANALYSIS

The Court first analyzes Defendants' challenges to Plaintiffs' standing, including whether Yzaguirre is the only viable Plaintiff and whether the scope of Yzaguirre's claim must be limited to the denial of the firearm registration application for his gun with a 12-round capacity magazine. The Court concludes that under binding Circuit precedent, Yzaguirre is the only Plaintiff with standing to challenge the District's LCM ban in this case, but that the scope of his claim is not limited to the single firearm and magazine capacity he previously attempted to register. After determining the proper Plaintiff in this case, the Court considers Defendants' argument regarding whether the MPD Chief, in his official capacity, is a proper Defendant. The Court agrees with Defendants that the MPD Chief's status as a named Defendant is redundant, as the District itself is a named Defendant, and accordingly dismisses the claims against the MPD Chief in his official capacity.

### A. Plaintiffs' Standing

"For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). "To establish standing for prospective relief, a plaintiff opposing a motion to dismiss must plausibly allege facts that show 'the threatened injury is certainly

6

impending, or there is a substantial risk that the harm will occur.'" *Jones v. U.S. Secret Serv.*, 143 F.4th 489, 495 (D.C. Cir. 2025) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

Only the first element of standing, injury in fact, is disputed here. The parties agree that D.C. Circuit precedent requires plaintiffs to demonstrate that they have been singled out or uniquely targeted for prosecution to bring pre-enforcement challenges in these circumstances, as established by *Navegar, Inc. v. United States*, 103 F.3d 994, 1000–01 (D.C. Cir. 1997), and its progeny. *See* MTD at 6–7; Pls.' Opp'n at 5–6, 18 n.9. In *Navegar*, firearm manufacturers brought a pre-enforcement challenge to a federal gun law that prohibited the manufacture, transfer, or possession of "semiautomatic assault weapons." 103 F.3d at 996–97. To define the prohibited weapons, the statute specifically named certain models of some plaintiffs' guns, but otherwise described combinations of gun characteristics that could satisfy the statute's definition. *Id.* at 999–1001. The court concluded that the manufacturers with named products in the statute had suffered a sufficient "threat of prosecution" to constitute an injury for pre-enforcement standing purposes. *Id.* at 1001. But for challenges to the more general provisions of the statute, the Court concluded that the "generic portions of the Act could be enforced against a great number of weapon manufacturers or distributors, and although the government has demonstrated its interest in enforcing the Act generally, nothing in these portions indicates any special priority placed upon preventing these parties from engaging in specified conduct." *Id.* Thus, for the unspecified gun manufacturers, the threat of prosecution was "too remote and speculative" to be considered "genuine and imminent." *Id.*

Eight years later, the D.C. Circuit extended this reasoning to a pre-enforcement challenge to a District gun law in *Seegars v. Gonzales*, 396 F.3d 1248 (D.C. Cir. 2005). There, the court

held that none of the individuals challenging the law had standing because "plaintiffs ha[d] not shown a threat of prosecution reaching the level of imminence required by *Navegar*." *Id.* at 1255. Specifically, the "plaintiffs allege[d] no prior threats against them or any characteristics indicating an especially high probability of enforcement against them." *Id.* The court made sure to note the "apparent tensions" between *Navegar* and prior Supreme Court pre-enforcement standing precedent, including *Babbitt v. United Farm Workers National Union*, 442 U.S. 289 (1979), and *Virginia v. American Booksellers Ass'n*, 484 U.S. 383 (1988). *Id.* at 1253–54. But ultimately, because *Navegar* "represents the only circuit case dealing with a non-First Amendment preenforcement challenge to a criminal statute that has not reached the court through agency proceedings," the panel was bound by the prior panel's decision in *Navegar*. *Id.* at 1254 (citing *LaShawn v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc)).

