# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TYLER YZAGUIRRE, **Plaintiff,** v. DISTRICT OF COLUMBIA, **Defendant.** | No. 1:22-cv-02256-RC |

## DEFENDANT'S MOTION TO STAY THE CASE

Defendant District of Columbia (the District) moves to stay this case pending the Supreme Court's resolution of *Viramontes v. Cook County*, No. 25-238, and *Grant v. Higgins*, No. 25-566. A memorandum of points and authorities as well as a proposed order are attached. Pursuant to LCvR 7(m), the Parties met and conferred, and Plaintiff does not consent and intends to oppose.

The District respectfully requests expedited consideration of this motion because, as explained further in the memorandum, discovery is on-going, and this case should be stayed before the Parties expend any more resources on this case. *Cf.* Min. Order, *Ayele v. District of Columbia*, No. 23-cv-1785 (D.D.C. Mar. 19, 2024) (ordering opponent to motion to stay to respond on expedited timeline); Order [37] at 2–3, *Dotson v. District of Columbia*, No. 24-cv-1864 (D.D.C. Mar. 24, 2026) (*sua sponte* staying case).

Date: July 22, 2026.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General

Civil Litigation Division

/s/ Matthew R. Blecher
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

/s/ Honey Morton
HONEY MORTON [1019878]
Assistant Chief, Equity Section

/s/ Adam J. Tuetken
ADAM J. TUETKEN [242215]
Special Counsel for Firearm Safety
RICHARD P. SOBIECKI [500163]
MATEYA B. KELLEY [888219451]
HELEN M. RAVE [90003876]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
(202) 735-7474
adam.tuetken@dc.gov

*Counsel for Defendant*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TYLER YZAGUIRRE,<br><br>    Plaintiff,<br><br>    v.<br><br>DISTRICT OF COLUMBIA,<br><br>    Defendant. | No. 1:22-cv-02256-RC |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO STAY THE CASE**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 1

    I.     This Case .......................................................................................................... 1

    II.    *Viramontes* ................................................................................................... 5

LEGAL STANDARD ...................................................................................................... 6

ARGUMENT ................................................................................................................... 7

    I.     A Stay Serves Judicial Economy. ................................................................... 7

    II.    The Balance of Hardships Weighs Decidedly in Favor of a Stay.................... 9

        A.    Denying a Stay Will Create Hardships for the Parties............................... 9

        B.    Granting a Stay Will Not Create Hardships for Yzaguirre. ...................... 11

CONCLUSION............................................................................................................... 14

**INTRODUCTION**

This case is a Second Amendment challenge to a District law prohibiting the possession of a type of alleged "arms" protected by the Second Amendment.  The Supreme Court recently granted certiorari in two consolidated cases also challenging laws prohibiting the possession of a type of alleged "arms" protected by the Second Amendment, *Viramontes v. Cook County*, No. 25-238, and *Grant v. Higgins*, No. 25-566 (collectively, "*Viramontes*").  What is more, *Viramontes* will be the Supreme Court's first opportunity to apply the framework announced in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), to a challenge to a ban on alleged "arms" protected by the Second Amendment.  Accordingly, the Supreme Court's decision will likely assist this Court in determining the contested issues here.  And because the Supreme Court is likely to elucidate the framework for a challenge to a ban on alleged "arms" protected by the Second Amendment, the Parties and the Court should not proceed further in this case without that framework in hand.  Thus, the Court should stay this case pending resolution of *Viramontes*, which should occur in less than a year.

**BACKGROUND**

I.      **This Case**

District law prohibits the possession, sale, and transfer of what are commonly called "large-capacity magazines" or "LCMs," *i.e.*, "a magazine, belt, drum, feed strip, or similar device that has a capacity of, or that can be readily restored or converted to accept, more than 10 rounds of ammunition."  D.C. Code § 7-2506.01(c).  In this case, four individuals challenged the District's law as a violation of the Second Amendment.  Compl. [1].

A Second Amendment challenge is subject to the two-step framework announced in *Bruen*.  At the first step, the plaintiff bears the burden to show that the challenged law infringes conduct that falls within "the Second Amendment's plain text," as originally understood and

interpreted by precedent. *Bruen*, 597 U.S. at 17. If so, the Court proceeds to the second step, and the law must be upheld if it "is consistent with the principles that underpin our regulatory tradition." *United States v. Rahimi*, 602 U.S. 680, 692 (2024).

