IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **TYLER YZAGUIRRE** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-cv-2256 (RC) |
| | ) | |
| **DISTRICT OF COLUMBIA** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF TYLER YZAGUIRRE'S
PARTIAL OPPOSITION TO STAY**

Plaintiff Tyler Yzaguirre partially opposes Defendant's motion to stay this proceeding and shows the following.

Defendant asks the Court to stay this proceeding pending the Supreme Court's decision in the consolidated case of *Viramontes v. Cook County,* No. 25-238 and *Grant v. Higgins,* No. 25-566 ("*Viramontes*"). Those cases involve state bans on so-called assault weapons, not the standard capacity ammunition magazines that are at issue in this proceeding.[1] Reference to the docket in that proceeding indicates that briefing will not be concluded in *Viramontes* prior to November, oral argument has not yet been scheduled, and given the importance of the case, a decision is not likely before next June. So, we are looking at a likely 11 month delay in this case if Defendant's motion is granted in full.

This case was filed in July of 2022 shortly after *New York State Rifle & Pistol Ass'n v. Bruen,* 597 U.S. 1 (2022), confirmed the approach set forth in *District of Columbia v. Heller,* 554 U.S. 570 (2008) that Second Amendment claims are to be resolved based on text, history and

---

[1] As Defendant notes, the Supreme Court is apparently holding multiple cases involving bans on magazine capacity and may GVR those cases following its decision in *Viramontes*.

tradition. *Bruen,* 597 U.S. at 19, 20. *See Heller v. Dist. of Columbia,* 670 F.3d 1244, 1269, 1271-72 (D.C. Cir. 2011) (Kavanaugh, J., dissenting). It is now four years later, and Plaintiff continues to be denied the plus 10 magazines he desires for defending himself, which he asserts is his constitutional right. Every day this case is pending is another day his constitutional rights are being denied if he is correct. Although the D.C. Circuit may not think this deprivation rises to the level of "irreparable harm," *see Hanson v. District of Columbia,* 120 F.4th 223, 245-46 (D.C. Cir. 2024), that does not mean Plaintiff suffers no harm. Plaintiff, if he prevails, does not get those days back; and although there is a claim for monetary damages in this case, monetary damages here are not liquidated and thus not clearly likely to compensate Plaintiff for the years long deprivation of his constitutional rights. And the District has not suggested how he would otherwise be compensated for that deprivation should he prevail in this case. Accordingly, any delay in resolution of this case should be minimized.

We agree with Defendants that this Court has inherent authority to stay this case if the interests of judicial economy and the balance of hardships weigh in favor. They don't in this case support a stay, at least not a complete stay of this case. Defendants suggest *Viramontes* may narrow or settle some outstanding issues such as what arms are protected, the meaning of common use and where common use fits in *Bruen's* analysis. With respect, we believe that has already been settled, but perhaps the *Viramontes* opinion will address the issues in a way such that they can no longer be misunderstood by the lower courts.[2] Nonetheless, plainly these issues are present in this case

---

[2] The Supreme Court has been crystal clear on these issues. The Court in *Heller* settled what arms are presumptively protected: bearable arms. *Heller,* 554 U.S. at 582. And those arms in common use at the time – i.e., now -- are the ones protected, not presumptively protected, but protected. *Heller,* 554 U.S. at 624 ("We may as well consider at this point (for we will have to consider eventually) *what* types of weapons *Miller*[, 307 U.S. 174 (1939) permits.") After a detailed discussion of *Miller,* the Court explained "We therefore read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns. That accords with the historical understanding

and will remain whether the Court affirms *Viramontes* or more likely reverses, given that current justices have expressed serious misgivings with the rationale underlying the circuit court opinions in *Viramontes. See, e.g., Snope v. Brown,* 605 U.S. __, 24-203, Statement of Kavanaugh, J., respecting denial of certiorari;  Opinion of Thomas, J., dissenting from the denial of certiorari. (June 02, 2025).

Defendant asserts prejudice as a result of litigation costs of undergoing discovery and summary judgement prior to the Supreme court's *Viramontes* decision. Motion at 9-10. Defendant particularly highlights expert witness expense. Yet, Defendants have already submitted extensive expert reports and have not explained what more they would submit if this case were not stayed. Nonetheless, Plaintiff is willing for the Court to modify the scheduling order in this case to allow submission of expert reports following a decision in *Viramontes.* That should be sufficient to alleviate any prejudice Defendant would face.