Two years later, the D.C. Circuit continued the *Navegar* line of cases in another pre-enforcement challenge to District gun laws in *Parker v. District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007), *aff'd sub nom.*, *District of Columbia v. Heller*, 554 U.S. 570 (2008). The court explained that to satisfy standing, it was "obliged to look for an allegation that appellants . . . have been singled out or uniquely targeted by the D.C. government for prosecution," and the court found none. *Id.* at 375. But the court distinguished the standing of one plaintiff who had applied for and been denied a handgun registration certificate. *Id.* at 376. The court reasoned that "[t]he denial of the gun license is significant; it constitutes an injury independent of the District's prospective enforcement of its gun laws, and an injury to which the stringent requirements for pre-enforcement standing under *Navegar* and *Seegars* would not apply." *Id.* So, the plaintiff who had been denied a gun license had standing to challenge the laws at issue. *Id.*

Here, the parties agree that Plaintiff Yzaguirre has standing to sue because his firearm registration application was denied for his gun with an LCM. *See* MTD at 1, 10; Pls.' Opp'n at 5. The parties dispute, however, whether *Navegar* and its progeny bar the other Plaintiffs' claims and whether the scope of Yzaguirre's challenge is limited to the firearm registration certificate he was denied. The Court considers each issue in turn.

### 1. Whether *Navegar* and Its Progeny are Binding

As this Court has previously stated, it is "bound to follow controlling D.C. Circuit precedent unless and until the Circuit overrules that precedent *en banc* or intervening Supreme Court authority 'eviscerate[s]' the law of the Circuit." *Wehr-Darroca v. District of Columbia*, No. 24-cv-3504, 2025 WL 2694790, at *3 (D.D.C. Sep. 22, 2025) (alteration in original) (citing *LaShawn*, 87 F.3d at 1393; *Alpine Secs. Corp. v. FINRA*, 121 F. 4th 1314, 1334 (D.C. Cir. 2024)). Because the Circuit has not overruled *Navegar*, Plaintiffs argue that the Supreme Court has eviscerated it. Pls.' Opp'n at 5. To do so, Plaintiffs rely on three Supreme Court decisions, but none is persuasive.

First, Plaintiffs cite to *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007). *See* Pls.' Opp'n at 5–6. But as Defendants note, that case was decided before the D.C. Circuit reaffirmed *Navegar* and *Seegars* in *Parker*, as well as again in *Ord v. District of Columbia*, 587 F.3d 1136, 1140–44 (D.C. Cir. 2009). *See* Defs.' Reply at 16. The Circuit cannot be accused of simply overlooking this binding precedent, as the dissenting opinion in *Ord* specifically discussed *MedImmune*. *See Ord*, 587 F.3d at 1149 (Brown, J., dissenting in part). Thus, this Court has no basis to say that *MedImmune* eviscerated *Navegar*.

Second, Plaintiffs turn to *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014). *See* Pls.' Opp'n at 6–9. That case involved a pre-enforcement challenge alleging that an Ohio

9

political campaign statute that prohibited "false statements" relating to voting records violated the First Amendment. *Driehaus*, 573 U.S. at 150–52, 155. Plaintiffs highlight multiple articulations of the standard for pre-enforcement standing in that opinion: (1) that "there exists a credible threat of prosecution," *id.* at 159 (quoting *Farm Workers*, 442 U.S. at 298); or (2) a "substantial risk" the enforcement action will occur, *id.* at 158 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)). But *Driehaus* is easily dispensable. For one, it was a First Amendment pre-enforcement challenge. As this Circuit has since reaffirmed, a "court['s] willingness to permit pre-enforcement review is 'at its peak' when claims are rooted in the First Amendment." *Woodhull Freedom Found. v. United States*, 948 F.3d 363, 371 (D.C. Cir. 2020) (quoting *N.Y. Republican State Comm. v. SEC*, 799 F.3d 1126, 1135 (D.C. Cir. 2015)); *see also Navegar*, 103 F.3d at 999 ("Federal courts most frequently find preenforcement challenges justiciable when the challenged statutes allegedly 'chill' conduct protected by the First Amendment . . . ."). In light of this important distinction in the applicable standards, the Court concludes it would be a stretch to find that *Driehaus* eviscerates *Navegar*. Additionally, as evident from Plaintiffs' briefing, the standard articulated in *Driehaus* largely drew on *Babbitt* and *American Booksellers*, cases which the D.C. Circuit has repeatedly noted were in tension with *Navegar*, while continuing to find *Navegar* applicable. *See, e.g.*, *Parker*, 478 F.3d at 375 ("In both *United Farm Workers* and *American Booksellers,* the Supreme Court took a far more relaxed stance on pre-enforcement challenges than *Navegar* and *Seegars* permit. Nevertheless, unless and until this court en banc overrules these recent precedents, we must be faithful to *Seegars* just as the majority in *Seegars* was faithful to *Navegar*."). Thus, it is unclear how this Court could conclude that reiterations of those same standards should lead to the opposite result in this case.