After filing their Complaint, Plaintiffs moved for a preliminary injunction [8]. Plaintiffs and the District disagreed on how *Bruen* applies to a challenge on alleged "arms" protected by the Second Amendment. For example, at *Bruen*'s first step, Plaintiffs argued that LCMs were protected simply because they were commonly possessed. *Hanson v. District of Columbia*, 671 F. Supp. 3d 1, 11 (D.D.C. 2023). The District argued that LCMs were protected if they were in common use for lawful purposes, particularly, self-defense. *Id.* The District further explained that LCMs are not in common use for self-defense because (1) their military characteristics make them a poor fit for self-defense, and (2) law-abiding individuals do not in fact use LCMs for self-defense, as evidenced by the fact that incidents in which a civilian fires more than ten bullets in self-defense are rare. *Id.* at 11. Plaintiffs disputed whether these were relevant criteria. Plaintiffs argued that usefulness in military service was not a test laid out in Supreme Court precedent. *Id.* at 11–12. And Plaintiffs argued that LCMs are "used" in self-defense even when they are not used to fire bullets. *Id.* at 16.

This Court denied Plaintiffs' motion for a preliminary injunction, "conclud[ing] that the District's LCM ban is constitutional." *Id.* at 3. The Court agreed with the District that the applicable test at *Bruen*'s step one was whether LCMs "are commonly used or are useful specifically for self-defense," *id.* at 11 (citation modified), and LCMs did not meet that test, *id.* at 16. Nonetheless, the Court proceeded to *Bruen*'s step two and held, in the alternative, that the LCM ban was consistent with the Nation's tradition of firearm regulation because it was similar to historical bans on high-capacity firearms arising post-Founding and other bans on dangerous

2

and unusual weapons.  *Id.* at 21–25.  For either reason, the Court held that "the District's LCM ban is constitutional and that Plaintiffs have little likelihood of succeeding on the merits."  *Id.* at 8 n.3 (citation modified).

Plaintiffs appealed [30].  The Parties jointly moved to stay further proceedings in this Court pending resolution of the appeal [29], which the Court granted, May 4, 2023 Min. Order. On appeal, Plaintiffs again argued that an arm is protected if it is commonly possessed. Appellants' Br. at 23, *Hanson v. District of Columbia*, No. 23-7061 (D.C. Cir. Aug. 28, 2023) ("*Hanson* Appellants' Br.").  The District, on the other hand, explained that an arm is protected if a challenger shows that it is in common use for self-defense.  Appellees' Br. at 21–22, *Hanson v. District of Columbia*, No. 23-7061 (D.C. Cir. Oct. 19, 2023) ("*Hanson* Dist. Br.").  In addition, the Parties disputed (1) whether usefulness in military service is relevant to the analysis, *compare Hanson* Appellants' Br. at 28, *with Hanson* Dist. Br. at 23; (2) what type of evidence suffices to show "use" in self-defense, *compare Hanson* Appellants' Br. at 29, *with Hanson* Dist. Br. at 27; (3) whether this Court properly applied a nuanced approach at *Bruen*'s step two, *compare Hanson* Appellants' Br. at 33, *with Hanson* Dist. Br. at 30; and (4) what are the contours of a historical tradition of regulating dangerous and unusual weapons, *compare Hanson* Appellants' Br. at 32–33, *with Hanson* Dist. Br. at 35.