---

of the scope of the right." *Id.* at 625. And the Court reiterated *Miller's* holding once more, "We also recognize another important limitation on the right to keep and carry arms. *Miller* said, as we have explained, that the sorts of weapons protected were those 'in common use at the time.' 307 U.S., at 179, 59 S.Ct. 816. We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.' *Heller,* 554 U.S. at 627. So, arms in common use are protected while dangerous and unusual weapons are not. That view is supported by *Bruen's* statement with respect to pocket pistols. *See Bruen,* 597 U.S. at 48 n.13 ("Even assuming that pocket pistols were, as East Jersey in 1686 deemed them, "unusual or unlawful," it appears that they were commonly used at least by the founding. Finally, *Wolford v. Lopez,* Case 25-1046 (June 25, 2026) puts the nail in the coffin as to whether "common use" is a part of the text inquiry at *Bruen* Step One or the historical inquiry at *Bruen* Step Two. Step One said the Court asks "three subsidiary questions. First, does the law apply to 'the people'—which is to say, to 'all members of the political community'? Heller, 554 U. S., at 580. Second, does it concern any form of 'Arms,' i.e., any weapon customarily used for offensive or defensive purposes? See id., at 584. Third, does the law place any restrictions on either the 'keep[ing]' (i.e., possession) or the 'bear[ing]' (i.e., carrying) of arms? See Bruen, 597 U. S., at 32–33." *Wolford,* slip. op. at 7. Justice Barrett reiterated the majority opinion's Step One inquiry. "The disagreement is instead whether courts can smuggle additional limits, drawn from our regulatory tradition, into the plain-text stage of the inquiry. The answer is and always has been no." *Wolford,* concurring opinion of Barrett, J., slip op. at 2. *See Association Of New Jersey Rifle And Pistol Clubs,Inc. v. Attorney General,* Case No. 24-2415, slip op. at

Defendant further suggests that briefing prior to the *Viramontes* decision is imprudent given that the Court's decision may clarify the legal issues or decisional principles relating to the constitutional protection of the magazines at issue in this proceeding and require supplemental briefing if summary judgement filings are due prior to *Viramontes*. We don't disagree and would suggest that summary judgement briefing await the *Viramontes* decision.

What we don't think should await *Viramontes* is fact discovery. Plaintiff has already served fact discovery in the form of interrogatories and admission requests to Defendant. The discovery covers such areas as common use, potential historical analogues, and the circumstances of surrounding high victim count mass shootings and the role, if any, magazine capacity as well as other factors may have played in those incidents. The matters covered by this fact discovery are likely to be in issue no matter what the Supreme Court's decision may be in *Viramontes*. In light of this, while we have no objection to expert discovery and summary judgement filings being stayed till after *Viramontes* is decided, fact discovery should be allowed to progress pursuant to the schedule order in this proceeding, as it may be modified.[3] That course of action would minimize delay in this proceeding while accommodating Defendant's concerns.

For these reasons if a stay is granted it should not include ongoing fact discovery.

---

[3] Plaintiff has agreed to a 45 day extension of the response date for its discovery requests and the parties are preparing a consent motion to extend the scheduling order dates by that 45 day period.

Respectfully submitted,

**TYLER YZAGUIRRE**

By: /s/ George L. Lyon, Jr.
George L. Lyon, Jr. (D.C. Bar No. 388678)
Arsenal Attorneys
4000 Legato Road, Suite 1100
Fairfax, VA 22033
202-669-0442,
fax 202-483-9267
gll@arsenalattorneys.com

Matthew J. Bergstrom (D.C. Bar. No. 989706)
Arsenal Attorneys
4000 Legato Road, Suite 1100
Fairfax, VA 22033
800-819-0608
mjb@arsenalattorneys.com

Dated:  July 23, 2026         *Attorneys for Plaintiff*

5

## *CERTIFICATE OF SERVICE*

I certify that I served the foregoing document via the Court's ECF system which will generate an email notification to each counsel of record this 23RD day of July, 2026


/s/ George L. Lyon, Jr., DC Bar 388678