Third, and finally, Plaintiffs point to *Whole Woman's Health v. Jackson*, 595 U.S. 30, 35 (2021), a pre-enforcement challenge to a Texas statute that prohibited physicians from performing abortions if the physician detected a fetal heartbeat.  But that case was not focused on the plaintiffs' pre-enforcement standing, so Plaintiffs' position that it "eviscerates any vestige of authority the *Navegar* lines of cases retains" is, at best, weak.  Pls.' Opp'n at 18.  Whereas *Navegar* and its progeny concern who is a proper plaintiff to bring a preenforcement suit, *Whole Woman's Health* centers on who is a proper defendant, and bases most of its analysis on doctrines of sovereign immunity.  *See Whole Woman's Health*, 595 U.S. at 48.  The only paragraph of the Court's opinion that analyzes standing explicitly found that the plaintiffs had suffered no injury caused by the sole private individual defendant who supplied sworn declarations attesting that he had no intention to file suit against the plaintiffs.  *See id.*  And the Court's explanation of the injury necessary to support a pre-enforcement challenge in no way "eviscerates" *Navegar*:

> As our cases explain, the "chilling effect" associated with a potentially unconstitutional law being "on the books" is insufficient to "justify federal intervention" in a pre-enforcement suit.  Instead, this Court has always required proof of a more concrete injury and compliance with traditional rules of equitable practice.  The Court has consistently applied these requirements whether the challenged law in question is said to chill the free exercise of religion, the freedom of speech, the right to bear arms, or any other right.

*Id.* at 50 (citation modified).  The D.C. Circuit has prescribed a standard for determining whether a pre-enforcement plaintiff has suffered a concrete injury to bring non-First Amendment challenges; Plaintiffs may disagree with that standard, but *Whole Woman's Health* did not change it.  And the final sentence of the passage above emphasizes that the minimum requirement of a concrete injury applies regardless of the right at issue, but does not require courts to use the same standard for determining whether that requirement has been satisfied.  *See id.*

11

Moreover, to the extent Plaintiffs argue that *Whole Woman's Health* implicitly eviscerates *Navegar*, that argument is further afield. Plaintiffs analogize "the duty MPD has to enforce the plus-10 magazine ban" to the licensing officials that remained in the suit in *Whole Woman's Health*. Pls.' Opp'n at 21. Plaintiffs' reliance on that analogy is misplaced for at least two reasons. First, that portion of the Opinion, Part II-C, does not constitute the "opinion of the Court," even if a majority of the Court agreed on the result. *See Whole Woman's Health*, 595 U.S. at 34. Second, to the extent Plaintiffs base their argument on the reasoning in Justice Gorsuch's opinion in Part II-C, he specifically based his decision on "provisions of state law that appear to impose a duty on the licensing-official defendants to bring disciplinary actions against [the plaintiffs] if they violate [the statute at issue.]" *Id.* at 47. This affirmative duty, he explained, was enough to suggest that the plaintiffs "will be the target of an enforcement action." *Id.* Thus, Plaintiffs' argument that "[n]othing in the case suggested any indication that such officials intended to enforce the Act" is plainly contrary to Justice Gorsuch's reasoning and provides a "valid distinction between *Whole Woman's Health* and this case," in which the Court is aware of no similar duty. *See* Pls.' Opp'n at 21. *Whole Woman's Health* neither explicitly nor implicitly "eviscerates" the *Navegar* line of cases.

In short, Plaintiffs have failed to identify Supreme Court precedent that "eviscerates" the D.C. Circuit's binding precedent of *Navegar* and its progeny. Plaintiffs acknowledge that *Seegars* is not distinguishable from this case. Pls.' Opp'n at 18 n.9. Thus, applying that precedent, the Court concludes that all Plaintiffs other than Yzaguirre lack standing.