The D.C. Circuit affirmed this Court's order denying Plaintiffs' motion for a preliminary injunction.  *Hanson v. District of Columbia*, 120 F.4th 223, 248 (D.C. Cir. 2024) (per curiam). The D.C. Circuit focused its analysis on "extra-large-capacity magazines" (ELCMs), that is, ammunition magazines containing 12 to 17 bullets.  *Id.* at 230; *see id.* at 231 n.2.  The court explained that *Bruen*'s step one "encompasses two more precise questions:  Do ELCMs constitute bearable arms, and, if so, are ELCMs in common use for a lawful purpose, such as

3

self-defense?" *Id.* at 232 (citation modified).[1]  The "answer" to the second question "is not to be found solely by looking to the number of a certain weapon in private hands." *Id.* at 232–33.  The court cited approvingly the Fourth Circuit's observation that "the [Supreme Court's] choice of the phrase common *use* instead of common *possession* suggests that only instances of 'active employment' of the weapons should count." *Id.* at 233 (quoting *Bianchi v. Brown*, 111 F.4th 438, 460 (4th Cir. 2024) (en banc), *cert. denied sub nom. Snope v. Brown*, 145 S. Ct. 1534 (2025)).  Thus, "common use for self-defense" at step one turns on both an arm's actual use and suitability for self-defense.  In light of disputed facts in the record "about the role of ELCMs for self-defense," the court "presume[d]" that ELCMs "can be used for self-defense" and proceeded to *Bruen*'s step two.  *Id.*  At step two, the court identified historical principles that governments have long had the power to restrict "particularly dangerous weapons" and "the related category of weapons particularly capable of unprecedented lethality." *Id.* at 237.  The court held that the ELCM restriction comported with those principles because it "counter[s] the growing use of ELCMs to facilitate crime and, specifically, to perpetrate mass shootings." *Id.* (citation modified).

Thus, the court held that Plaintiffs were unlikely to succeed on the merits. *Id.* at 240, 242–43.  The court further held that regardless of whether Plaintiffs had alleged violations of a constitutional right, they failed to establish that they faced irreparable harm while this case proceeded. *Id.* at 243–46.  Finally, the court held that the balance of harms and public interest

---

[1]    The *Hanson* Court "assume[d], without deciding," that the "common-use" issue belongs at step one, reasoning that "the *Bruen* Court determined that handguns are in common use before conducting its historical analysis."  120 F.4th at 232 n.3.  Thus, for purposes of proceedings in this Court, the D.C. Circuit did not disturb this Court's conclusion that common use belongs at step one, and that conclusion remains law of the case. *See* 671 F. Supp. 3d at 10–11.

weighed in favor of keeping the District's law enforceable while the case proceeded.  *Id.* at 246–48.

Plaintiffs petitioned the Supreme Court for a writ of certiorari, and this Court continued the stay pending resolution of the petition.  Feb. 4, 2025 Min. Order.  The Supreme Court denied Plaintiffs' petition.  *Hanson v. District of Columbia*, 145 S. Ct. 2778 (2025).  This Court then lifted the stay, *see* July 1, 2025 Min. Order, and the District moved to dismiss most of Plaintiffs' claims [39].  The Court granted the motion in part and denied it in part, leaving only Plaintiff Tyler Yzaguirre's Second Amendment claim.  *See Hanson v. District of Columbia*, No. 22-cv-2256, 2026 WL 865730, at *1 (D.D.C. Mar. 30, 2026).

The Parties then entered discovery.  *See* Sched. Order [47] at 1.  Under the current schedule, fact discovery is scheduled to end on August 31, 2026.  *Id.*  Expert discovery is scheduled to end on January 29, 2027.  *Id.*  The Parties are ordered to appear for a status conference on February 8, 2027.  *Id.*  The Parties are currently conferring regarding a 45-day extension of these deadlines.

## II.  *Viramontes*

On June 30, 2026, the Supreme Court granted certiorari in *Viramontes* and *Grant* and consolidated the cases.  The cases involve Second Amendment challenges to state and local laws prohibiting possession of "AR-15 platform and similar semiautomatic rifles."  Pet. for Cert. at i, *Viramontes*, No. 25-238 (U.S. Aug. 27, 2025) ("*Viramontes* Pet."); *see* Pet. for Cert. at i, *Grant*, No. 25-266 (U.S. Nov. 7, 2025) ("*Grant* Pet.").  Following the grants, the Supreme Court appears to be holding petitions for certiorari arising from challenges to LCM laws.  *See Duncan v. Bonta*, No. 25-198; *Gator's Custom Guns Inc. v. Washington*, No. 5-153.