2.  Whether Yzaguirre's Standing is Sufficient to Support the Other Plaintiffs' Standing

Even if *Navegar* applies, Plaintiffs argue that the so-called "one-plaintiff" exception obviates the need to determine their standing; instead, the Court can rely on Yzaguirre's

12

standing, check the constitutional box, and proceed to the merits of their claims. *See, e.g.*, *M.M.V. v. Garland*, 1 F.4th 1100, 1110 (D.C. Cir. 2021) ("[T]he plaintiffs invoke the rule that if many plaintiffs seek the same relief and at least one of them has Article III standing, the court need not determine whether others also do."). Plaintiffs argue that the declaratory and injunctive relief they seek is not individualized or different from that Yzaguirre seeks and that their damages are "indeterminate." Pls.' Opp'n at 3–4. On the other hand, the District argues that Plaintiffs seek individualized relief by seeking damages and asserting as-applied claims, and that narrowing the claims at this stage will promote efficiency in litigating and adjudicating the case. MTD at 11–17. The District has the better argument.

As the D.C. Circuit has explained, the one-plaintiff "rule does not apply if each plaintiff seeks 'additional' individualized relief." *M.M.V.*, 1 F.4th at 1110 (quoting *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017)). Further, the line of cases establishing that rule "stands only for the proposition that a court 'need not' decide the standing of each plaintiff seeking the same relief. But it does not *prohibit* the court from paring down a case by eliminating plaintiffs who lack standing or otherwise fail to meet the governing jurisdictional requirements." *Id.* (citation omitted) (quoting *Clinton v. City of New York*, 524 U.S. 417, 431 n.19 (1998)). Though Plaintiffs acknowledge that their damages may be "indeterminate" or "unascertainable beyond a nominal amount," they maintain that they seek damages. *See* Pls.' Opp'n at 4. As a result, the Court must determine each Plaintiff's standing. *See Town of Chester*, 581 U.S. at 440 (describing a case involving two parties that "seek separate money judgments in their own names" as pursuing "relief that is different" from the other party, such that each must have standing). Based on the discussion above, the Court has determined that under *Navegar*, the Plaintiffs other than Yzaguirre lack Article III standing. Having expended

13

"judicial resources analyzing standing for the other plaintiffs," *see* Pls.' Opp'n at 3, the Court sees no reason not to dismiss the Plaintiffs who lack standing.  Rather, this Court is duty-bound to follow this Circuit's precedent in *Navegar* and its progeny.  Applying that binding precedent, the Court will dismiss all Plaintiffs but Yzaguirre from this case.

### 3.  Scope of Yzaguirre's Standing

Having established that only Yzaguirre remains as a Plaintiff, the District also moves to limit the scope of his claim to the denial of a firearm registration application for his P365 Sig Sauer with a 12-round capacity magazine.[3]  *See* MTD at 10–11.  According to the District, "[b]ecause denial of a registration certificate is the jurisdictional hook, Yzaguirre's standing is limited to challenging the denial of *that* registration certificate."  *Id.* at 10.  From there, the District reasons that "Yzaguirre only has standing to challenge the denial of a registration certificate for his gun with a 12-round magazine," but no other capacity.  Defs.' Reply at 5.  This theory may have some superficial appeal, but it quickly unravels.

A proper framing of Yzaguirre's injury resolves this issue.  He was denied a firearm registration certificate because of the LCM ban.  *See* MTD at 3; Yzaguirre Decl. ¶ 6.  All agree that denial is a cognizable concrete injury, but that denial is not the full extent of his injury. Plaintiffs' Complaint alleges that Yzaguirre "owns firearm magazines [plural] capable of holding more than 10 rounds of ammunition that are stored outside the District of Columbia," and that he would "possess and use such magazines within the District of Columbia for all lawful purposes including for self-defense within the home and outside the home."  Compl. ¶ 2.  The D.C. Circuit found support for Plaintiffs' argument that LCMs with a capacity of 12 to 17 rounds are arms in

---

[3] The Court notes that the District at times alternates between arguing that Yzaguirre can challenge the application denial or that he can challenge the law as applied to 12-round LCMs generally.  *See* MTD at 11.