When petitioning for certiorari, the *Viramontes* petitioners asked the Supreme Court to take the cases to resolve "confusion" in the lower courts about what arms are protected by the

5

Second Amendment.  *See Viramontes* Pet. at 1–3; *Grant* Pet. at 1–3.  The petitioners argued that "[t]he lower courts need guidance in applying *Heller* and *Bruen* to arms ban cases."  *Viramontes* Pet. at 15; *see also Grant* Pet. at 20–21.  In particular, the petitioners argued that lower courts and litigants were conflicted over what is an "arm," the meaning of "common use," where "common use" fits into the *Bruen* framework, whether a ban on an arm in common use can be constitutional, and what are the contours of a historical tradition of banning "dangerous and unusual weapons."  *See, e.g.*, *Viramontes* Pet. at 15–22, 26–33; *Grant* Pet. at 20–31.  When elucidating the circuit conflict over these issues, the petitioners explicitly referenced the D.C. Circuit's decision in this case.  *Viramontes* Pet. at 18, 19, 21, 32; *Grant* Pet. at 25.

Shortly after the Supreme Court's grant in *Viramontes*, counsel for the District proposed a stay to counsel for Yzaguirre on July 10.  Counsel for Yzaguirre did not give his position until July 19 because he was travelling.  The Parties met and conferred on July 20, and Plaintiff indicated his intent to oppose the District's motion.

## LEGAL STANDARD

A court has "inherent" power to stay a case.  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  This power is "appropriately exercised where a separate proceeding bearing upon the case is pending."  *Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 276 (D.D.C. 2016); *see also, e.g.*, *P.J.E.S. by & through Francisco v. Mayorkas*, No. 20-cv-2245, 2023 WL 387570, at *5 (D.D.C. Jan. 25, 2023) (staying case pending appellate proceedings); *Fonville v. District of Columbia*, 766 F. Supp. 2d 171, 173 (D.D.C. 2011) (same).  When deciding whether to stay a case pending other proceedings, a court considers (1) the effect of the other case on the case at bar and judicial economy gains, and (2) the balance of hardships.  *Allen v. District of Columbia*, No. 20-cv-2453, 2024 WL 379811, at *2 (D.D.C. Feb. 1, 2024).

**ARGUMENT**

**I.    A Stay Serves Judicial Economy.**

On the first prong, judicial economy weighs in favor of staying this case because *Viramontes* "is likely to narrow or settle some outstanding issues, simplify others, or otherwise assist in the determination of the questions of law involved." *Allen*, 2024 WL 379811, at *4. The *Viramontes* petitioners argued that the Supreme Court should take the cases to resolve some of the same issues presented here, such as the meaning of "common use" and its placement in the *Bruen* analysis. *Compare* pp. 2–4, *supra*, *with* pp. 5–6, *supra*. Further, the *Viramontes* petitioners make some of the same arguments as Yzaguirre does here, including the headline argument that states simply cannot ban arms in common use for lawful purposes. *Compare Hanson* Appellants' Br. at 8, *with Viramontes* Pet. at 26, *and Grant* Pet. at 1. The "overlap" in the "arguments" here and at the Supreme Court means that judicial economy would be served by a stay. *Allen*, 2024 WL 379811, at *3.

More broadly, *Viramontes* is the Supreme Court's first opportunity to apply the *Bruen* framework to a challenge to a ban on alleged "arms" protected by the Second Amendment. Accordingly, the Supreme Court is likely to provide guidance on how courts decide challenges to bans on alleged "arms." *See Allen*, 2024 WL 379811, at *3 (staying Second Amendment case when the Supreme Court would likely clarify the application of *Bruen*); Mem. Op. & Order [44] at 9, *Millard v. Gov't of the Dist. of Columbia*, No. 22-cv-2672 (D.D.C. Feb. 29, 2024) ("*Millard* Op.") (same). In applying *Bruen*'s historical test, the Supreme Court is likely to consider historical sources that have been frequently raised in challenges to bans on arms, including this one. The Supreme Court's "appraisal and the weight given to those sources will necessarily guide this [C]ourt's evaluation of the same sources." *Allen*, 2024 WL 379811, at *4; *see also Millard* Op. at 9. In all, because litigating similar issues "in two separate forums is not in the

interest of judicial economy or in the parties' best interests regarding time, cost, and effort, it would be prudent to allow the [Supreme Court] to weigh in before proceeding here." *Campaign Legal Ctr. v. Correct the Rec.*, No. 23-cv-75, 2023 WL 2838131, at *4 (D.D.C. Apr. 7, 2023) (citation modified); *see also, e.g.*, Order [29] at 2, *Woodward Health Sys., LLC v. Becerra*, No. 20-cv-3098 (D.D.C. Feb. 23, 2022) (granting stay when it "would [ ] seem imprudent for this Court not to wait to hear what the D.C. Circuit has to say"); *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) (collecting cases showing that it is common practice to grant stays when the other case is a Supreme Court case).