common use for self-defense, and thus fall within the text of the Second Amendment. *Hanson II*, 120 F.4th at 232. Accepting the truth of Yzaguirre's well-pleaded factual allegations and drawing reasonable inferences from those allegations in Yzaguirre's favor, *see Doe v. Rumsfeld*, 683 F.3d 390, 391 (D.C. Cir. 2012), the Court infers that the other magazines that he wishes to possess and use fall within this same 12- to 17-round capacity range that Plaintiffs argue "come standard with the firearms they own."[4] Pls.' Opp'n at 3–4. True, Yzaguirre would not have standing to bring a pre-enforcement challenge to these various gun capacities were he simply arguing that he would register them but-for the District's LCM ban. *See Wehr-Darroca*, 2025 WL 2694790, at *2 ("Taken together, *Navegar, Seegars*, and *Parker* establish that a plaintiff does not have standing to bring a Second Amendment claim if his only alleged injury is that but for the challenged regulation, he would engage in the prohibited conduct."). But Yzaguirre's alleged injury is not only the denied application but also his inability to register *other* firearms with LCMs, arms that the D.C. Circuit held were likely in common use for self-defense. *See Hanson II*, 120 F.4th at 244. Having been denied a license already, the Court sees no sound reason why Yzaguirre should be required to march through the futile act of attempting to register every other magazine he owns to vindicate his constitutional rights. The Court is aware of no authority stating that the Constitution requires such exercises of futility. Instead, Yzaguirre can seek relief to remedy his alleged constitutional harm, for which he has demonstrated a concrete and particular injury through the denial of his firearm registration application.

---

[4] Of course, "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Accordingly, if Yzaguirre does not have evidence that he intends to use or register guns at other magazine capacities, then the Court can consider the issue at a later stage of the litigation.

15

The District's arguments to the contrary are unpersuasive. Consider the purpose of the Circuit's test for pre-enforcement standing. Before an allegedly unconstitutional law has been enforced, how is a court to know who is a proper party that has a real interest in the litigation, such that there is a justiciable question for an Article III court? The D.C. Circuit has answered that question with *Navegar* and its progeny. But the question of whose injury is concrete enough becomes immaterial once we know an individual has suffered a concrete injury, such as the denial of a gun license. *See Parker*, 478 F.3d at 376. The District argues that *Navegar* and its pre-enforcement progeny applies to Yzaguirre, MTD at 10–11, but after determining that Yzaguirre has suffered a concrete injury, the Court is no longer concerned with probabilities, credible threats, or substantial risks of prosecution. His injury has already occurred and remains ongoing.

As for the scope of relief Yzaguirre has standing to seek, the District oversimplifies the cases on which it relies to reach an absurd result. The District organizes its argument into two "principles," so the Court addresses each in turn. *See* Defs.' Reply at 3.

The District first argues that "a plaintiff lacks standing to seek relief broader than necessary to remedy his injury." *Id.* True, but as discussed above, the District unreasonably narrows the scope of Yzaguirre's injury to the denial of a single license. That denial is a concrete injury, but it is also evidence of the broader injury Yzaguirre has allegedly suffered, and which this Court will consider in further proceedings. The cases on which the District relies concerned plaintiffs trying to challenge voting districts in which they did not live, *Gill v. Whitford*, 585 U.S. 48, 66–68 (2018), plaintiffs failing to identify contracts awarded pursuant to the challenged provision, and thus lacking standing to enjoin those unidentified contracts, *Am. Fed'n of Gov't Emps. v. United States*, 330 F.3d 513, 518 (D.C. Cir. 2003), plaintiffs trying to

16

establish an injury based on paying state taxes by relying on an alleged injury from paying municipal taxes, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006), or plaintiffs seeking injunctive relief prohibiting the enforcement of laws or policies against anyone, *Trump v. CASA, Inc.*, 606 U.S. 831, 837 (2025).  In contrast, Yzaguirre seeks to challenge the District's law that prohibits *him* from possessing and using *his* LCMs in the District, and he has demonstrated his particular injury by applying for, but being denied, a registration certificate for a firearm with one of those prohibited LCMs.  The cases on which the District relies are not analogous.

To illustrate the District's position, consider the practical consequences were this Court to conclude that it was unconstitutional for the District to have denied Yzaguirre a registration certificate for his gun with a 12-round magazine.  If his injury is limited to "the denial of *that* registration certificate," MTD at 10, could the District deny him a license for a gun with an 11-round magazine capacity the next day?  Would he need to litigate from scratch to register a gun with a 13-round magazine capacity?  The District proposes that the answer to both of those questions is yes.  But surely standing doctrine does not require such a scheme.