That *Viramontes* involves challenges to assault weapons laws while this case is a challenge to an LCM law is no matter. To warrant a stay, *Viramontes* does not have to be poised to resolve Yzaguirre's claim. *See Allen*, 2024 WL 379811, at *4. There need not be "perfect overlap" between the cases. *Game Plan, Inc. v. ESPN, Inc.*, No. 20-cv-455, 2020 WL 5995123, at *2 (D.D.C. Oct. 9, 2020). Instead, *Viramontes* need only be "at the very least, persuasive and helpful." *Id.*; *see Peled v. Netanyahu*, No. 17-cv-260, 2017 WL 7047931, at *2 (D.D.C. Oct. 16, 2017) (staying case because a D.C. Circuit decision would "give this Court guidance"). As such, courts have recently stayed Second Amendment cases even when the Supreme Court's case involved a different law. *See Allen*, 2024 WL 379811, at *1–2 (staying challenge to the District's dangerousness standard for licensing pending *Rahimi*, a challenge to the federal prohibition on firearm possession while subject to a domestic violence restraining order); *Millard* Op. at 8–10 (similar).

Indeed, courts recognize the need to hold LCM cases pending *Viramontes*. For example, the Supreme Court appears to be holding off on deciding petitions in LCM cases until *Viramontes* is decided. *See* p. 5, *supra*. To take another example, a challenge to the same LCM

8

law is pending before the en banc D.C. Court of Appeals, and the challengers moved to stay the case, which the court granted. Order, *Benson v. United States*, No. 23-CF-0514 (D.C. July 10, 2026). This Court should take the same approach.

## II.    The Balance of Hardships Weighs Decidedly in Favor of a Stay.

On the balance of hardships, both the District and Yzaguirre face hardships by charging forward without regard for the Supreme Court. Any harm that Yzaguirre may claim from a stay is unjustified and far outweighed by the benefits that *Viramontes* will provide to both Parties and the Court.

### A.    Denying a Stay Will Create Hardships for the Parties.

To start, both Parties—not just the District—and the Court face burdens and prejudice if this case gets ahead of *Viramontes*. As a threshold matter, this stay is "time-limited" because it will end once the Supreme Court issues its decision, which will be next June at the latest. *Allen*, 2024 WL 379811, at *5. Given the limited nature of the stay, tied to a case that is due to be decided in less than a year at the most, the District's showing of hardship absent a stay need not be great. *See Campaign Legal Ctr.*, 2023 WL 2838131, at *3. But it is substantial in any event.

In the main, proceeding here "would impose litigation costs . . . which may later be obviated by" a decision in *Viramontes*. *Id.*; *see also Gov't of Guam v. United States*, No. 17-cv-2487, 2019 WL 1003606, at *9 (D.D.C. Feb. 28, 2019) (Brown Jackson, J.) (parties face hardship if an appellate court's ruling could "make discovery unnecessary"). As explained, *Viramontes* presents similar issues to those in this case and is the Supreme Court's first opportunity to clarify the framework for a challenge to a ban on arms. If the Parties proceed with discovery and summary judgment briefing without *Viramontes*, then *Viramontes* could obviate their factual development and briefing or make further factual development and briefing

9

necessary.  Any time, money, resources, and effort spent by the Parties on this case would be wasted.  *See Allen*, 2024 WL 379811, at *5; *Millard* Op. at 11.