The District next argues that the Court should consider the severability of the statute.  *See* Defs.' Reply at 4–5.  The Court agrees that the statute appears severable.  *See* D.C. Code § 7-2507.10.  But, for the reasons discussed, the Court sees no need to determine at this juncture, before the parties have submitted evidence, why the point of severance cannot be at the 17-round capacity.  No matter the Court's ultimate conclusion, that is an issue for another day.[5]

---

[5] The Court notes that the District has not expressly moved to dismiss Yzaguirre's facial challenge to the LCM ban.  *See generally* MTD.  Plaintiffs may have waived their facial challenge by "conced[ing] at oral argument" before the D.C. Circuit "that they had not made the requisite showing for a facial challenge to the District's magazine cap."  *Hanson II*, 120 F.4th at 231 n.2.  Given that a facial challenge is "the 'most difficult challenge to mount successfully,' because it requires a [party] to 'establish that no set of circumstances exists under which the [law] would be valid,'" such a challenge to the LCM ban would seemingly lack viability.  *See*

As explained above, the Court agrees with the District that, under *Navegar*, Yzaguirre is the only Plaintiff with standing in this case. But the Court does not accept the District's overly narrow framing of his injury, so as to reduce the scope of his challenge to the District's LCM ban to a single denied firearm registration application. Rather, at this stage of the litigation, Yzaguirre has plausibly supported his standing to challenge the LCM ban as applied to standard-capacity magazines he owns and wants to register, which Plaintiffs assert include up to 17-round capacities. The Court will accordingly deny the District's motion to dismiss in this regard, but otherwise grant the motion based on the other Plaintiffs' lack of standing.

### B. Proper Defendants

Lastly, Defendants argue that claims against the MPD Chief in his official capacity should be dismissed as "redundant" because the District is also a named Defendant.[6] *See* MTD at 22. Plaintiffs respond that the MPD Chief is a proper party to enjoin from enforcing the LCM ban, and note, without explanation, that the cases on which Defendants rely did not involve enforcement of a criminal statute. *See* Pls.' Opp'n at 2–3. But Plaintiffs provide no reason why their claims against the MPD Chief are not redundant, or why the MPD Chief would not also be enjoined by an injunction against the District. Accordingly, the Court grants Defendants' motion on this issue.

As the Supreme Court has explained, "a suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent.'" *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 n.2 (1997) (alterations in original) (quoting

---

*United States v. Rahimi*, 602 U.S. 680, 693 (2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Nevertheless, the Court leaves that issue for another day as well.

[6] In their opposition brief, Plaintiffs abandoned all claims against the former MPD Chief as well as any claim against the current MPD Chief in his individual capacity. Pls.' Opp'n at 2. Those claims are therefore dismissed.

*Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978) (explaining that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"). Accordingly, Defendants identify multiple instances in which courts in this District Court have dismissed municipal officers sued in their official capacity when the municipality is also a defendant. *See, e.g.*, *Lopez v. District of Columbia*, 268 F. Supp. 3d 256, 259 (D.D.C. 2017); *Rubio v. District of Columbia*, No. 23-cv-719, 2024 WL 3400227, at *8 (D.D.C. July 12, 2024); *Collette v. District of Columbia*, No. 18-cv-1104, 2019 WL 3502927, at *8 (D.D.C. Aug. 1, 2019). Plaintiffs fail to provide any reason why the fact that they seek injunctive relief or that their case involves enforcement of a criminal statute should change the Court's conclusion that inclusion of the MPD Chief in his official capacity is redundant. Nor do Plaintiffs identify a practical reason why maintaining this action against the MPD Chief is beneficial, likely because there is none. Accordingly, the Court will dismiss the MPD Chief in his official capacity to simplify the litigation without causing any prejudice to plaintiffs. *See Collette*, 2019 WL 3502927, at *8.

* * *

In sum, the Court grants Defendants' partial motion to dismiss, except to the extent Defendants seek to limit the scope of Yzaguirre's claim. On that issue, the motion is denied.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss (ECF No. 39) is **GRANTED in part** and **DENIED in part**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 30, 2026                                  RUDOLPH CONTRERAS
                                                                    United States District Judge

19