Two illustrations prove the point.  First, consider the use of experts.  *Bruen*'s inquiry is demanding and one that the District takes seriously.  To carry its burden at the preliminary injunction stage, the District provided declarations from ten experts including historians.  *See* Defs.' List of Exs. [17-2].  And the District is likely to have these experts give testimony in support of its motion for summary judgment.  Yet, much of this expert work and historical discovery may be wasted if it precedes *Viramontes*.  The experts here will explore many of the same issues and sources as are likely to be raised in *Viramontes*.  But the Supreme Court's resolution of *Viramontes* may obviate the need for experts to explore certain issues.  *See Millard* Op. at 11.  Or the Supreme Court may identify gaps in the respondents' historical showings that the District will want to explore or ameliorate.

Second, consider how proceeding without a stay could affect briefing.  If the Supreme Court decides *Viramontes* in the middle of briefing this case, then "[i]t would be 'highly inefficient'" for the Parties "to have to incorporate the Supreme Court's ruling into their oppositions or replies."  *Allen*, 2024 WL 379811, at *5 (quoting Order [29] at 2, *Woodward Health Sys., LLC v. Becerra*, No. 20-cv-3098 (D.D.C. Feb. 23, 2022)).  If the Supreme Court decides *Viramontes* after briefing, then the Parties will have to re-brief their motions for summary judgment or at least file supplemental briefs.  Double briefing is inefficient and adds time to this case and paper to this Court's desk, thus pushing off the moment when the Court can decide the motions.

In sum, "[i]f discovery and briefing proceed on the current schedule, only for the Supreme Court to clarify or change existing legal standards, reopening discovery and re-briefing

10

summary judgment will undoubtedly take longer than" proceeding with discovery and summary judgment briefing after *Viramontes* is decided. *Id.* "[E]ngaging in potentially duplicative or unnecessary discovery which may later be obviated by the Supreme Court's decision" imposes "litigation costs" on the Parties that should be avoided by a stay. *Id.* (citation modified). As a result, the "need for a stay is clear." *Id.*[2]

### B.       Granting a Stay Will Not Create Hardships for Yzaguirre.

Although a stay would inhere to everyone's benefit, Yzaguirre will likely respond that he suffers irreparable harm (a violation of his Second Amendment rights) until he obtains relief, and a stay delays the time until this Court or a higher court can issue a decision granting him relief. But the D.C. Circuit already held that Yzaguirre does not face irreparable harm while this case is pending. *Hanson*, 120 F.4th at 244–46.[3] And Yzaguirre previously agreed to stay this case, so he cannot seriously claim harm from another stay. *See* p. 3, *supra*; *Millard* Op. at 11 (explaining that plaintiffs' delays in pursuing a case undercut their objections to a stay (citing *Feld Ent., Inc. v. A.S.P.C.A.*, 523 F. Supp. 2d 1, 4 (D.D.C. 2007))).

Even if Yzaguirre faced irreparable harm while this case remains pending, he "cannot credibly claim" that a stay will prolong the time until he receives relief. *Allen*, 2024 WL 379811, at *5. It bears repeating that the Supreme Court's decisions will "arrive in a matter of 'months, rather than years,'" so a stay would not work a substantial hardship to Yzaguirre. *Campaign Legal Ctr.*, 2023 WL 2838131, at *3 (quoting *Unión Fenosa Gas, S.A. v. Arab Republic of Egypt*, No. 18-cv-2395, 2020 WL 2996085, at *5 (D.D.C. June 4, 2020)). Because this Court

---

[2]       Although the Parties are discussing a short extension of discovery, discovery is still on-going, not paused, so the reasons given above for a stay are still applicable even if discovery is extended.

[3]       The D.C. Circuit's discussion refers to "Hanson," which was shorthand for the four appellants, including Yzaguirre. *See* 120 F.4th at 230.

11

can expect a decision by June at the latest, a stay would have "a limited duration," and such a stay "is more likely to be granted than an indefinite one." *Doe v. Sipper*, 869 F. Supp. 2d 113, 118 (D.D.C. 2012); *see also Vallejo Ent. LLC v. SBA*, No. 22-cv-1548, 2023 WL 3275634, at *2 (D.D.C. May 5, 2023) (finding that the fact that parties in another case were already on a briefing schedule "puts a clear and finite timeline on the length of a stay here"). A brief, limited delay is not a strong objection to a stay. *See, e.g.*, *Millard* Op. at 11 (finding that plaintiffs would not face harm from a stay because they did not explain "why an additional six months (at most) would significantly alter their current position"); *Peled*, 2017 WL 7047931, at *2 ("[I]nconvenience of waiting for the resolution of the *Al-Tamimi* appeal does not exceed the benefits of judicial economy and efficiency derived from a stay . . . ."); *Nussbaum v. Diversified Consultants, Inc.*, No. 15-cv-600, 2015 WL 5707147, at *2 (D.N.J. Sept. 28, 2015) ("Because delay results inherently from the issuance of a stay, courts have found that 'mere delay does not, without more, necessitate a finding of undue prejudice and clear tactical disadvantage.'" (quoting *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 447 (D.N.J. 2014))). Yet, if this case proceeds only for the Supreme Court to obviate the Parties' factual development and arguments or require that new issues be explored and addressed, then reopening discovery or re-briefing motions for summary judgment will prolong the time until this Court can decide this case. *See Allen*, 2024 WL 379811, at *5. "A brief stay to allow the parties and the [C]ourt the benefit of the Supreme Court's ruling clarifying the law in this muddied field will ultimately take less time than the alternative." *Id.*

Moreover, Yzaguirre is unlikely to get relief before the Supreme Court issues its decision. Under either the current schedule or a modified schedule, the Parties are to brief motions for summary judgment in the spring. At the earliest, the motions would be ripe for

12

decision in late spring. But the latest that the Supreme Court will issue a decision in *Viramontes* is June. So the motions may not even be ripe by the time the Supreme Court issues *Viramontes*. And because this is a complex case, it will understandably take this Court time to issue a decision. No matter which way one looks at it, the Court is highly unlikely to have any decision before *Viramontes*. And even if the Court could have a decision ready before *Viramontes*, it would make little sense for the Court to decide the motions without guidance from *Viramontes*, as explained.

What is more, that decision is unlikely to grant relief to Yzaguirre. The D.C. Circuit held that Yzaguirre is unlikely to succeed on the merits. 120 F.4th at 242–43. And this Court held at the preliminary injunction stage that "the District's LCM ban is constitutional." 671 F. Supp. 3d at 3. Of course, these rulings are not a final adjudication of the merits; and the District does not presuppose how this Court will rule on the motions for summary judgment. But the prior rulings still have predictive value and establish law of the case and law of the circuit on several legal issues adversely to Yzaguirre (for example, that common possession does not equate to common use). *See Sherley v. Sebelius*, 689 F.3d 776, 780–83 (D.C. Cir. 2012); *Bahlul v. United States*, 77 F.4th 918, 925 (D.C. Cir. 2023). Deciding whether to grant a stay requires predictive judgment; and as things stand today, the Court can predict that Yzaguirre is not likely to get relief unless and until the D.C. Circuit's precedent in *Hanson* is abrogated. Accordingly, it does not make sense to push forward with this case based on the idea that Yzaguirre is likely to get relief before *Viramontes*.

At bottom, a stay requires a balancing of harms and may issue even if some harm would result to the opposing party. *See Vallejo Ent.*, 2023 WL 3275634, at *3 ("[A] stay is appropriate if it results in an efficient and accurate decision, so long as the gains outweigh the harm.").

13

Yzaguirre cannot show that "he will be harmed by a stay, and any harm he may suffer is outweighed by the harm to the District in the absence of a stay and this [C]ourt's judicial economy gains in waiting . . . for binding guidance from the Supreme Court." *Allen*, 2024 WL 379811, at *5. The Supreme Court long ago explained that precisely this type of case warrants waiting for critical guidance: "Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Landis*, 299 U.S. at 256. Just so here.

## CONCLUSION

For the foregoing reasons, the Court should stay the case pending *Viramontes*.

Date: July 22, 2026.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Adam J. Tuetken*
ADAM J. TUETKEN [242215]
Special Counsel for Firearm Safety
RICHARD P. SOBIECKI [500163]
MATEYA B. KELLEY [888219451]
HELEN M. RAVE [90003876]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW

14

Washington, D.C. 20001
(202) 735-7474
adam.tuetken@dc.gov

*Counsel for Defendant*

15